1  Dimitar Slavchev Savov

2  61 Nishava str. ent. A, fl. 3, apt. 6

3  Sofia 1680

4  Bulgaria

5  +359 88 99 88 313

6  dimitar.savov@ymail.com

7                    UNITED STATES DISTRICT COURT

8                        DISTRICT OF NEVADA

9

10  DIMITAR SAVOV,                      CIVIL ACTION FILE

11        PLAINTIFF,                    NO. 2:22-cv-00861-JAD-VCF

12  V.

13  EMPIRE STOCK TRANSFER, INC.,

14        DEFENDANT.

15

16                        **VERIFIED COMPLAINT**

17        Plaintiff Dimitar Savov ("Savov"), by and through himself, for his Complaint against

18  Defendant Empire Stock Transfer, Inc. ("Empire") and alleges as follows:

19        1.  Savov is an adult individual who resides in and is a citizen of Bulgaria.

20        2.  Empire is a Nevada corporation doing business as a stock transfer agency in Nevada,

21  among other places.

22                        **JURISDICTION AND VENUE**

23        3.  This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C.

24  §1332, as this is a dispute between a corporation, incorporated and having a principal place of

- 1 -

1   business in the State of Nevada and a citizen of the nation of Bulgaria, and the amount in

2   controversy exceeds $75,000, exclusive of interest and costs.

3       4.  Defendant Empire is a Nevada corporation with principal office located at 1859

4   Whitney Mesa Dr, Henderson, NV 89014, Clark County. Therefore, venue is proper.

5                                **BACKGROUND FACTS**

6       5.  Enzolytics, Inc. ("Enzolytics") is a Delaware corporation, which common stock trade

7   on OTC Markets with a trading symbol ENZC, that purportedly develops and commercializes

8   proprietary proteins and monoclonal antibodies for the treatment of various infectious diseases.

9       6.  Savov, through Immunotech Laboratories BG ("IMMB BG"), has financed and

10  developed the project of Immunotech Laboratories Inc. ("IMMB")'s ITV-1 since 2012. As

11  such, Savov has completed Phase I, Phase II, Phase III – a clinical trial that was successfully

12  completed in November 2016 – which are part of the permit process for the registration of the

13  medicinal product.

14      7.  In March 2017, Harry Zhabilov ("Zhabilov") proposed to merge IMMB and Eco-

15  Petroleum Solutions ("ECPO"), the predecessor of Enzolytics, at which time he promised

16  Savov and the other Bulgarian investors bonus shares in ECPO as consideration for payment of

17  vials for the validation order and for the contribution of Savov to the ITV-1 project.

18      8.  On or about June 20, 2017, Zhabilov memorialized the agreement in an email to Savov

19  stating that "ECPO will issue the Bulgarian contingency additional shares of ECPO [...] as a

20  bonus for the payment for the production on the 9,000 vials." (See Email attached as Exhibit 1).

21      9.  Zhabilov further states in the email: "We appreciate all the efforts you have made in

22  getting the permit issued in the EU and understand their impact on IMMB and now ECPO."

23  (See Exhibit 1)

- 2 -

1    10. The email further states, "We will need a list of Bulgarian Shareholders who have

2    contributed to the permit process and efforts in Bulgaria to make sure that the Board Resolution

3    authorizing the issuance of these shares is correct for the Transfer Agent." (See Exhibit 1)

4    11. Included in the "list of Bulgarian Shareholders who have contributed to the permit

5    process and efforts in Bulgaria" referenced in the June 20, 2017 email were Ms. Mariya

6    Stanislavova Radivoeva and Mr. Daniel Antonov Valchanov.

7    12. On July 11, 2017, Savov wired $190,000 for the production of 3 batches to be utilized in

8    the validation of ITV-1. (See p. 2 of Exhibit 2)

9    13. Since the announcement of the merger and over the following months Savov wired an

10    additional $151,600 over international wires directly to Zhabilov for the project. (See pages 3-58

11    of Exhibit 2)

12    14. The merger between IMMB and ECPO was subsequently terminated in January 2018,

13    but by that point Savov had provided full consideration for his shares, which were issued in his

14    name on March 6, 2018.

15    15. As consideration for the completion of Phase I, Phase II, and Phase III of the ITV-1

16    project and pursuant to the agreement with ECPO, Savov received 71,900,000 shares as

17    evidenced by stock certificates 4147-4175, excluding 4152 and 4153. (See stock certificates

18    attached as Exhibit 3).

19    16. On and about March 16, 2018, Ms. Tiffany Baxter ("Baxter") of the Nevada Agency and

20    Transfer Company (NATCO), transfer agent of ECPO at the time, confirmed to Zhabilov that

21    the shares that were issued to the Bulgarian investors on March 6, 2018, including those of

22    Savov, "are valid on the books and records." (See p. 2 of Exhibit 4).

17. On and about March 19, 2018, as a result of a further inquiry by Zhabilov in regard to the shares of Savov and the other Bulgarian shareholders, Ms. Baxter informed Zhabilov that "Once the year has lapsed, the shares are eligible for legend removal pursuant to Rule 144 assuming the shareholder is not an affiliate of the issuer". (See p. 3 of Exhibit 4).

18. Savov is not an affiliate of Enzolytics and Savov has held his shares for more than 4 years as of the date of this filing to the Court.

19. Enzolytics reported the issuance of Savov shares in multiple disclosures that were filed publicly with OTC Markets and certified by their Chief Executive Officer and Chief Financial Officer.

20. ECPO reported that on March 6, 2018 it issued "223,695,000 shares as compensation to several individuals […] in Bulgaria" in its "Financial Statements For the three months and years ending December 31, 2017 and December 31, 2016" (herein after "2018 Financial Statements") filed publicly on OTC Markets on April 25, 2018. (See pages 2 and 3 of Exhibit 5)

21. Enzolytics reported the issuance of shares to Savov for "services rendered in implementing the business strategy in Bulgaria" in its "ISSUER INFORMATION AND DISCLOSURE STATEMENT PURSUANT TO Rule 15c2-11" (herein after "2018 Disclosure Statement) dated June 4, 2018. (See pages 4 and 5 of Exhibit 5).

22. Enzolytics' 2018 Disclosure Statement also states that on March 06, 2018, the Company issued 5,000,000 common shares to Ms. Mariya Stanislavova Radivoeva and 3,050,000 common shares to Mr. Daniel Antonov Valchanov also "for services rendered in implementing the business strategy in Bulgaria". (See p. 5 of Exhibit 5).

23. The 2018 Disclosure Statement was filed publicly with OTC Markets and certified by Zhabilov, Enzolytics' then Chief Executive Officer and Chief Financial Officer. (See p. 6 of Exhibit 5).

24. Enzolytics reported the issuance of 71,900,000 common shares to Savov in March 2018 in its "Disclosure Statement Pursuant to the Pink Basic Disclosure Guidelines" (herein after "2021 Disclosure Statement") dated January 11, 2021. (See pages 7 and 9 of Exhibit 5).

25. Enzolytics' 2021 Disclosure Statement also states that on March 06, 2018, the Company issued 5,000,000 common shares to Ms. Radivoeva and 3,050,000 common shares to Mr. Valchanov. (See pages 8 and 9 of Exhibit 5)

26. The 2021 Disclosure Statement was filed publicly with OTC Markets and certified by Zhabilov, Enzolytics' then Chief Financial Officer and Charles Cotropia Enzolytics' then Chief Executive Officer. (See p. 10 of Exhibit 5)

27. Savov subsequently made a request to transfer 200,000 of his Shares to a third party on September 2, 2021.

28. Savov's shares were placed on a 30-day hold by Empire who stated that unless they receive a court order within that time period to stop the transfer, they shall process on the 31st day.

29. No court order was provided to Empire within that time period and Empire processed the transfer, issuing the 200,000 shares to the third party on October 4, 2021 with certificate #101005 that states that it represents "FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF ENZOLYTICS, INC."

30. On December 14, 2021, Savov's then attorney sent to Empire a letter regarding *"Amended Rule 4(a)(1) Opinion Letter for Dimitar Slavchev Savov for Restrictive Legend*

1    *Removal for 71,700,000 Shares of Common Restricted Enzolytics Inc. (Enzolytics) Stock"* (See

2    pages 2-8 of Exhibit 6).

3        31. On December 15, 2021, Lash, Wilcox and Grace LLP sent an almost identical letter to

4    Empire on behalf of Ms. Radivoeva (See pages 9-15 of Exhibit 6).

5        32. On December 15, 2021, Lash, Wilcox and Grace LLP also sent an almost identical letter

6    to Empire on behalf of Mr. Valchanov (See pages 16-22 as Exhibit 6).

7        33. All three letters requested that Empire issue the Shares without the restrictive legend.

8        34. Despite the fact that (a) all three letters are identical, except for the shareholder names

9    and their respective number of shares, and (b) that Enzolytics has publicly acknowledge that all

10   three shareholders earned their shares as compensation for "services rendered in implementing

11   the business strategy in Bulgaria;" Empire granted the requests on behalf of Ms. Radivoeva and

12   Mr. Valchanov yet refused Mr. Savov's request, promptly providing Savov with an invoice for

13   the rejection and sending Savov his certificates via FedEx.

14       35. Empire did so after a Maryland attorney by the name of Matheau J. W. Stout ("Stout")

15   threatened Mr. Grace and forced him to rescind his Opinion Letter.

16       36. Stout has been an OTC Market Prohibited Service Provider since October 15, 2018 and

17   is currently on probation imposed by the Court of Appeals of Maryland.

18       37. Stout is not a judge in any Court of Law of the United States.

19       38. Stout claims to officially represent Enzolytics, but has provided no evidence of such

20   representation and his name does not appear as Securities Counsel of the company neither on

21   the Company's OTC Market webpage, nor in any public disclosures, where only Morgan E.

22   Petiti is listed as securities counsel of Enzolytics.

39. Stout has previously sued Enzolytics on behalf of Livingston Asset Management (See Case No. 1:18-cv-02088-SAG).

40. Savov subsequently engaged the services of a different attorney who drafted and sent an Opinion Letter almost identical in its contents to the letters presented by Ms. Radivoeva and Mr. Valchanov, and Savov properly presented his shares to Empire for restriction removal on January 11, 2022. (See pages 23-29 of Exhibit 6).

41. This was confirmed by Casey Weseloh ("Weseloh"), Vice President of Empire, who replaced Brian Barthlow ("Barthlow"), the transfer agent who usually processes such requests, and stated that, "Everything was presented correctly." (See p. 2 of Exhibit 7).

42. In the same email, Weseloh further stated that Savov's shares are placed on a 30-day hold and that, "The request date started yesterday, January 11, 2021. If we do not receive a court order from a judge to stop this transfer, we will be processing on the 31st day." (See p. 2 of Exhibit 7).

43. In a subsequent email, despite Savov's substantiated argument that a 30-day hold is improper in this situation, Patrick Mokros ("Mokros"), President of Empire, reaffirmed the 30-day hold and claimed that Empire will strictly follow U.C.C. guidelines.

44. Despite the fact that no court order from a judge was received by Empire stopping the restriction removal from Savov's shares in the 30-day period and that Empire have confirmed that Savov's presentment is in order, Empire did not process the restriction removal and did not issue Savov unrestricted shares on the 31st day – February 10, 2022.

45. Empire have neither processed, nor rejected the restriction removal of Savov's shares that was presented to them on January 11, 2022, and have caused unreasonable delay for more than 3 months violating 17 CFR § 240.17Ad-2.

46. During this time period, the share price has lost more than half of its value and there is a high risk that due to the volatile nature of the stock that the value may rapidly decrease even further.

## EVIDENCE SUGGESTING ILLICIT INCENTIVISATION NOT TO REMOVE THE RESTRICTIVE LEGEND FROM SAVOV'S SHARES

47. Empire and/or their officers Mokros and Martin Blevins, former Vice-President of Empire, have previously been sanctioned by the Securities and Exchange Commission ("SEC") on three separate occasions. (See Administrative Proceedings File No. 3-15827, 3-15828, and 3-17729).

48. Empire have had a direct connection with Marcus A. Luna ("Luna") who previously acted as an undisclosed control person of Empire (See Administrative Proceedings File No. 3-15827) and who has been found guilty of various crimes on three separate occasions, on June 27, 2014 (See 2:10-cv-02166-PMP-CWH), on October 5, 2017 (See 2:16-cv-07333-BRO-SK), and on May 14, 2018 (See SACR 16-12-AG).

49. Billy V. Ray Jr. ("Ray"), who has "apparently been appointed by company management to handle securities and finance issues" (4:21-cv-00321-SDJ) for Enzolytics, and who, upon information and belief, Ray acts as an undisclosed officer of Enzolytics.

50. Ray has previously been convicted on October 17, 2014 of securities fraud pursuant to 18 U.S.C. § 1348, after, among other things, has been caught offering illegal kickbacks to an undercover FBI agent (See 0:14-60109-CR.ZLOCH.1).

51. Previously in 2021, Enzolytics, through their representative Ivan Elandjiev appointed by Cotropia, had offered Savov to remove the restriction legend from his shares if Savov agrees to transfer 51,700,000 of his Enzolytics shares to a party of their choice and his 51% stake in

1    IMMB BG along with the company's Exclusive Rights for production and distribution of US

2    Patents N° 7,479,538, 7,625,565, 8,066,982, 8,067,531, 8,309,072, as well as the clinical trials

3    on ITV-1 conducted by IMMB BG that successfully concluded in November, 2016.

4        52. Savov firmly rejected the "offer", as it was not an offer made in good faith to the benefit

5    of both sides, but was in fact an extortion with the goal of stealing Savov's shares, business and

6    long-term investment.

7        53. On and about January 12, 2022, in an email to Mokros, Weseloh, and Barthlow, Savov

8    informed Empire of the extortion and racketeering that he has been subjected to. (See p. 3 of

9    Exhibit 7).

10       54. Savov has consulted with other reputable transfer agents on his situation who have

11    confirmed that Savov's January 11, 2022 request should have been processed within 72 hours.

12       55. Apart from the violations during the restriction removal process of Savov's Shares

13    described in the foregoing and subsequent sections, Empire have also acted against the

14    precedents, which they themselves have set in regard to Savov, Mr. Valchanov, and Ms.

15    Radivoeva.

16       56. Upon information and belief, Empire have acted unreasonably against their own

17    precedents and words, as well as the law and guidelines, after receiving illegal kickbacks or

18    another form of illicit incentives from Enzolytics or an individual/entity associated with

19    Enzolytics.

20           **VIOLATION OF NEVADA REVISED STATUTE §104.8401**

21       57. Nevada Revised Statute ("Nev. Rev. Stat.") §104.8401 provides that "[i]f a certificated

22    security in registered form is presented to an issuer with a request to register transfer," the

23    issuer "shall register the transfer" provided the following criteria are met:

1   (a) Under the terms of the security, the person seeking registration of transfer is eligible

2   to have the security registered in his or her name;

3   (b) The endorsement or instruction is made by the appropriate person or by an agent

4   who has actual authority to act on behalf of the appropriate person;

5   (c) Reasonable assurance is given that the endorsement or instruction is genuine and

6   authorized;

7   (d) Any applicable law relating to the collection of taxes has been complied with;

8   (e) The transfer does not violate any restriction on transfer imposed by the issuer in

9   accordance with NRS 104.8204;

10   (f)  A demand that the issuer not register transfer has not become effective under NRS

11   104.8403, or the issuer has complied with subsection 2 of that section but no legal

12   process or indemnity bond is obtained as provided in subsection 4 of that section; and

13   (g) The transfer is in fact rightful or is to a protected purchaser.

14   58. The Honorable Alvin K. Hellerstein, United States District Judge states: "If an issuer is

15   under a duty to register a transfer of a security, the issuer is liable to the person presenting a

16   certificated security or an instruction for registration or his or her principal for loss resulting

17   from unreasonable delay in registration or failure or refusal to register the transfer." *Shaw v.*

18   *Empire Stock Transfer Inc.,* 381 F. Supp. 3d 286 (S.D.N.Y. 2019).

19   59. The Nevada statutes confer "a cause of action for failure by transfer agent to remove a

20   restrictive legend," and "has made a transfer agent's duty the same as that of an issuing

21   corporation". *Shaw v. Empire Stock Transfer Inc.,* 381 F.Supp.3d 286, 290 (S.D. N.Y. 2019)

22   citing *Guilfoyle v. Olde Monmouth Stock Transfer Co.,* 130 Nev. 801, 335 P.3d 190, 195

23   (2014).

1    60. Savov received his shares as compensation for services rendered and not based on a

2    promise to perform.

3    61. It is clear that Mr. Savov rendered those services. Enzolytics has publicly stated that it

4    issued the shares for services rendered, not for the promise of rendering services.

5    62. By not performing their duty to issue Mr. Savov unrestricted shares, Empire is liable to

6    him for the damages he has suffered from his request of Empire to issue his Shares without

7    restrictive legend.

8    63. Savov's Shares meet all the requirements of Nev. Rev. Stat. §104.8401.

9    64. Under Nev. Rev. Stat. 104.8401 and Nev. Rev. Stat. 104.8407 a transfer agent must, on

10    proper request, register a transfer of securities without unreasonable delay.

11    65. Savov made a proper request upon Empire to register his Shares without restrictive

12    legend on January 11, 2022.

13    66. Empire has failed to register Savov's Shares in violation of Nev. Rev. Stat. 104.8401

14    and Nev. Rev. Stat. 104.8407.

15    67. As a result of Empire's violation of Nev. Rev. Stat. 104.8401 and Nev. Rev. Stat.

16    104.8407 Savov has been unable to sell his Shares.

17    68. As a result of his inability to sell his Shares, Savov has suffered damages in excess of

18    $75,000.

19    69. As a result of his inability to sell his Shares, due to the decrease in share price from the

20    January 11, 2022 opening price of 0.1319$ per share to the current opening price as of the date

21    of this filing of 0.0602$, Savov has suffered damages in the amount of 5,140,890$.

1   70. The damages that Savov has suffered can either be determined at trial or in the

2   alternative can be calculated as sum certain by multiplying the number of Savov's shares by the

3   difference in price between January 11, 2022 and the date of restriction removal.

4   71. If a circumstance arises, in which at the time of removal of the restriction legend of

5   Savov's shares, the Enzolytics common stock are no longer tradable on OTC Markets and/or

6   have lost their value, and as a result Savov is unable to sell them, Empire is liable to the full

7   damages suffered by Savov due to the unreasonable delay calculated as the January 11, 2022

8   opening price of 0.1319$ multiplied by the number of Savov's shares, i.e., a sum certain of

9   9.457,300$.

10   **INJUNCTIVE RELIEF**

11   **I. ORDER REQUIRING EMPIRE TO REMOVE RESTRICTIVE LEGEND**

12   72. Savov restates and realleges the allegations of the foregoing paragraphs as if fully set

13   forth herein.

14   73. Savov has properly presented his shares for restriction removal on January 11, 2022.

15   74. Empire have a duty to remove the restrictive legend from Savov's shares and issue

16   Savov unrestricted shares.

17   75. As of the date of this filing, Empire have not processed the restriction removal request

18   made by Savov on January 11, 2022, violating, among other things, their duty as transfer agent.

19   76. As a result of this, Savov has been unable to sell his Shares and has suffered and

20   continues to suffer damages in excess of $75.000.

21   77. Since January 11, 2022, Enzolytics' share price has fallen from 0.1319$ per share to

22   0.060$, which has led Savov's shares to lose more than half of their value from time of proper

23   presentment.

1   78. Since January 11, 2022, Enzolytics stock have shown an overall downward trend in their

2   price, as well as high volatility.

3   79. Due to these factors and the general inherent volatility in penny stock, Savov's shares

4   are at a risk of rapidly losing more of their value, causing Savov to sustain further damages and

5   irreparable harm.

6   80. Empire faces no threatened injury from removing the restrictive legend and have stated

7   than an appropriate legal court may approve the legend removal.

8   81. Savov has satisfied all legal requirements to have the restrictive legend removed from

9   his Shares and to be issued unrestricted Shares.

10   82. Accordingly, Savov is entitled to an order requiring Empire to remove the restrictive

11   legend from Savov's Shares and to issue Savov unrestricted shares immediately without

12   causing further delay.

13   **II. ORDER ALLOWING SAVOV TO TRANSFER HIS UNRESTRICTED SHARES**

14   **WITHOUT MEDALLION SIGNATURE GUARANTEE**

15   83. After Savov is issued unrestricted Shares, in order to transfer the shares to his brokerage

16   account, Savov will likely be required by Empire to provide a Stock Power with Medallion

17   Signature Guarantee (MSG).

18   84. A MSG is used to prevent fraud by verifying that the person making the transfer request

19   is the person to whom the shares are issued, but is not common practice anymore and not

20   necessary in this instance as Savov has already verified his identity before his broker Saxo Bank

21   A/S and can file an Affidavit with the Court affirming that he is the one making the transfer

22   request.

1    85. Due to the fact that Savov is a citizen and resident of Bulgaria, he only has access to a

2    handful of MSG providers who are located in the UK, which makes the process significantly

3    longer than it is for U.S. citizens.

4    86. Such additional delay, in conjunction to the unreasonable delay already caused by

5    Empire, will cause Savov further harm and can be easily avoided under the supervision of the

6    Court, without posing any risk of threatened injury to Empire.

7    87. Accordingly, Savov is entitled to an order requiring Empire to transfer Savov's

8    unrestricted shares to his brokerage account without the need for a MSG.

9    **WHEREFORE,** for all the foregoing reasons, Plaintiff DIMITAR SAVOV prays that

10   this honorable court:

11        I.      Enter an Order requiring Empire to remove the restriction legend from Savov's

12                shares presented on January 11, 2022 and to issue Savov unrestricted shares;

13        II.     Enter an Order allowing Savov to transfer his unrestricted shares to his

14                brokerage account without the need of Medallion Signature Guarantee;

15   **FURTHER** praying that this honorable court, enter judgment in Savov's favor and against

16   Defendant EMPIRE STOCK TRANSFER, INC., in an amount above $75,000 to be calculated

17   as the difference in share price between January 11, 2022 and the date of restriction removal

18   multiplied by the number of shares owned by Savov or in the alternative in an amount above

19   $75,000 to be determined at trial and for any other relief this court deem just and appropriate.

20        Dated this 31st day of May, 2022

21                                                        _____

22                                                        DIMITAR SAVOV

23

- 14 -

1                UNITED STATES DISTRICT COURT

2                    DISTRICT OF NEVADA

3

4   DIMITAR SAVOV,                 |   CIVIL ACTION FILE

5       PLAINTIFF,             |   NO. _____

6   V.                             2:22-cv-00861-JAD-VCF

7   EMPIRE STOCK TRANSFER, INC.,

8       DEFENDANT.

9

10                       **Verification**

11        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts and

12   allegations set forth above are true and correct.

13        Executed on this the 31st day of May, 2022

14

15                                Dimitar Savov

16

1   Dimitar Slavchev Savov

2   61 Nishava str. ent. A, fl. 3, apt. 6

3   Sofia 1680

4   Bulgaria

5   +359 88 99 88 313

6   dimitar.savov@ymail.com

7               UNITED STATES DISTRICT COURT

8                    DISTRICT OF NEVADA

9

10  DIMITAR SAVOV,                          CIVIL ACTION FILE

11       PLAINTIFF,                         NO

12  V.                                      **2:22-cv-00861-JAD-VCF**

13  EMPIRE STOCK TRANSFER, INC.,

14       DEFENDANT.

15

16  **ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY**

17                       **INJUNCTION**

18       Plaintiff, Dimitar Slavchev Savov ("Savov") having filed his Motion for a Preliminary

19  Injunction ("Motion") and the Court having considered the Motion and having found good

20  cause therefor,

21       **IT IS HEREBY ORDERED** that Plaintiff's Motion is **GRANTED** and that Defendant

22  Empire Stock Transfer, Inc. ("Empire") is required to immediately remove the restrictive

- 1 -

1    legend from Savov's Enzolytics Shares that were presented to Empire on January 11, 2022 and

2    issue Savov unrestricted shares without further delay.

3           **IT IS FURTHER ORDERED** that Savov is allowed to transfer his unrestricted shares

4    to his brokerage account at Saxo Bank A/S ("Saxo") without the requirement of a Medallion

5    Signature Guarantee ("MSG") on the condition that Savov provides to the Court a copy of the

6    transfer request along with an Affidavit affirming that Savov is the person making the request.

7           Dated this _____ day of _____, 2022

8                                                              _____

9                                                              Hon. _____
10                                                             United States District Judge

1   Dimitar Slavchev Savov

2   61 Nishava str. ent. A, fl. 3, apt. 6

3   Sofia 1680

4   Bulgaria

5   +359 88 99 88 313

6   dimitar.savov@ymail.com

7                   UNITED STATES DISTRICT COURT

8                        DISTRICT OF NEVADA

9

10   DIMITAR SAVOV,                              CIVIL ACTION FILE

11          PLAINTIFF,                           NC

12   V.                                          **2:22-cv-00861-JAD-VCF**

13   EMPIRE STOCK TRANSFER, INC.,

14          DEFENDANT.

15

16               **MOTION FOR PRELIMINARY INJUNCTION**

17          Plaintiff, Dimitar Slavchev Savov ("Savov"), respectfully moves this Court to issue an

18   order granting Savov Preliminary Injunction against Defendant, Empire Stock Transfer, Inc.

19   ("Empire"), requiring Empire 1) to remove the restrictive legend from Savov's Enzolytics Inc.

20   (Enzolytics) shares and to issue Savov unrestricted shares; further 2) allowing Savov to transfer

21   his unrestricted shares to his brokerage account without the need for a Medallion Signature

22   Guarantee. In support of its motion, Savov states as follows:

23                              **INTRODUCTION**

- 1 -

1       1.  On March 6, 2018, Savov was issued 71,900,000 Enzolytics Inc. ("Enzolytics")

2    common stock for "services rendered" as publicly disclosed by Enzolytics, for which Savov has

3    provided full consideration and has held for more than 4 years.

4       2.  On January 11, 2022, Savov properly presented his Enzolytics shares ("Shares") to

5    Empire with a request to remove the restriction legend from his shares, for which Savov had

6    provided a Valid Legal Opinion letter pursuant to Rule 4(a)(1).

7       3.  Empire have confirmed that Savov's presentment is in order.

8       4.  Instead of processing the restriction removal within 72 hours, as is mandated by 17 CFR

9    § 240.17Ad-2, Empire imposed a 30-day hold on Savov's restriction removal.

10      5.  Upon doing so, Empire stated that if they "do not receive a court order from a judge to

11   stop this transfer, we will be processing on the 31st day" and that they will strictly follow

12   U.C.C. guidelines.

13      6.  On February 10, 2022, the 31st day after Savov's proper presentment, despite not

14   receiving a court order from a judge stopping the restriction removal, Empire did not remove

15   the restriction legend from Savov's shares and did not issue Savov unrestricted common stock.

16                                    **ARGUMENT**

17   **I.    SAVOV HAS SUFFERED AND WILL SUFFER FURTHER HARM UNLESS**

18         **THE RESTRICTIVE LEGEND IS IMMEDIATELY REMOVED**

19      7.  By not removing the restrictive legend from Savov's shares on January 11, 2022 or on

20   February 10, 2022, Empire have violated U.C.C. guidelines, federal and state securities law,

21   and their own word.

22      8.  For more than 4 months since Savov properly presented his shares to Empire for

23   restriction removal on January 11, 2022 and for more than 3 months after the 30-day hold

1    expired on February 9, 2022, despite Savov's repeated requests to Empire to follow the laws

2    and guidelines. Empire have neither processed, nor rejected Savov's request for restriction

3    removal.

4         9.   A transfer agent may either process or reject a restriction removal request, but Empire

5    have failed to do either, continuing to cause unreasonable delay and harm to Savov.

6         10. As a result of Empire's violations and failure to remove the restrictive legend from

7    Savov's shares, Savov has been unable to sell his Shares.

8         11. As a result of his inability to sell his Shares, Savov has suffered damages in excess of

9    $75,000.

10        12. Since Savov properly presented his shares, the Enzolytics share price has fallen from

11   0.1319$ per share (opening price on January 11, 2022) to 0.0929$ per share (opening price on

12   February 10, 2022) to 0.0602$ per share at which the shares opened on the date of this filing,

13   which illustrates the following:

14        a.   During the 30-day hold, Savov's shares have lost 2,796,300$ in value.

15        b.   Since February 10, 2022, Savov's shares have further lost 2,344,590$ in value.

16        c.   Since January 11, 2022, Savov's shares have lost more than half of their value,

17             specifically Savov's shares have lost 5,140,890$ in value.

18        13. Since January 11, 2022, Enzolytics stock have shown an overall downward trend in their

19   price, as well as high volatility.

20        14. Due to these factors and the general inherent volatility in penny stock, Savov's shares

21   are at a risk of rapidly losing more of their value, causing Savov to sustain further damages and

22   irreparable harm while Empire answers the Verified Complaint and this case is decided.

1    15. Empire faces no threatened injury from removing the restrictive legend from Savov's

2    shares and have stated that an appropriate legal court may approve the legend removal.

3    16. Savov has a high probability of success on the merits, as Savov has properly presented

4    his shares for restriction removal on January 11, 2022, Empire have failed to remove the

5    restriction legend on January 11, 2022 or February 10, 2022 despite not receiving a court order

6    stopping the restriction removal, the value of Savov's shares has declined significantly since

7    then, and Savov has suffered damages in excess of 75,000$ due to his inability to sell his shares

8    as a result of Empire's actions.

9    17. It is in the public interest for transfer agents such as Empire to strictly follow the law

10    and guidelines, and to not have the ability to arbitrarily violate those laws, guidelines, and their

11    own word, as otherwise people will fear that the law does not protect their investment and will

12    be hesitant to invest in the U.S. markets.

13    18. It is in the public interest for investors to know that in cases when a transfer agent has

14    failed to perform their duties, the Court will protect the investor and will require from said

15    transfer agent to execute their duties in a timely manner.

16    19. Accordingly, Savov is entitled to be granted his request for a preliminary injunction in

17    the form of a Court order, requiring Empire to immediately remove the restrictive legend from

18    Savov's shares and to issue Savov unrestricted shares.

19    **II.    SAVOV MAY TRANSFER HIS UNRESTRICTED SHARES WITHOUT THE**

20    **NEED FOR A MEDALLION SIGNATURE GUARANTEE**

21    20. In order to sell his shares once the restriction legend is removed and they are issued as

22    unrestricted, Savov will need to transfer the Shares to a brokerage account.

1      21. Empire usually requires a Stock Power with a Medallion Signature Guarantee ("MSG")

2    in order to transfer shares to a brokerage account.

3      22. Since Savov is a Bulgarian resident and citizen, he has access to only a handful of

4    members of the Medallion Signature Guarantee Program who are based in the United Kingdom.

5      23. To attain an MSG, Savov must first send all required documents via email for a pre-

6    approval process, which, once approved, must then be sent via international shipping to the UK

7    based MSG provider, who, after placing the MSG on the Stock Power, must in turn send the

8    documents to Empire via international shipping.

9      24. Thus, obtaining an MSG may take Savov more than 2 weeks, which is in stark contrast

10   to U.S. citizens who have the ability to acquire an MSG locally and provide it to a transfer

11   agent within 3 business day and who have access to a myriad of member of the Medallion

12   Signature Guarantee Program.

13     25. An MSG is used to prevent fraud by verifying that the person making the transfer

14   request is the person to whom the shares are issued.

15     26. Savov has a brokerage account with Saxo Bank A/S ("Saxo"), a reputable international

16   broker, where Savov has already verified his identity.

17     27. Savov can make a transfer request via Saxo, which can be executed through the DWAC

18   or DRS system, thus significantly reducing the risk of identity fraud.

19     28. Once Savov has made a transfer request with Saxo, Savov can present a copy of the

20   transfer request to this Court along with an Affidavit to show that he is the one making the

21   request, thus entirely removing the need for a verification via a MSG.

22     29. Savov is at risk of suffering further irreparable harm during the time it may take him to

23   acquire an MSG and provide it to Empire.

1    30. Empire faces no threatened injury from transferring Savov's unrestricted shares to

2    Savov's brokerage account at Saxo without a MSG upon a transfer request from Savov and

3    under the supervision of this Court.

4    31. Accordingly, Savov is entitled to be granted his request for a preliminary injunction in

5    the form of a Court order, allowing Savov to transfer his unrestricted shares to his brokerage

6    account without the need for a MSG.

7

8        **WHEREFORE**, Savov respectfully requests that this Court grant Savov's Motion for

9    Preliminary Injunction and enter an order requiring Empire 1) to remove the restrictive legend

10   from Savov's Shares and to issue Savov unrestricted shares; further 2) allowing Savov to

11   transfer his unrestricted shares to his brokerage account without the need for a MSG.

12       Dated this 31st day of May, 2022

13                                                    _____

14                                                    DIMITAR SAVOV

# EXHIBIT 7

RE: Removal of Restriction Legend from my Enzolytics Inc. (ENZC) Shares

From:  Casey Weseloh (casey@empirestock.com)

To:      brian@empirestock.com; dimitar.savov@ymail.com

Cc:      cliffredekop@gmail.com; patrick@empirestock.com

Date:   Wednesday, January 12, 2022, 08:43 PM GMT+2

Hello Dimitar,

Everything was presented correctly. We presented the item to our counsel, and they advised that we honor the companies request for a 30 day hold pursuant to UCC Article 8.

The request date started yesterday, January 11, 2021. If we do not receive a court order from a judge to stop this transfer, we will be processing on the 31st day.

Thank you,

Casey Weseloh

**Empire Stock Transfer Inc.**

casey@empirestock.com | P (702) 818-5898 | F (702) 974-1444 | www.empirestock.com

We are a full-service agent offering:

Transfer Agent & Registrar | EDGAR Filings | Proxy/Annual Meetings | Resident Agent Services

Let us do what we do best so you can do what you do best – run your business.

**Small Cap Agents for Today's Business**

CONFIDENTIALITY NOTICE: This e-mail and any attached documents contain information which is PRIVILEGED, PROPRIETARY and CONFIDENTIAL, are protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, Federal and State copyright laws, and are intended only for the use of the recipient(s) named herein.  No part of this document or any attachments may be reproduced or transmitted without permission from Empire Stock Transfer Inc.  If you are not the intended recipient, you are hereby notified that any disclosure, distribution, or the taking of any action in reliance upon the contents of this communication is strictly prohibited.  If you have received this transmission in error, please notify us immediately.

|

Re: Removal of Restriction Legend from my Enzolytics Inc. (ENZC) Shares

From:  Dimitar Savov (dimitar.savov@ymail.com)

To:     casey@empirestock.com

Cc:     brian@empirestock.com; cliffredekop@gmail.com; patrick@empirestock.com

Date:  Wednesday, January 12, 2022, 10:21 PM GMT+2


Dear Casey Weseloh and Brian Barthlow,

The previous time that we presented the documents for restriction removal in December 2021, the company tried to place a 30-day hold. At that point, Mr Brian Barthlow and Empire Stock Transfer declined their request, citing correctly that they have tried to do the same in October and did not present a single document at the time. In all three occasions, Enzolytics Inc. is trying to place a 30-day hold on all of my shares, not a separate certificate. Further, it is against all reason for Empire Stock Transfer to first decline the company's request for a 30-day hold in December, but to honor it now, when in both occasions I am presenting the same certificates for restriction removal, especially when the company has not attained any document from the court since December 16th. It is clear that Enzolytics Inc. does not plan to attempt to attain a court order, but are simply engaging in malicious prosecution against me.

I have informed the regulatory agencies, including the SEC, FINRA, and OTC Market Surveillance Group, regarding the numerous criminal activities done by the management of Enzolytics Inc; I am attaching to this email my 7 TCR Reports. There is a systematic lawlessness and harassment placed upon me by the company using any means necessary, including using the services of OTC Market Prohibited Service Providers, which You are aware of, to stop my ability to make a return on my investment for shares that I have acquired legally. A legal representative of Enzolytics Inc appointed by Charles Cotropia, namely Ivan Elandjiev, has informed me that the management of Enzolytics will lift the restriction legend from 20,000,000 of my shares, if I transfer the other 51,700,000 to a person or entity of their choice, along with the rights to the Clinical Trial of ITV-1 that I have conducted in Bulgaria, and my entire business. I declined this offer, because it is an extortion and theft, for which reason the harassment against me continues. I have enough evidence of this and only my desire to not damage the company has held me from informing the judicial and enforcing agencies in the US and Bulgaria about this extortion.

I hope that You reconsider and that You execute the process within 72 hours as is mandated by law, so that You do not inadvertently become an accomplice to their unjustified and illegal-criminal actions against me.

Best regards,

Dimitar Savov

# EXHIBIT 6

# LASH WILCOX & GRACE PL
### *Attorneys and Counselors at Law*

2202 WEST SHORE BLVD., STE. 200
TAMPA, FL 33607
phone 813.639.4205
fax 813.639.7501
Direct Dial: 813.639.4206
kgrace@lashwilcoxandgrace.com
**www.willtrustkengrace.com**

December 14, 2021

**To: Empire Stock Transfer via email to info@empirestock.com**

***Re: Amended Rule 4(a)(1) Opinion Letter for Dimitar Slavchev Savov for Restrictive Legend Removal for 71,700,000 Shares of Common Restricted Enzolytics Inc. (ENZC) Stock[1]***

Dear Stock Transfer Agent Professional:

This office has been requested to render an opinion regarding the removal of the restrictive legend from a total of 71,700,000 shares (the "Shares") of common stock of Enzolytics Inc. (the "Company" or "ENZC") in the name of Dimitar Slavchev Savov. ("Shareholder").

**Summary:** The Shareholder acquired the Shares from the Company on 3/6/18.[2] In the opinion of this office Shareholder is not an issuer, dealer or underwriter with respect to the sale of the Shares as outlined herein; therefore, the exemption in Section 4(a)(1) of the 1933 Securities Act ("Act") applies.  As such, the 71,700,000 Shares may be issued without a restrictive legend, and they may be sold on the open market pursuant to Section 4 of the Act.

**Background:** On 3/6/18, the Company issued 71,700,000 Shares to Shareholder and did so by issuing 52 stock certificates.  See Account Statement, which contains all 52 stock certificate numbers and reflects the issuance of all Shares.

**Affiliate Status**: Shareholder is not an affiliate (officer, director, manager, 10% or more Voting/Preferred Stockholder) of the Company at the time of the proposed sale, and as far as we can tell, has never been an affiliate of the Company.

**Current Public Information:** The Company is a non-reporting company. It has not filed anything with the SEC, and it has never filed any 10-Ks or 10-Qs.  However, it has been filing reports and other documents in OTC Markets.  There are several and recent quarterly reports on file as well as several and recent annual reports filed with OTC Markets.  It also has also periodically filed various supplemental information, notifications and letters. There are letters on file from attorneys confirming that there is adequate current information available to the public.  As such, there is adequate current public information available regarding the Company. Notwithstanding, a company's current public information is irrelevant for purposes of Rule 4(a)(1).

---

[1] Amended to correct scrivener's error of middle name; otherwise; identical.

[2] There is no agreement that would serve as any type of source documentation for the Shares. Shareholder owns the rights to the biotech technology in a Bulgarian LLC, and he was negotiating with between the Company (Enzolytics Inc. – ENZC – OTC Pink) and Immunotech Laboratories, Inc. (IMMB - OTC Pink) to gain a further interest in the technology. As a result of these negotiations, the Company issued to Shareholder the Shares, which was basically rewarding his ownership and investment in that other company and compensation for his efforts in the described negotiations. All IMMB shareholders were issued shares. The deal never closed between the two Companies, but Shareholder had earned the shares based on his good faith negotiations with ENZC.

**Shell Status:** The Company is not currently a shell, and from what we have been able to determine, it was never a shell company since it has been Enzolytics Inc. However, before the Company was Enzolytics, it was known as: Immunotech Laboratories, Inc.- September 11, 2017; Eco-Petroleum Solutions, Inc.-November 16, 2012; Structural Enhancement Technologies Corp.- May 10, 2010; Extreme Mobile Coatings Worldwide Corp.- March 2, 2009; Extreme Mobile Coatings Corp., Ltd. -October 10, 2008; Falcon Media Services, Ltd.-November 24, 2004; T&T Homes Limited -July 28, 2004. And the Company was incorporated and domiciled in the United Kingdom from 2004 to 2009. Therefore, we cannot state for certain whether or not the Company was a former shell. We have made inquiries into the shell statuses of these predecessors; however, to date, we have not been able to confirm non-shell status. We may be able to make such a confirmation in the future. However, for now, we will treat the Company as is if one or more of its predecessors was a shell. In that the Company is a non-reporting or alternate reporting company and does not have three current 10-Qs and a 10-K on file with the SEC, it has not cured any former shell status. However, under Section 4(a)(1) of the Act, the Company's status as a shell is irrelevant.

**Legal Analysis of the Relevant Sections and Specific Exemption at Issue:** Section 5(a) of the Act prohibits the sale of unregistered securities. However, §4(a)(1) of the Act exempts certain transactions from the §5 registration requirement. Specifically, §4(a)(1) exempts "transactions by any person other than an issuer, underwriter, or dealer."

The Shareholder herein is not an "issuer" as defined by § 2(a)(4). The term "issuer" means every person who issues or proposes to issue any security; except that with respect to certificates of deposit, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors (or persons performing similar functions) or of the fixed, restricted management, or unit type, the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; except that in the case of an unincorporated association which provides by its articles for limited liability of any or all of its members, or in the case of a trust, committee, or other legal entity, the trustees or members thereof shall not be individually liable as issuers of any security issued by the association, trust, committee, or other legal entity; except that with respect to equipment-trust certificates or like securities, the term "issuer" means the person by whom the equipment or property is or is to be used; and except that with respect to fractional undivided interests in oil, gas, or other mineral rights, the term "issuer" means the owner of any such right or of any interest in such right (whether whole or fractional) who creates fractional interests therein for the purpose of public offering. Here, Shareholder is not an issuer since it is not the entity that issued the Shares. Further, Shareholder is not the Company, nor is he controlled by the Company. *See* § 2(a)(4).

Likewise, the Shareholder is not a "dealer" as defined by § 2(a)(12). *See* § 2(a)(12). The term "dealer" means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person. Here, Shareholder does not deal or trade in securities issued by another person. Shareholder is retired, but used to be a consultant, a negotiator and a business owner of a biotechnology company. Shareholder is not in the business of buying and selling securities, directly or indirectly. And Shareholder is not licensed as a dealer. Therefore, Shareholder is not a dealer.

The critical issue in this instance is whether the Shareholder is an "underwriter" as defined by § 2(a)(11). The term "underwriter" means any person who has (1) **purchased** from an issuer

with a view to, or (2) offers or sells for an issuer in connection with, the **distribution** of any security, or (3) participates or has a direct or indirect participation in any such undertaking, or (4) participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer. These four main parts of the definition make up the "four tests of underwriter status," which are detailed and addressed below.

-<u>Whether or not the seller purchased his or her securities from the issuer</u>: The seller (the Shareholder) did not **purchase** the securities (the Shares) from the issuer (the Company). Regarding the Shares, Shareholder acquired them for his investment in the third party company and for his negotiation work, and as such, they were not purchased, and certainly not purchases as part of an IPO.

-<u>Whether or not the seller is offering or selling for the issuer</u>: The seller (the Shareholder) did not and is not offering or selling the securities (the Shares) for the issuer (the Company).

-<u>Whether or not the seller participated or had a direct or indirect participation in any such **distribution**</u>: The seller (the Shareholder) did not participate directly or otherwise in any distribution.

-<u>Whether or not the seller participated or had a participation in the direct or indirect underwriting of any such **distribution**</u>: The seller (the Shareholder) did not participate directly or otherwise in any underwriting of any **distribution**.

And the person (the Shareholder) is not: (a) directly or indirectly controlling or controlled by the issuer (the Company) nor is he (b) under direct or indirect common control with the issuer (the Company).

First, distribution is not defined by the Act, but it is widely accepted that it means "public offering." Therefore, the first prong of the analysis is whether a nonpublic offering can be shown to have been made by the Company. In such a case, the possibilities are greatly diminished that a shareholder's subsequent sale of shares would be considered a distribution and that the shareholder would be deemed an underwriter.

Section 4(a)(2) of the Act, which is applicable to issuers, exempts from the registration requirements under the Act transactions by an issuer not involving a "public offering." In the determination of whether or not the issuance of the Shares was a "public offering," we look to the factors set out by the following publications:

(a) *SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953);
(b) *Doran v Petroleum Management Corp.*, 545 F.2d 893, 900 (5th Cir. 1977);
(c) *Hill York Corp. v. American Int'l Franchises, Inc.*, 448 F.2d 680, 687-89 (5th Cir. 1971);
(d) Securities Act Release No. 4552 (November 6, 1962).

These publications set out factors in determining whether an offering is public or private, including: (1) the number of offerees and their relationship to each other and to the issuer, (2) the number of units offered, (3) the size of the offering, and (4) the manner of the offering. We also look to the factors set forth in *Cook v. Avien, Inc.*, 572 F.2d 685, 691 (1st Cir. 1978) (Holding

that sales may be exempted if private offering is made in which purchasers are limited in number, are sophisticated, have a relationship with the issuer enabling them to command access to information that would otherwise be contained in a reg. statement.).

Regarding the Shares, they were issued as part of a private transaction not a public offering. The shares were issued to Shareholder for his investment in the third party company and for his negotiation work. And the manner of the offering was private not public. This leads us to conclude that the transaction at issue did not amount to a public offering, and as such, not a distribution.

Second, a factor to be analyzed is whether or not the Shares were acquired with an intent to distribute or of they came to rest with the Shareholder.  Here, they were not.  Consider the following:

Over the years, interested persons and entities looked at the amount of time a shareholder held the securities in order to ascertain whether they were acquired with an intent to distribute or whether they came to rest.  And since intent is difficult to establish and prove, interested persons and entities looked to other sections in the Act in order to fashion a test.  At that time, years ago, the safe harbor in Rule 144 was two (2) years.  Before 2008, under Rule 4(a)(1), two (2) years was generally the amount of time the shareholder had to hold the shares in order to be able to state that the shares were not acquired with a view toward distribution and instead came to rest with the shareholder. The seminal cases before 2008 were *U.S. v. Sherwood*, 175 F. Supp. 480, 483 (1959) and *Ackerberg v. Johnson*, 892 F.2d 1328 (1989). This two (2) year rule of thumb was based on the SEC's safe harbor provision under Rule 144, which at that time, was two (2) years.

However, since *Sherwood* and *Ackerberg*, the Act was amended. On 2/15/08, the adopted amendments to Rule 144 and Rule 145 of the Securities Act took effect and were implemented to increase the liquidity of privately sold securities and securities acquired in business combinations by giving holders the ability to resell those securities more rapidly without registration under the Securities Act. Amongst other amendments, the Rule 144 amendments shortened the holding period for the resale of restricted securities of reporting companies under this safe harbor from six (6) month holding period for securities issued by a reporting company current and in good standing with the SEC held by a non-affiliate, and a <u>one (1) year holding period otherwise</u>.

Since the 4(a)(1) holding period "rule of thumb" was based on the safe harbor of Rule 144, arguably once Rule 144 was amended, the holding period "rule of thumb" under Rule 4(a)(1) moved from two (2) years to at one (1) year. And while this change under Rule 4(a)(1) was not formalized, many attorneys and scholars have picked up on the amendment and resulting connection and change and are reaching the conclusion that a shareholder who holds stock for a year does implicate the requisite lack of intent to distribute and finding that the stock did come to rest with that shareholder.

Here, Shareholder has held all of the Shares since 3/6/18, which is when the stock certificates were issued. Therefore, the Shareholder has held the Shares for over two (2) years.  And in light of the 2008 amendment to the Act and the argument above, which others have made and with which we agree, we reach the conclusion that the Shares were not acquired with a view toward distribution and instead came to rest with the Shareholder.

Based on the foregoing and in particular, the plain language of the Act and the body of regulations, article, and cases interpreting the Act, in our opinion, Shareholder is not an underwriter. Therefore, Section 4(a)(1) exempts the transaction from the Section 5 registration requirement at issue.

## Disclaimer:

As counsel, we have examined facts and questions of law as we have considered appropriate for purposes of this letter. In preparation of a prior letter on this matter, we have relied upon assurances of our client and his agents and representatives, the officers of the Company, and others as well as all reports filed with the SEC in compliance with the Act without having independently verified such factual matters. We are and OTC Markets pining herein as to the federal securities laws, and we express no opinion with respect to the applicability thereto, or the effect thereon, of the laws of any other jurisdiction or as to any matters of municipal law or the laws of legal agencies within a state.

We have relied upon the following additional information in rendering our opinion:

1. That the information provided to us by the Shareholder referenced herein and that it is true and correct.
2. That the information the Company disseminated to the SEC, OTC Markets, and the public, and that it was true and correct and timely.
3. That the Shareholder did in fact acquire the stock at issue for sufficient consideration as represented.
4. That the Shareholder is the true and valid holder of the Shares.
5. That the Shareholder is not and was not: an officer, director, owner of ten percent (10%) or more of the outstanding capital stock of the Company or is otherwise in a controlling position with, or an affiliate of, the Company (nor been so designated during the ninety (90) days immediately preceding the date hereof).
6. That the Shareholder is not an issuer, dealer, or underwriter.
7. That none of the Shares were or are subject to any stop-order or any agreement granting any pledge, lien, mortgage, hypothecation, security interest, charge, option, encumbrance, or lock up.

We have assumed: (a) that the documents provided and referenced herein (collectively, the "Documents") have been duly authorized, executed and delivered by the parties thereto, (b) that the Documents constitute legally valid and binding obligations of the parties thereto, enforceable against each of them in accordance with their respective terms, and (c) that the status of the Documents as legally valid and binding obligation of the parties in not affected by any (i) breaches of, or defaults under, agreements or instruments, (ii) violations of statutes, rules, regulation, or court or governmental orders, or (iii) failures to obtain required consents, approvals or authorizations from, or make required registration, declaration, or filings with, governmental authorities.

Further, we have assumed the genuineness of the signatures both manual and conformed and electronic, the authenticity of the Documents, the conformity of copies of documents with originals, and the correctness of facts set forth therein.

Our opinions are subject to: (a) the effect of bankruptcy, insolvency, reorganization, fraudulent transfer, moratorium or other similar laws relating to or affecting the rights and remedies of creditors; (b) the effect of general principles of equity, whether considered in a proceeding in equity or at law (including the possible unavailability of specific performance or injunctive

relief), concepts of materiality, reasonableness, good faith, and fair dealing, and the discretion of the court before which a proceeding therefor may be brought; (c) the invalidity under certain circumstances under law or court decisions of provision providing for the indemnification of or contribution to a party with respect to a liability where such indemnification or contribution is contrary to public policy; and (d) we express no opinion with respect to: (i) provisions for liquidated damages, default interest, late charges, monetary penalties, make-whole premiums or other economic remedies to the extent such provision are deemed to constitute a penalty, (ii) consents to, or restrictions upon, governing law, jurisdiction venue, arbitration, remedies or judicial relief, (iii) any provision requiring the payment of attorneys' fees, where such payment is contrary to law or public policy, (iv) advance waivers of claims, defenses, rights granted by law, or notice, opportunity for hearing, evidentiary requirements, statutes of limitation, trial by jury or at law, or other procedural rights, (v) waivers of broadly or vaguely stated rights, (vi) provisions for exclusivity, election or cumulation of rights or remedies, (vii) provision authorizing or validating conclusive or discretionary determination, (viii) proxies, powers, and trusts, (ix) provisions prohibiting, restricting, or requiring consent to assignment or transfer of any right or property and (x) the severability, if invalid, of provisions to the foregoing effect.

This opinion is expresses solely on the facts and assumptions set forth herein and is specifically limited to the investigation and examination stated and such other investigation as we deemed necessary. After such investigation, we know of no facts which lead us to conclude that any opinion or conclusion set forth above or below is not correct. The opinion expressed herein is given as of the date hereof and we disclaim any obligation to advise you of any change in any matter set forth herein.

**Qualifications:** This opinion does not provide a defense to a violation of the registration requirements insofar as Shareholder's sale is part of a plan or scheme to evade said requirements. For purposes of this opinion, We have been furnished with and have examined originals or copies, certified or otherwise identified to my satisfaction, of all such records of the Company, agreements and other instruments, certificates of officers and representatives of the Company, certificates of public officials and other documents as we have deemed it necessary to require as a basis for the opinions hereafter expressed regarding the Shares.

As to questions of fact material to such opinions, we have, where relevant facts were not independently established, relied upon certifications by principal officers of the entities involved including the Stock Transfer Agent(s), Shareholder, and/or the Company. We have made such further legal and actual examination and investigation, as we deem necessary for purposes of rendering the following opinion. This opinion is based expressly on the facts stated herein and may not be relied upon if other facts, not presently known to us, come to light. Opinion letters of counsel are not binding upon the SEC or the Courts, and to the extent that persons relying upon this letter may have knowledge of facts or circumstances that are contrary to those upon which this opinion is based, this opinion would not be applicable. We am admitted to practice law in the State of Florida. The opinions expressed above are limited to the Federal Law of the United States of America and no opinion is provided regarding any federal or state law not specifically referenced herein.

The opinions set forth herein are expressed as of the date hereof and remain valid so long as the documents, instruments, records, and certificates we have examined and relied upon as noted above, are unchanged and the assumptions we have made, as noted above, are valid. If any facts or documents are determined to be incorrect, misstated, or misrepresented, then the opinion or opinions expressed herein may not continue to be valid. Furthermore, we disclaim

any undertaking to advise you hereafter whether the same would, if now existing and known to this office, cause any change or modification herein.

This opinion may be relied upon by the named addressees above and the shares covered hereby for the sole and express purpose of registering transfer of the shares on behalf of the Shareholder in accordance herewith. This opinion may not be relied upon by any other party for any other purpose and may not be reproduced or distributed (except to governmental or regulatory agencies as required by regulation or law) without the prior written permission of named counsel.

## Conclusion:

In summary, for the reasons described above, the 71,700,000 Shares may be issued without a restricted legend and sold pursuant to Section 4 of the Act.

Sincerely,

*Kenneth C. Grace*
Kenneth C. Grace., Esq.

cc:     Dimitar Slavchev Savov via email to: dimitar.savov@ymail.com and to his agent(s) via email to: noblehouse90@outlook.com & cliffredekop@gmail.com

# LASH WILCOX & GRACE PL
### *Attorneys and Counselors at Law*

2202 WEST SHORE BLVD., STE. 200
TAMPA, FL 33607
phone 813.639.4205
fax 813.639.7501
Direct Dial: 813.639.4206
kgrace@lashwilcoxandgrace.com
**www.willtrustkengrace.com**

December 15, 2021

**To: Empire Stock Transfer via email to info@empirestock.com**

*Re: Rule 4(a)(1) Opinion Letter for Mariya Stanislavova Radivoeva for Restrictive Legend Removal for 5,000,000 Shares of Common Restricted Enzolytics Inc. (ENZC) Stock*

Dear Stock Transfer Agent Professional:

This office has been requested to render an opinion regarding the removal of the restrictive legend from a total of 5,000,000 shares (the "Shares") of common stock of Enzolytics Inc. (the "Company" or "ENZC") in the name of Mariya Stanislavova Radivoeva ("Shareholder").

**Summary:** The Shareholder acquired the Shares from the Company on 3/6/18.[1] In the opinion of this office Shareholder is not an issuer, dealer or underwriter with respect to the sale of the Shares as outlined herein; therefore, the exemption in Section 4(a)(1) of the 1933 Securities Act ("Act") applies.  As such, the 5,000,000 Shares may be issued without a restrictive legend, and they may be sold on the open market pursuant to Section 4 of the Act.

**Background:** On 3/6/18, the Company issued 5,000,000 Shares to Shareholder and did so by issuing 1 stock certificate [certificate number 4176]. Shareholder has held this certificate/the Shares ever since (for over 3 years).

**Affiliate Status**: Shareholder is not an affiliate (officer, director, manager, 10% or more Voting/Preferred Stockholder) of the Company at the time of the proposed sale, and as far as we can tell, has never been an affiliate of the Company.

**Current Public Information:** The Company is a non-reporting company. It has not filed anything with the SEC, and it has never filed any 10-Ks or 10-Qs.  However, it has been filing reports and other documents in OTC Markets.  There are several and recent quarterly reports on file as well as several and recent annual reports filed with OTC Markets.  It also has also periodically filed various supplemental information, notifications and letters. There are letters on file from attorneys confirming that there is adequate current information available to the public. As such, there is adequate current public information available regarding the Company. Notwithstanding, a company's current public information is irrelevant for purposes of Rule 4(a)(1).

**Shell Status:** The Company is not currently a shell, and from what we have been able to determine, it was never a shell company since it has been Enzolytics Inc.  However, before the

---

[1] There is no agreement that would serve as any type of source documentation for the Shares. Shareholder acquired the Shares because Shareholder was a shareholder and an investor in IMMB and, as is stated in the corporate disclosures, Shareholder was issued ENZC shares for services associated with the implementation of the strategy in Bulgaria.

Company was Enzolytics, it was known as: Immunotech Laboratories, Inc.- September 11, 2017; Eco-Petroleum Solutions, Inc.-November 16, 2012; Structural Enhancement Technologies Corp.- May 10, 2010; Extreme Mobile Coatings Worldwide Corp.- March 2, 2009; Extreme Mobile Coatings Corp., Ltd. -October 10, 2008; Falcon Media Services, Ltd.- November 24, 2004; T&T Homes Limited -July 28, 2004. And the Company was incorporated and domiciled in the United Kingdom from 2004 to 2009. Therefore, we cannot state for certain whether or not the Company was a former shell. We have made inquiries into the shell statuses of these predecessors; however, to date, we have not been able to confirm non-shell status. We may be able to make such a confirmation in the future. However, for now, we will treat the Company as is if one or more of its predecessors was a shell. In that the Company is a non-reporting or alternate reporting company and does not have three current 10-Qs and a 10-K on file with the SEC, it has not cured any former shell status. However, under Section 4(a)(1) of the Act, the Company's status as a shell is irrelevant.

**Legal Analysis of the Relevant Sections and Specific Exemption at Issue:** Section 5(a) of the Act prohibits the sale of unregistered securities. However, §4(a)(1) of the Act exempts certain transactions from the §5 registration requirement. Specifically, §4(a)(1) exempts "transactions by any person other than an issuer, underwriter, or dealer."

The Shareholder herein is not an "issuer" as defined by § 2(a)(4). The term "issuer" means every person who issues or proposes to issue any security; except that with respect to certificates of deposit, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors (or persons performing similar functions) or of the fixed, restricted management, or unit type, the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; except that in the case of an unincorporated association which provides by its articles for limited liability of any or all of its members, or in the case of a trust, committee, or other legal entity, the trustees or members thereof shall not be individually liable as issuers of any security issued by the association, trust, committee, or other legal entity; except that with respect to equipment-trust certificates or like securities, the term "issuer" means the person by whom the equipment or property is or is to be used; and except that with respect to fractional undivided interests in oil, gas, or other mineral rights, the term "issuer" means the owner of any such right or of any interest in such right (whether whole or fractional) who creates fractional interests therein for the purpose of public offering. Here, Shareholder is not an issuer since it is not the entity that issued the Shares. Further, Shareholder is not the Company, nor is he controlled by the Company. *See* § 2(a)(4).

Likewise, the Shareholder is not a "dealer" as defined by § 2(a)(12). *See* § 2(a)(12). The term "dealer" means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person. Here, Shareholder does not deal or trade in securities issued by another person. Shareholder is retired, but used to be a consultant, a negotiator and a business owner of a biotechnology company. Shareholder is not in the business of buying and selling securities, directly or indirectly. And Shareholder is not licensed as a dealer. Therefore, Shareholder is not a dealer.

The critical issue in this instance is whether the Shareholder is an "underwriter" as defined by § 2(a)(11). The term "underwriter" means any person who has (1) **purchased** from an issuer with a view to, or (2) offers or sells for an issuer in connection with, the **distribution** of any security, or (3) participates or has a direct or indirect participation in any such undertaking, or

(4) participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer. These four main parts of the definition make up the "four tests of underwriter status," which are detailed and addressed below.

-<u>Whether or not the seller purchased his or her securities from the issuer</u>: The seller (the Shareholder) did not **purchase** the securities (the Shares) from the issuer (the Company). Regarding the Shares, Shareholder acquired them for his investment in the third party company and for his negotiation work, and as such, they were not purchased, and certainly not purchases as part of an IPO.

-<u>Whether or not the seller is offering or selling for the issuer</u>: The seller (the Shareholder) did not and is not offering or selling the securities (the Shares) for the issuer (the Company).

-<u>Whether or not the seller participated or had a direct or indirect participation in any such **distribution**</u>: The seller (the Shareholder) did not participate directly or otherwise in any distribution.

-<u>Whether or not the seller participated or had a participation in the direct or indirect underwriting of any such **distribution**</u>: The seller (the Shareholder) did not participate directly or otherwise in any underwriting of any **distribution**.

And the person (the Shareholder) is not: (a) directly or indirectly controlling or controlled by the issuer (the Company) nor is he (b) under direct or indirect common control with the issuer (the Company).

First, distribution is not defined by the Act, but it is widely accepted that it means "public offering." Therefore, the first prong of the analysis is whether a nonpublic offering can be shown to have been made by the Company. In such a case, the possibilities are greatly diminished that a shareholder's subsequent sale of shares would be considered a distribution and that the shareholder would be deemed an underwriter.

Section 4(a)(2) of the Act, which is applicable to issuers, exempts from the registration requirements under the Act transactions by an issuer not involving a "public offering." In the determination of whether or not the issuance of the Shares was a "public offering," we look to the factors set out by the following publications:

(a) *SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953);
(b) *Doran v Petroleum Management Corp.*, 545 F.2d 893, 900 (5th Cir. 1977);
(c) *Hill York Corp. v. American Int'l Franchises, Inc.*, 448 F.2d 680, 687-89 (5th Cir. 1971);
(d) Securities Act Release No. 4552 (November 6, 1962).

These publications set out factors in determining whether an offering is public or private, including: (1) the number of offerees and their relationship to each other and to the issuer, (2) the number of units offered, (3) the size of the offering, and (4) the manner of the offering. We also look to the factors set forth in *Cook v. Avien, Inc.*, 572 F.2d 685, 691 (1st Cir. 1978) (Holding that sales may be exempted if private offering is made in which purchasers are limited in number, are sophisticated, have a relationship with the issuer enabling them to command

access to information that would otherwise be contained in a reg. statement.).

Regarding the Shares, they were issued as part of a private transaction not a public offering. The shares were issued to Shareholder for his investment in the third party company and for his negotiation work. And the manner of the offering was private not public. This leads us to conclude that the transaction at issue did not amount to a public offering, and as such, not a distribution.

Second, a factor to be analyzed is whether or not the Shares were acquired with an intent to distribute or of they came to rest with the Shareholder. Here, they were not. Consider the following:

Over the years, interested persons and entities looked at the amount of time a shareholder held the securities in order to ascertain whether they were acquired with an intent to distribute or whether they came to rest. And since intent is difficult to establish and prove, interested persons and entities looked to other sections in the Act in order to fashion a test. At that time, years ago, the safe harbor in Rule 144 was two (2) years. Before 2008, under Rule 4(a)(1), two (2) years was generally the amount of time the shareholder had to hold the shares in order to be able to state that the shares were not acquired with a view toward distribution and instead came to rest with the shareholder. The seminal cases before 2008 were *U.S. v. Sherwood*, 175 F. Supp. 480, 483 (1959) and *Ackerberg v. Johnson*, 892 F.2d 1328 (1989). This two (2) year rule of thumb was based on the SEC's safe harbor provision under Rule 144, which at that time, was two (2) years.

However, since *Sherwood* and *Ackerberg*, the Act was amended. On 2/15/08, the adopted amendments to Rule 144 and Rule 145 of the Securities Act took effect and were implemented to increase the liquidity of privately sold securities and securities acquired in business combinations by giving holders the ability to resell those securities more rapidly without registration under the Securities Act. Amongst other amendments, the Rule 144 amendments shortened the holding period for the resale of restricted securities of reporting companies under this safe harbor from six (6) month holding period for securities issued by a reporting company current and in good standing with the SEC held by a non-affiliate, and a <u>one (1) year holding period otherwise</u>.

Since the 4(a)(1) holding period "rule of thumb" was based on the safe harbor of Rule 144, arguably once Rule 144 was amended, the holding period "rule of thumb" under Rule 4(a)(1) moved from two (2) years to at one (1) year. And while this change under Rule 4(a)(1) was not formalized, many attorneys and scholars have picked up on the amendment and resulting connection and change and are reaching the conclusion that a shareholder who holds stock for a year does implicate the requisite lack of intent to distribute and finding that the stock did come to rest with that shareholder.

Here, Shareholder has held all of the Shares since 3/6/18, which is when the stock certificates were issued. Therefore, the Shareholder has held the Shares for over two (2) years. And in light of the 2008 amendment to the Act and the argument above, which others have made and with which we agree, we reach the conclusion that the Shares were not acquired with a view toward distribution and instead came to rest with the Shareholder.

Based on the foregoing and in particular, the plain language of the Act and the body of regulations, article, and cases interpreting the Act, in our opinion, Shareholder is not an underwriter. Therefore, Section 4(a)(1) exempts the transaction from the Section 5 registration

requirement at issue.

## **Disclaimer:**

As counsel, we have examined facts and questions of law as we have considered appropriate for purposes of this letter. In preparation of a prior letter on this matter, we have relied upon assurances of our client and his agents and representatives, the officers of the Company, and others as well as all reports filed with the SEC in compliance with the Act without having independently verified such factual matters. We are and OTC Markets pining herein as to the federal securities laws, and we express no opinion with respect to the applicability thereto, or the effect thereon, of the laws of any other jurisdiction or as to any matters of municipal law or the laws of legal agencies within a state.

We have relied upon the following additional information in rendering our opinion:

1. That the information provided to us by the Shareholder referenced herein and that it is true and correct.
2. That the information the Company disseminated to the SEC, OTC Markets, and the public, and that it was true and correct and timely.
3. That the Shareholder did in fact acquire the stock at issue for sufficient consideration as represented.
4. That the Shareholder is the true and valid holder of the Shares.
5. That the Shareholder is not and was not: an officer, director, owner of ten percent (10%) or more of the outstanding capital stock of the Company or is otherwise in a controlling position with, or an affiliate of, the Company (nor been so designated during the ninety (90) days immediately preceding the date hereof).
6. That the Shareholder is not an issuer, dealer, or underwriter.
7. That none of the Shares were or are subject to any stop-order or any agreement granting any pledge, lien, mortgage, hypothecation, security interest, charge, option, encumbrance, or lock up.

We have assumed: (a) that the documents provided and referenced herein (collectively, the "Documents") have been duly authorized, executed and delivered by the parties thereto, (b) that the Documents constitute legally valid and binding obligations of the parties thereto, enforceable against each of them in accordance with their respective terms, and (c) that the status of the Documents as legally valid and binding obligation of the parties in not affected by any (i) breaches of, or defaults under, agreements or instruments, (ii) violations of statutes, rules, regulation, or court or governmental orders, or (iii) failures to obtain required consents, approvals or authorizations from, or make required registration, declaration, or filings with, governmental authorities.

Further, we have assumed the genuineness of the signatures both manual and conformed and electronic, the authenticity of the Documents, the conformity of copies of documents with originals, and the correctness of facts set forth therein.

Our opinions are subject to: (a) the effect of bankruptcy, insolvency, reorganization, fraudulent transfer, moratorium or other similar laws relating to or affecting the rights and remedies of creditors; (b) the effect of general principles of equity, whether considered in a proceeding in equity or at law (including the possible unavailability of specific performance or injunctive relief), concepts of materiality, reasonableness, good faith, and fair dealing, and the discretion of the court before which a proceeding therefor may be brought; (c) the invalidity under certain circumstances under law or court decisions of provision providing for the indemnification of

or contribution to a party with respect to a liability where such indemnification or contribution is contrary to public policy; and (d) we express no opinion with respect to: (i) provisions for liquidated damages, default interest, late charges, monetary penalties, make-whole premiums or other economic remedies to the extent such provision are deemed to constitute a penalty, (ii) consents to, or restrictions upon, governing law, jurisdiction venue, arbitration, remedies or judicial relief, (iii) any provision requiring the payment of attorneys' fees, where such payment is contrary to law or public policy, (iv) advance waivers of claims, defenses, rights granted by law, or notice, opportunity for hearing, evidentiary requirements, statutes of limitation, trial by jury or at law, or other procedural rights, (v) waivers of broadly or vaguely stated rights, (vi) provisions for exclusivity, election or cumulation of rights or remedies, (vii) provision authorizing or validating conclusive or discretionary determination, (viii) proxies, powers, and trusts, (ix) provisions prohibiting, restricting, or requiring consent to assignment or transfer of any right or property and (x) the severability, if invalid, of provisions to the foregoing effect.

This opinion is expresses solely on the facts and assumptions set forth herein and is specifically limited to the investigation and examination stated and such other investigation as we deemed necessary. After such investigation, we know of no facts which lead us to conclude that any opinion or conclusion set forth above or below is not correct. The opinion expressed herein is given as of the date hereof and we disclaim any obligation to advise you of any change in any matter set forth herein.

**Qualifications:** This opinion does not provide a defense to a violation of the registration requirements insofar as Shareholder's sale is part of a plan or scheme to evade said requirements. For purposes of this opinion, We have been furnished with and have examined originals or copies, certified or otherwise identified to my satisfaction, of all such records of the Company, agreements and other instruments, certificates of officers and representatives of the Company, certificates of public officials and other documents as we have deemed it necessary to require as a basis for the opinions hereafter expressed regarding the Shares.

As to questions of fact material to such opinions, we have, where relevant facts were not independently established, relied upon certifications by principal officers of the entities involved including the Stock Transfer Agent(s), Shareholder, and/or the Company. We have made such further legal and actual examination and investigation, as we deem necessary for purposes of rendering the following opinion. This opinion is based expressly on the facts stated herein and may not be relied upon if other facts, not presently known to us, come to light. Opinion letters of counsel are not binding upon the SEC or the Courts, and to the extent that persons relying upon this letter may have knowledge of facts or circumstances that are contrary to those upon which this opinion is based, this opinion would not be applicable. We am admitted to practice law in the State of Florida. The opinions expressed above are limited to the Federal Law of the United States of America and no opinion is provided regarding any federal or state law not specifically referenced herein.

The opinions set forth herein are expressed as of the date hereof and remain valid so long as the documents, instruments, records, and certificates we have examined and relied upon as noted above, are unchanged and the assumptions we have made, as noted above, are valid. If any facts or documents are determined to be incorrect, misstated, or misrepresented, then the opinion or opinions expressed herein may not continue to be valid. Furthermore, we disclaim any undertaking to advise you hereafter whether the same would, if now existing and known to this office, cause any change or modification herein.

This opinion may be relied upon by the named addressees above and the shares covered hereby for the sole and express purpose of registering transfer of the shares on behalf of the Shareholder in accordance herewith. This opinion may not be relied upon by any other party for any other purpose and may not be reproduced or distributed (except to governmental or regulatory agencies as required by regulation or law) without the prior written permission of named counsel.

**Conclusion:**

In summary, for the reasons described above, the 5,000,000 Shares may be issued without a restricted legend and sold pursuant to Section 4 of the Act.

Sincerely,

*Kenneth C. Grace*
Kenneth C. Grace., Esq.

cc:    Mariya Stanislavova Radivoeva email to: mradivoeva@yahoo.com and to her agent(s) via email to: dimitar.savov@ymail.com; cliffredekop@gmail.com noblehouse90@outlook.com

# LASH WILCOX & GRACE PL
### *Attorneys and Counselors at Law*

2202 WEST SHORE BLVD., STE. 200
TAMPA, FL 33607
phone 813.639.4205
fax 813.639.7501
Direct Dial: 813.639.4206
kgrace@lashwilcoxandgrace.com
**www.willtrustkengrace.com**

December 15, 2021

**To: Empire Stock Transfer via email to info@empirestock.com**

***Re: Rule 4(a)(1) Opinion Letter for Daniel Antonov Valchanov for Restrictive Legend Removal for 3,050,000 Shares of Common Restricted Enzolytics Inc. (ENZC) Stock***

Dear Stock Transfer Agent Professional:

This office has been requested to render an opinion regarding the removal of the restrictive legend from a total of 3,050,000 shares (the "Shares") of common stock of Enzolytics Inc. (the "Company" or "ENZC") in the name of Daniel Antonov Valchanov ("Shareholder").

**Summary:** The Shareholder acquired the Shares from the Company on 3/6/18.[1] In the opinion of this office Shareholder is not an issuer, dealer or underwriter with respect to the sale of the Shares as outlined herein; therefore, the exemption in Section 4(a)(1) of the 1933 Securities Act ("Act") applies.  As such, the 3,050,000 Shares may be issued without a restrictive legend, and they may be sold on the open market pursuant to Section 4 of the Act.

**Background:** On 3/6/18, the Company issued 3,050,000 Shares to Shareholder and did so by issuing 1 stock certificate [certificate number 4127]. Shareholder has held this certificate/the Shares ever since (for over 3 years).

**Affiliate Status**: Shareholder is not an affiliate (officer, director, manager, 10% or more Voting/Preferred Stockholder) of the Company at the time of the proposed sale, and as far as we can tell, has never been an affiliate of the Company.

**Current Public Information:** The Company is a non-reporting company. It has not filed anything with the SEC, and it has never filed any 10-Ks or 10-Qs.  However, it has been filing reports and other documents in OTC Markets.  There are several and recent quarterly reports on file as well as several and recent annual reports filed with OTC Markets.  It also has also periodically filed various supplemental information, notifications and letters. There are letters on file from attorneys confirming that there is adequate current information available to the public. As such, there is adequate current public information available regarding the Company. Notwithstanding, a company's current public information is irrelevant for purposes of Rule 4(a)(1).

**Shell Status:** The Company is not currently a shell, and from what we have been able to determine, it was never a shell company since it has been Enzolytics Inc.  However, before the

---

[1] There is no agreement that would serve as any type of source documentation for the Shares. Shareholder acquired the Shares because Shareholder was a shareholder and an investor in IMMB and, as is stated in the corporate disclosures, Shareholder was issued ENZC shares for services associated with the implementation of the strategy in Bulgaria.

Company was Enzolytics, it was known as: Immunotech Laboratories, Inc.- September 11, 2017; Eco-Petroleum Solutions, Inc.-November 16, 2012; Structural Enhancement Technologies Corp.- May 10, 2010; Extreme Mobile Coatings Worldwide Corp.- March 2, 2009; Extreme Mobile Coatings Corp., Ltd. -October 10, 2008; Falcon Media Services, Ltd.- November 24, 2004; T&T Homes Limited -July 28, 2004. And the Company was incorporated and domiciled in the United Kingdom from 2004 to 2009. Therefore, we cannot state for certain whether or not the Company was a former shell. We have made inquiries into the shell statuses of these predecessors; however, to date, we have not been able to confirm non-shell status. We may be able to make such a confirmation in the future. However, for now, we will treat the Company as if one or more of its predecessors was a shell. In that the Company is a non-reporting or alternate reporting company and does not have three current 10-Qs and a 10-K on file with the SEC, it has not cured any former shell status. However, under Section 4(a)(1) of the Act, the Company's status as a shell is irrelevant.

**Legal Analysis of the Relevant Sections and Specific Exemption at Issue:** Section 5(a) of the Act prohibits the sale of unregistered securities. However, §4(a)(1) of the Act exempts certain transactions from the §5 registration requirement. Specifically, §4(a)(1) exempts "transactions by any person other than an issuer, underwriter, or dealer."

The Shareholder herein is not an "issuer" as defined by § 2(a)(4). The term "issuer" means every person who issues or proposes to issue any security; except that with respect to certificates of deposit, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors (or persons performing similar functions) or of the fixed, restricted management, or unit type, the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; except that in the case of an unincorporated association which provides by its articles for limited liability of any or all of its members, or in the case of a trust, committee, or other legal entity, the trustees or members thereof shall not be individually liable as issuers of any security issued by the association, trust, committee, or other legal entity; except that with respect to equipment-trust certificates or like securities, the term "issuer" means the person by whom the equipment or property is or is to be used; and except that with respect to fractional undivided interests in oil, gas, or other mineral rights, the term "issuer" means the owner of any such right or of any interest in such right (whether whole or fractional) who creates fractional interests therein for the purpose of public offering. Here, Shareholder is not an issuer since it is not the entity that issued the Shares. Further, Shareholder is not the Company, nor is he controlled by the Company. *See* § 2(a)(4).

Likewise, the Shareholder is not a "dealer" as defined by § 2(a)(12). *See* § 2(a)(12). The term "dealer" means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person. Here, Shareholder does not deal or trade in securities issued by another person. Shareholder is retired, but used to be a consultant, a negotiator and a business owner of a biotechnology company. Shareholder is not in the business of buying and selling securities, directly or indirectly. And Shareholder is not licensed as a dealer. Therefore, Shareholder is not a dealer.

The critical issue in this instance is whether the Shareholder is an "underwriter" as defined by § 2(a)(11). The term "underwriter" means any person who has (1) **purchased** from an issuer with a view to, or (2) offers or sells for an issuer in connection with, the **distribution** of any security, or (3) participates or has a direct or indirect participation in any such undertaking, or

(4) participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer. These four main parts of the definition make up the "four tests of underwriter status," which are detailed and addressed below.

-<u>Whether or not the seller purchased his or her securities from the issuer</u>: The seller (the Shareholder) did not **purchase** the securities (the Shares) from the issuer (the Company). Regarding the Shares, Shareholder acquired them for his investment in the third party company and for his negotiation work, and as such, they were not purchased, and certainly not purchases as part of an IPO.

-<u>Whether or not the seller is offering or selling for the issuer</u>: The seller (the Shareholder) did not and is not offering or selling the securities (the Shares) for the issuer (the Company).

-<u>Whether or not the seller participated or had a direct or indirect participation in any such **distribution**</u>: The seller (the Shareholder) did not participate directly or otherwise in any distribution.

-<u>Whether or not the seller participated or had a participation in the direct or indirect underwriting of any such **distribution**</u>: The seller (the Shareholder) did not participate directly or otherwise in any underwriting of any **distribution**.

And the person (the Shareholder) is not: (a) directly or indirectly controlling or controlled by the issuer (the Company) nor is he (b) under direct or indirect common control with the issuer (the Company).

First, distribution is not defined by the Act, but it is widely accepted that it means "public offering." Therefore, the first prong of the analysis is whether a nonpublic offering can be shown to have been made by the Company. In such a case, the possibilities are greatly diminished that a shareholder's subsequent sale of shares would be considered a distribution and that the shareholder would be deemed an underwriter.

Section 4(a)(2) of the Act, which is applicable to issuers, exempts from the registration requirements under the Act transactions by an issuer not involving a "public offering." In the determination of whether or not the issuance of the Shares was a "public offering," we look to the factors set out by the following publications:

(a) *SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953);
(b) *Doran v Petroleum Management Corp.*, 545 F.2d 893, 900 (5th Cir. 1977);
(c) *Hill York Corp. v. American Int'l Franchises, Inc.*, 448 F.2d 680, 687-89 (5th Cir. 1971);
(d) Securities Act Release No. 4552 (November 6, 1962).

These publications set out factors in determining whether an offering is public or private, including: (1) the number of offerees and their relationship to each other and to the issuer, (2) the number of units offered, (3) the size of the offering, and (4) the manner of the offering. We also look to the factors set forth in *Cook v. Avien, Inc.*, 572 F.2d 685, 691 (1st Cir. 1978) (Holding that sales may be exempted if private offering is made in which purchasers are limited in number, are sophisticated, have a relationship with the issuer enabling them to command

access to information that would otherwise be contained in a reg. statement.).

Regarding the Shares, they were issued as part of a private transaction not a public offering. The shares were issued to Shareholder for his investment in the third party company and for his negotiation work. And the manner of the offering was private not public. This leads us to conclude that the transaction at issue did not amount to a public offering, and as such, not a distribution.

Second, a factor to be analyzed is whether or not the Shares were acquired with an intent to distribute or of they came to rest with the Shareholder. Here, they were not. Consider the following:

Over the years, interested persons and entities looked at the amount of time a shareholder held the securities in order to ascertain whether they were acquired with an intent to distribute or whether they came to rest. And since intent is difficult to establish and prove, interested persons and entities looked to other sections in the Act in order to fashion a test. At that time, years ago, the safe harbor in Rule 144 was two (2) years. Before 2008, under Rule 4(a)(1), two (2) years was generally the amount of time the shareholder had to hold the shares in order to be able to state that the shares were not acquired with a view toward distribution and instead came to rest with the shareholder. The seminal cases before 2008 were *U.S. v. Sherwood*, 175 F. Supp. 480, 483 (1959) and *Ackerberg v. Johnson*, 892 F.2d 1328 (1989). This two (2) year rule of thumb was based on the SEC's safe harbor provision under Rule 144, which at that time, was two (2) years.

However, since *Sherwood* and *Ackerberg*, the Act was amended. On 2/15/08, the adopted amendments to Rule 144 and Rule 145 of the Securities Act took effect and were implemented to increase the liquidity of privately sold securities and securities acquired in business combinations by giving holders the ability to resell those securities more rapidly without registration under the Securities Act. Amongst other amendments, the Rule 144 amendments shortened the holding period for the resale of restricted securities of reporting companies under this safe harbor from six (6) month holding period for securities issued by a reporting company current and in good standing with the SEC held by a non-affiliate, and a <u>one (1) year holding period otherwise</u>.

Since the 4(a)(1) holding period "rule of thumb" was based on the safe harbor of Rule 144, arguably once Rule 144 was amended, the holding period "rule of thumb" under Rule 4(a)(1) moved from two (2) years to at one (1) year. And while this change under Rule 4(a)(1) was not formalized, many attorneys and scholars have picked up on the amendment and resulting connection and change and are reaching the conclusion that a shareholder who holds stock for a year does implicate the requisite lack of intent to distribute and finding that the stock did come to rest with that shareholder.

Here, Shareholder has held all of the Shares since 3/6/18, which is when the stock certificates were issued. Therefore, the Shareholder has held the Shares for over two (2) years. And in light of the 2008 amendment to the Act and the argument above, which others have made and with which we agree, we reach the conclusion that the Shares were not acquired with a view toward distribution and instead came to rest with the Shareholder.

Based on the foregoing and in particular, the plain language of the Act and the body of regulations, article, and cases interpreting the Act, in our opinion, Shareholder is not an underwriter. Therefore, Section 4(a)(1) exempts the transaction from the Section 5 registration

requirement at issue.

**<u>Disclaimer:</u>**

As counsel, we have examined facts and questions of law as we have considered appropriate for purposes of this letter. In preparation of a prior letter on this matter, we have relied upon assurances of our client and his agents and representatives, the officers of the Company, and others as well as all reports filed with the SEC in compliance with the Act without having independently verified such factual matters. We are and OTC Markets pining herein as to the federal securities laws, and we express no opinion with respect to the applicability thereto, or the effect thereon, of the laws of any other jurisdiction or as to any matters of municipal law or the laws of legal agencies within a state.

We have relied upon the following additional information in rendering our opinion:

1. That the information provided to us by the Shareholder referenced herein and that it is true and correct.
2. That the information the Company disseminated to the SEC, OTC Markets, and the public, and that it was true and correct and timely.
3. That the Shareholder did in fact acquire the stock at issue for sufficient consideration as represented.
4. That the Shareholder is the true and valid holder of the Shares.
5. That the Shareholder is not and was not: an officer, director, owner of ten percent (10%) or more of the outstanding capital stock of the Company or is otherwise in a controlling position with, or an affiliate of, the Company (nor been so designated during the ninety (90) days immediately preceding the date hereof).
6. That the Shareholder is not an issuer, dealer, or underwriter.
7. That none of the Shares were or are subject to any stop-order or any agreement granting any pledge, lien, mortgage, hypothecation, security interest, charge, option, encumbrance, or lock up.

We have assumed: (a) that the documents provided and referenced herein (collectively, the "Documents") have been duly authorized, executed and delivered by the parties thereto, (b) that the Documents constitute legally valid and binding obligations of the parties thereto, enforceable against each of them in accordance with their respective terms, and (c) that the status of the Documents as legally valid and binding obligation of the parties in not affected by any (i) breaches of, or defaults under, agreements or instruments, (ii) violations of statutes, rules, regulation, or court or governmental orders, or (iii) failures to obtain required consents, approvals or authorizations from, or make required registration, declaration, or filings with, governmental authorities.

Further, we have assumed the genuineness of the signatures both manual and conformed and electronic, the authenticity of the Documents, the conformity of copies of documents with originals, and the correctness of facts set forth therein.

Our opinions are subject to: (a) the effect of bankruptcy, insolvency, reorganization, fraudulent transfer, moratorium or other similar laws relating to or affecting the rights and remedies of creditors; (b) the effect of general principles of equity, whether considered in a proceeding in equity or at law (including the possible unavailability of specific performance or injunctive relief), concepts of materiality, reasonableness, good faith, and fair dealing, and the discretion of the court before which a proceeding therefor may be brought; (c) the invalidity under certain circumstances under law or court decisions of provision providing for the indemnification of

or contribution to a party with respect to a liability where such indemnification or contribution is contrary to public policy; and (d) we express no opinion with respect to: (i) provisions for liquidated damages, default interest, late charges, monetary penalties, make-whole premiums or other economic remedies to the extent such provision are deemed to constitute a penalty, (ii) consents to, or restrictions upon, governing law, jurisdiction venue, arbitration, remedies or judicial relief, (iii) any provision requiring the payment of attorneys' fees, where such payment is contrary to law or public policy, (iv) advance waivers of claims, defenses, rights granted by law, or notice, opportunity for hearing, evidentiary requirements, statutes of limitation, trial by jury or at law, or other procedural rights, (v) waivers of broadly or vaguely stated rights, (vi) provisions for exclusivity, election or cumulation of rights or remedies, (vii) provision authorizing or validating conclusive or discretionary determination, (viii) proxies, powers, and trusts, (ix) provisions prohibiting, restricting, or requiring consent to assignment or transfer of any right or property and (x) the severability, if invalid, of provisions to the foregoing effect.

This opinion is expresses solely on the facts and assumptions set forth herein and is specifically limited to the investigation and examination stated and such other investigation as we deemed necessary. After such investigation, we know of no facts which lead us to conclude that any opinion or conclusion set forth above or below is not correct. The opinion expressed herein is given as of the date hereof and we disclaim any obligation to advise you of any change in any matter set forth herein.

**Qualifications:** This opinion does not provide a defense to a violation of the registration requirements insofar as Shareholder's sale is part of a plan or scheme to evade said requirements. For purposes of this opinion, We have been furnished with and have examined originals or copies, certified or otherwise identified to my satisfaction, of all such records of the Company, agreements and other instruments, certificates of officers and representatives of the Company, certificates of public officials and other documents as we have deemed it necessary to require as a basis for the opinions hereafter expressed regarding the Shares.

As to questions of fact material to such opinions, we have, where relevant facts were not independently established, relied upon certifications by principal officers of the entities involved including the Stock Transfer Agent(s), Shareholder, and/or the Company. We have made such further legal and actual examination and investigation, as we deem necessary for purposes of rendering the following opinion. This opinion is based expressly on the facts stated herein and may not be relied upon if other facts, not presently known to us, come to light. Opinion letters of counsel are not binding upon the SEC or the Courts, and to the extent that persons relying upon this letter may have knowledge of facts or circumstances that are contrary to those upon which this opinion is based, this opinion would not be applicable. We am admitted to practice law in the State of Florida. The opinions expressed above are limited to the Federal Law of the United States of America and no opinion is provided regarding any federal or state law not specifically referenced herein.

The opinions set forth herein are expressed as of the date hereof and remain valid so long as the documents, instruments, records, and certificates we have examined and relied upon as noted above, are unchanged and the assumptions we have made, as noted above, are valid. If any facts or documents are determined to be incorrect, misstated, or misrepresented, then the opinion or opinions expressed herein may not continue to be valid. Furthermore, we disclaim any undertaking to advise you hereafter whether the same would, if now existing and known to this office, cause any change or modification herein.

This opinion may be relied upon by the named addressees above and the shares covered hereby for the sole and express purpose of registering transfer of the shares on behalf of the Shareholder in accordance herewith. This opinion may not be relied upon by any other party for any other purpose and may not be reproduced or distributed (except to governmental or regulatory agencies as required by regulation or law) without the prior written permission of named counsel.

## **Conclusion:**

In summary, for the reasons described above, the 3,050,000 Shares may be issued without a restricted legend and sold pursuant to Section 4 of the Act.

Sincerely,

*Kenneth C. Grace*
Kenneth C. Grace., Esq.

cc:    Daniel Antonov Valchanov via email to: D.Valchanov9@gmail.com and to his agent(s) via email to: dimitar.savov@ymail.com; cliffredekop@gmail.com noblehouse90@outlook.com

LAW OFFICES
# IRA EDSEL BRANHAM, P.L.L.C.

IRA E. BRANHAM, PLLC

Attorney and Counselor at Law

645 Hambley Blvd Pikeville, Kentucky 41501

phone 606-253-3032 fax 606-218-1092

irabranham6@gmail.com

**January 11, 2022**

**To: Empire Stock Transfer via email to info@empirestock.com**

**Re: Rule 4(a)(1) Opinion Letter for Dimitar Slachev Savov for Restrictive Legend Removal for 71,700,000 Shares of Common Restricted Enzolytics Inc. (ENZC) Stock**

Dear Stock Transfer Agent Professional:

This office has been requested to render an opinion regarding the removal of the restrictive legend from a total of 71,700,000 shares (the "Shares") of common stock of Enzolytics Inc. (the "Company" or "ENZC") in the name of Dimitar Slachev Savov. ("Shareholder").

**Summary:** The Shareholder acquired the Shares from the Company on 3/6/18. 1 In the opinion of this office Shareholder is not an issuer, dealer or underwriter with respect to the sale of the Shares as outlined herein; therefore, the exemption in Section 4(a)(1) of the 1933 Securities Act ("Act") applies. As such, the 71,700,000 Shares may be issued without a restrictive legend, and they may be sold on the open market pursuant to Section 4 of the Act.

**Background:** On 3/6/18, the Company issued 71,700,000 Shares to Shareholder and did so by issuing 52 stock certificates. See Account Statement, which contains all 52 stock certificate numbers and reflects the issuance of all Shares.

**Affiliate Status:** Shareholder is not an affiliate (officer, director, manager, 10% or more Voting/Preferred Stockholder) of the Company at the time of the proposed sale, and as far as we can tell, has never been an affiliate of the Company.

**Current Public Information:** The Company is a non-reporting company. It has not filed anything with the SEC, and it has never filed any 10-Ks or 10-Qs. However, it has been filing reports and other documents in OTC Markets. There are several and recent quarterly reports on file as well as several and recent annual reports filed with OTC Markets. It also has also periodically filed various supplemental

information, notifications and letters. There are letters on file from attorneys confirming that there is adequate current information available to the public. As such, there is adequate current public information available regarding the Company. Notwithstanding, a company's current public information is irrelevant for purposes of Rule 4(a)(1). 1

---

There is no agreement that would serve as any type of source documentation for the Shares. Shareholder owns the rights to the biotech technology in a Bulgarian LLC, and he was negotiating with between the Company (Enzolytics Inc. – ENZC – OTC Pink) and Immunotech Laboratories, Inc. (IMMB - OTC Pink) to gain a further interest in the technology. As a result of these negotiations, the Company issued to Shareholder the Shares, which was basically rewarding his ownership and investment in that other company and compensation for his efforts in the described negotiations. All IMMB shareholders were issued shares. The deal never closed between the two Companies, but Shareholder had earned the shares based on his good faith negotiations with ENZC.

**Shell Status:** The Company is not currently a shell, and from what we have been able to determine, it was never a shell company since it has been Enzolytics Inc. However, before the Company was Enzolytics, it was known as: Immunotech Laboratories, Inc.- September 11, 2017; Eco-Petroleum Solutions, Inc.-November 16, 2012; Structural Enhancement Technologies Corp.- May 10, 2010; Extreme Mobile Coatings Worldwide Corp.- March 2, 2009; Extreme Mobile Coatings Corp., Ltd. -October 10, 2008; Falcon Media Services, Ltd.- November 24, 2004; T&T Homes Limited -July 28, 2004. And the Company was incorporated and domiciled in the United Kingdom from 2004 to 2009. Therefore, we cannot state for certain whether or not the Company was a former shell. We have made inquiries into the shell statuses of these predecessors; however, to date, we have not been able to confirm non-shell status. We may be able to make such a confirmation in the future. However, for now, we will treat the Company as if one or more of its predecessors was a shell. In that the Company is a non-reporting or alternate reporting company and does not have three current 10-Qs and a 10- K on file with the SEC, it has not cured any former shell status. However, under Section 4(a)(1) of the Act, the Company's status as a shell is irrelevant.

**Legal Analysis of the Relevant Sections and Specific Exemption at Issue:** Section5(a) of the Act prohibits the sale of unregistered securities. However, §4(a)(1) of the Act exempts certain transactions from the §5 registration requirement. Specifically, §4(a)(1) exempts "transactions by any person other than an issuer, underwriter, or dealer." The Shareholder herein is not an "issuer" as defined by § 2(a)(4). The term "issuer" means every person who issues or proposes to issue any security; except that with respect to certificates of deposit, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors (or persons performing similar functions) or of the fixed, restricted management, or unit type, the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; except that in the case of an unincorporated association which provides by its articles for limited liability of any or all of its members, or in the case of a trust, committee, or other legal entity, the trustees or members thereof shall not be individually liable as issuers of any security issued by the association, trust, committee, or other legal entity; except that with respect to equipment-trust certificates or like securities, the term "issuer" means the person by whom the equipment or property is or is to be used; and except that with respect to fractional undivided interests in oil, gas, or other mineral rights, the term "issuer" means the owner of any such right or of any interest in such right

(whether whole or fractional) who creates fractional interests therein for the purpose of public offering. Here, Shareholder is not an issuer since it is not the entity that issued the Shares. Further, Shareholder is not the Company, nor is he controlled by the Company. See § 2(a)(4).

The critical issue in this instance is whether the Shareholder is an "underwriter" as defined by § 2(a)(11). The term "underwriter" means any person who has (1) **purchased** from an issuer with a view to, or (2) offers or sells for an issuer in connection with, the **distribution** of any security, or (3) participates or has a direct or indirect participation in any such undertaking, or (4) participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer. These four main parts of the definition make up the "four tests of underwriter status," which are detailed and addressed below.

-Whether or not the seller purchased his or her securities from the issuer: The seller (the Shareholder) did not **purchase** the securities (the Shares) from the issuer (the Company). Regarding the Shares, Shareholder acquired them for his investment in the third party company and for his negotiation work, and as such, they were not purchased, and certainly not purchased, and certainly not purchases as part of an IPO.

-Whether or not the seller is offering or selling for the issuer: The seller (the Shareholder) did not and is not offering or selling the securities (the Shares) for the issuer (the Company).

-Whether or not the seller participated or had a direct or indirect participation in any such **distribution**: The seller (the Shareholder) did not participate directly or otherwise in any distribution.

-Whether or not the seller participated or had a participation in the direct or indirect underwriting of any such **distribution**: The seller (the Shareholder) did not participate directly or otherwise in any underwriting of any **distribution**.


And the person (the Shareholder) is not: (a) directly or indirectly controlling or controlled by the issuer (the Company) nor is he (b) under direct or indirect common control with the issuer.

First, distribution is not defined by the Act, but it is widely accepted that it means "public offering." Therefore, the first prong of the analysis is whether a nonpublic offering can be shown to have been made by the Company. In such a case, the possibilities are greatly diminished that a shareholder's subsequent sale of shares would be considered a distribution and that the shareholder would be deemed an underwriter.

Section 4(a)(2) of the Act, which is applicable to issuers, exempts from the registration requirements under the Act transactions by an issuer not involving a "public offering." In the determination of whether or not the issuance of the Shares was a "public offering," we look to the factors set out by the following publications:

(a) SEC v. Ralston Purina Co., 346 U.S. 119 (1953);

(b) Doran v Petroleum Management Corp., 545 F.2d 893, 900 (5th Cir. 1977);

(c) Hill York Corp. v. American Int'l Franchises, Inc., 448 F.2d 680, 687-89 (5th Cir. 1971);

(d) Securities Act Release No. 4552 (November 6, 1962).

These publications set out factors in determining whether an offering is public or private, including: (1) the number of offerees and their relationship to each other and to the issuer, (2) the number of units offered, (3) the size of the offering, and (4) the manner of the offering. We also look to the factors set forth in Cook v. Avien, Inc., 572 F.2d 685, 691 (1st Cir. 1978) (Holding that sales may be exempted if private offering is made in which purchasers are limited in number, are sophisticated, have a relationship with the issuer enabling them to command access to information that would otherwise be contained in a reg. statement.).

Regarding the Shares, they were issued as part of a private transaction not a public offering. The shares were issued to Shareholder for his investment in the third party company and for his negotiation work. And the manner of the offering was private not public. This leads us to conclude that the transaction at issue did not amount to a public offering, and as such, not a distribution.

Second, a factor to be analyzed is whether or not the Shares were acquired with an intent to distribute or of they came to rest with the Shareholder. Here, they were not. Consider the following:

Over the years, interested persons and entities looked at the amount of time a shareholder held the securities in order to ascertain whether they were acquired with an intent to distribute or whether they came to rest. And since intent is difficult to establish and prove, interested persons and entities looked to other sections in the Act in order to fashion a test. At that time, years ago, the safe harbor in Rule 144 was two (2) years. Before 2008, under Rule 4(a)(1), two (2) years was generally the amount of time the shareholder had to hold the shares in order to be able to state that the shares were not acquired with a view toward distribution and instead came to rest with the shareholder. The seminal cases before 2008 were U.S. v. Sherwood, 175 F. Supp. 480, 483 (1959) and Ackerberg v. Johnson, 892 F.2d 1328 (1989). This two (2) year rule of thumb was based on the SEC's safe harbor provision under Rule 144, which at that time, was two (2) years.

However, since Sherwood and Ackerberg, the Act was amended. On 2/15/08, the adopted amendments to Rule 144 and Rule 145 of the Securities Act took effect and were implemented to increase the liquidity of privately sold securities and securities acquired in business combinations by giving holders the ability to resell those securities more rapidly without registration under the Securities Act. Amongst other amendments, the Rule 144 amendments shortened the holding period for the resale of restricted securities of reporting companies under this safe harbor from six (6) month holding period for securities issued by a reporting company current and in good standing with the SEC held by a non-affiliate, and a one (1) year holding period otherwise.

Since the 4(a)(1) holding period "rule of thumb" was based on the safe harbor of Rule 144, arguably once Rule 144 was amended, the holding period "rule of thumb" under Rule 4(a)(1) moved from two (2) years to at one (1) year. And while this change under Rule 4(a)(1) was not formalized, many attorneys and scholars have picked up on the amendment and resulting connection and change and are reaching the conclusion that a shareholder who holds stock for a year does implicate the requisite lack of intent to distribute and finding that the stock did come to rest with that shareholder.

Here, Shareholder has held all of the Shares since 3/6/18, which is when the stock certificates were issued. Therefore, the Shareholder has held the Shares for over two (2) years. And in light of the 2008 amendment to the Act and the argument above, which others have made and with which we agree, we reach the conclusion that the Shares were not acquired with a view toward distribution and instead came to rest with the Shareholder.

Based on the foregoing and in particular, the plain language of the Act and the body of regulations, article, and cases interpreting the Act, in our opinion, Shareholder is not an underwriter. Therefore, Section 4(a)(1) exempts the transaction from the Section 5 registration.

**Disclaimer:**

As counsel, we have examined facts and questions of law as we have considered appropriate for purposes of this letter. In preparation of a prior letter on this matter, we have relied upon assurances of our client and his agents and representatives, the officers of the Company, and others as well as all reports filed with the SEC in compliance with the Act without having independently verified such factual matters. We are and OTC Markets pining herein as to the federal securities laws, and we express no opinion with respect to the applicability thereto, or the effect thereon, of the laws of any other jurisdiction or as to any matters of municipal law or the laws of legal agencies within a state.

We have relied upon the following additional information in rendering our opinion:

1. That the information provided to us by the Shareholder referenced herein and that it is true and correct.

2. That the information the Company disseminated to the SEC, OTC Markets, and the public, and that it was true and correct and timely.

3. That the Shareholder did in fact acquire the stock at issue for sufficient consideration as represented.
4. That the Shareholder is the true and valid holder of the Shares.

5. That the Shareholder is not and was not: an officer, director, owner of ten percent (10%) or more of the outstanding capital stock of the Company or is otherwise in a controlling position with, or an affiliate of, the Company (nor been so designated during the ninety (90) days immediately preceding the date hereof).

6. That the Shareholder is not an issuer, dealer, or underwriter.

7. That none of the Shares were or are subject to any stop-order or any agreement granting any pledge, lien, mortgage, hypothecation, security interest, charge, option, encumbrance, or lock up.

We have assumed: (a) that the documents provided and referenced herein (collectively, the "Documents") have been duly authorized, executed and delivered by the parties thereto, (b) that the Documents constitute legally valid and binding obligations of the parties thereto, enforceable against each of them in accordance with their respective terms, and (c) that the status of the Documents as legally valid and binding obligation of the parties in not affected by any (i) breaches of, or defaults

under, agreements or instruments, (ii) violations of statutes, rules, regulation, or court or governmental orders, or (iii) failures to obtain required consents, approvals or authorizations from, or make required registration, declaration, or filings with, governmental authorities.

Further, we have assumed the genuineness of the signatures both manual and conformed and electronic, the authenticity of the Documents, the conformity of copies of documents with originals, and the correctness of facts set forth therein.

Our opinions are subject to: (a) the effect of bankruptcy, insolvency, reorganization, fraudulent transfer, moratorium or other similar laws relating to or affecting the rights and remedies of creditors; (b) the effect of general principles of equity, whether considered in a proceeding in equity or at law (including the possible unavailability of specific performance or injunctive relief), concepts of materiality, reasonableness, good faith, and fair dealing, and the discretion of the court before which a proceeding therefor may be brought; (c) the invalidity under certain circumstances under law or court decisions of provision providing for the indemnification of or contribution to a party with respect to a liability where such indemnification or contribution is contrary to public policy; and (d) we express no opinion with respect to: (i) provisions for liquidated damages, default interest, late charges, monetary penalties, make-whole premiums or other economic remedies to the extent such provision are deemed to constitute a penalty, (ii) consents to, or restrictions upon, governing law, jurisdiction venue, arbitration, remedies or judicial relief, (iii) any provision requiring the payment of attorneys' fees, where such payment is contrary to law or public policy, (iv) advance waivers of claims, defenses, rights granted by law, or notice, opportunity for hearing, evidentiary requirements, statutes of limitation, trial by jury or at law, or other procedural rights, (v) waivers of broadly or vaguely stated rights, (vi) provisions for exclusivity, election or cumulation of rights or remedies, (vii) provision authorizing or validating conclusive or discretionary determination, (viii) proxies, powers, and trusts, (ix) provisions prohibiting, restricting, or requiring consent to assignment or transfer of any right or property and (x) the severability, if invalid, of provisions to the foregoing effect.

This opinion is expresses solely on the facts and assumptions set forth herein and is specifically limited to the investigation and examination stated and such other investigation as we deemed necessary. After such investigation, we know of no facts which lead us to conclude that any opinion or conclusion set forth above or below is not correct. The opinion expressed herein is given as of the date hereof and we disclaim any obligation to advise you of any change in any matter set forth herein.

**Qualifications:** This opinion does not provide a defense to a violation of the registration requirements insofar as Shareholder's sale is part of a plan or scheme to evade said requirements. For purposes of this opinion, We have been furnished with and have examined originals or copies, certified or otherwise identified to my satisfaction, of all such records of the Company, agreements and other instruments, certificates of officers and representatives of the Company, certificates of public officials and other documents as we have deemed it necessary to require as a basis for the opinions hereafter expressed regarding the Shares.

As to questions of fact material to such opinions, we have, where relevant facts were not independently established, relied upon certifications by principal officers of the entities involved including the Stock Transfer Agent(s), Shareholder, and/or the Company. We have made such further legal and actual examination and investigation, as we deem necessary for purposes of rendering the following opinion. This opinion is based expressly on the facts stated herein and may not be relied upon if other facts, not

presently known to us, come to light. Opinion letters of counsel are not binding upon the SEC or the Courts, and to the extent that persons relying upon this letter may have knowledge of facts or circumstances that are contrary to those upon which this opinion is based, this opinion would not be applicable. We am admitted to practice law in the State of Florida. The opinions expressed above are limited to the Federal Law of the United States of America and no opinion is provided regarding any federal or state law not specifically referenced herein.

The opinions set forth herein are expressed as of the date hereof and remain valid so long as the documents, instruments, records, and certificates we have examined and relied upon as noted above, are unchanged and the assumptions we have made, as noted above, are valid. If any facts or documents are determined to be incorrect, misstated, or misrepresented, then the opinion or opinions expressed herein may not continue to be valid. Furthermore, we disclaim any undertaking to advise you hereafter whether the same would, if now existing and known to this office, cause any change or modification herein.

This opinion may be relied upon by the named addressees above and the shares covered hereby for the sole and express purpose of registering transfer of the shares on behalf of the Shareholder in accordance herewith. This opinion may not be relied upon by any other party for any other purpose and may not be reproduced or distributed (except to governmental or regulatory agencies as required by regulation or law) without the prior written permission of named counsel.

**Conclusion:**

In summary, for the reasons described above, the 71,700,000 Shares may be issued without a restricted legend and sold pursuant to Section 4 of the Act.

Sincerely,

Ira E. Branham

**EXHIBIT 5**

# Eco-Petroleum Solutions, Inc.

# Financial Statements

**For the three months and years ending December 31, 2017 and December 31, 2016**

**(Unaudited)**

**ECO-PETROLEUM SOLUTIONS, INC.**
**NOTES TO FINANCIAL STATEMENTS**
**DECEMBER 31, 2017 and 2016**
**(Unaudited)**

**(8) Preferred Stock**

On March 9, 2017, the Company created two new classes of Preferred Stock, 60,000,000 shares of Series A, authorized, and 465,000,000 shares of Series B, authorized.

As of December 31, 2017, and 2016, 60,000,000 and 0 shares, respectively, of the registrant's preferred stock-Series A, par value of $0.0001, were issued and outstanding and 100,000,000 and 0 shares, respectively, of the registrant's preferred stock-Series B, par value of $0.0001, were issued and outstanding.

**(9) Subsequent Events**

On October 29, 2017, The Company filed with FINRA a Notice of share exchange for its subsidiary Immunotech Laboratories, Inc. FINRA issued a deficiency letter on January 12, 2018 due to issues with one or more of its shareholders and the Corporate Action was closed. As a result, the Company's Corporate action filed in June of 2017 requesting the name change to Immunotech Laboratories, Inc. with FINRA was withdrawn.

On January 15, 2018 the merger agreement with Immunotech Laboratories, Inc. was terminated except for Section 1.03(d)(i) which relates to the appointment of Harry Zhabilov as Chairman and CEO of ECPO which remains in effect.

On January 17, 2018 the Company amended its articles of incorporation with the State of Delaware changing its name to Enzolytics, Inc. and increasing its authorized common stock from Six Hundred Million shares to Nine Hundred and Fifty Million shares.

On January 30, 2018 a new Corporate action was filed by the Company to change its name from Eco-Petroleum Solutions, Inc. to Enzolytics, Inc. to better represent the new business strategy. The Corporate action was approved on March 22nd and the ticker symbol was changed from ECPO to ENZC. The Articles of Incorporation in the state of Delaware were filed on January 17, of 2018 changing the name to Enzolytics, Inc.

On March 6, 2018 the company issued 223,695,000 shares as compensation to several individuals to further its efforts to pursue its strategic shift to the Drug Development Industry in Bulgaria and other Eastern European Countries.

On March 23, 2018 the Company issued 175,000,000 shares to the Zhabilov Trust in exchange for acknowledgement of the Asset Sale Transaction transferring the Exclusive License as well as acknowledging the assumption of the fee due for the license.

On March 28, 2018 an asset purchase agreement was entered into with Immunotech Laboratories, Inc whereby the Exclusive License Agreement for the Patented Immunotherapy Treatment for the care of HIV/Aids and Hepatitis C patients, Forty Nine Percent ownership in Immunotech Laboratories BG, all equipment and intellectual property associated with the Patented treatment in exchange for a note payable and common stock of Enzolytics, Inc. issued to Immunotech Laboratories, Inc. and assumption of certain debt from Immunotech by Enzolytics, Inc.

F-16

ISSUER INFORMATION AND DISCLOSURE STATEMENT
PURSUANT TO
Rule 15c2-11

# ANNUAL REPORT

March 31, 2018

# ENZOLYTICS, INC.

120 W. Pomona Avenue
Monrovia, CA  91016
(626) 538-4779

Federal ID No.:  <u>30-0808561</u>                              CUSIP No.: <u>294112107</u>

## ISSUER'S EQUITY SECURITIES

<u>Capital Stock</u>

950,000,000 Shares of Common Stock authorized, par value $0.0001 per share
520,248,470 common shares issued and outstanding as of March 31,2018
540,248,470 common shares issued and outstanding as of June 4, 2018

$5,000 of debt and accrued interest acquired from Cimarron Capital Ltd.

On January 8, 2018 the Company issued under a subscription agreement 1,000,000 shares to A2 Carved in Stone, Inc.

On February 27, 2018 the Company issued 100,000 shares to Dr. Hongxiang Hui for compensation to Dr. Hui for services rendered under the Advisory Board consulting agreement.

On March 06,2018 the Company issued 3,050,000 common shares to Daniel Antonov Valchanoov for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 10,000,000 common shares to Vesselka Antonov Valchanov for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 10,000,000 common shares to Vesselka Miladinova Dimitrov for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 100,000,000 common shares to Mt Rose Corporation for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 10,000,000 common shares to Milen Valentinov Dimitrov for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 40,000 common shares to Mariya Stoyanova Angelova for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 45,000 common shares to Milen Vasilev Trichkov for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 20,000 common shares to Yavor Ivanov Rudarski for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 200,000 common shares to Rossen Hristov Iliev for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 50,000 common shares to Konstantin Georgiev Georgiev for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 750,000 common shares to Martin Lipkovsk for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 40,000 common shares to Konstantin Mihaylov Belchev for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 2,500,000 common shares to Kamelya Georgieva Tsoklinova for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 2,500,000 common shares to Lucezar Bogomilov Ivanov for services rendered in implementing the business strategy in Bulgaria.

On March 23,2018 the Company issued 78,400,000 common shares to Dimita Slachev Savov for services rendered in implementing the business strategy in Bulgaria.

On March 06,2018 the Company issued 5,000,000 common shares to Mariya Stanislavova Radivoeva for services rendered in implementing the business strategy in Bulgaria.

On March 23, 2018 the Company issued 175,000,000 common shares to Zhabilov Trust, Diana Zhabilov Trustee for

<u>Item XI. Issuer's Certifications.</u>

I, Harry H. Zhabilov, Director and Chief Executive Officer, certify that:

1.       I have reviewed this Annual Report as of March 31,2018, of Enzolytics, Inc., a Delaware corporation; and,

2.       Based on my knowledge, this disclosure statement does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, and is not misleading with respect to the period covered by this disclosure statement; and,

3.       Based on my knowledge, the financial statements, and other financial information included or incorporated by reference in this disclosure statement, fairly represent in all material respects, the financial condition, results of operations and cash flows of the issuer as of, and for, the periods presented in this information and disclosure statement.

June 4, 2018

/s/   Harry H. Zhabilov
    Harry H. Zhabilov
    Chief Executive Officer, Chief Financial Officer and Sole Director

# <u>Disclosure Statement Pursuant to the Pink Basic Disclosure Guidelines</u>

# ENZOLYTICS, INC.

2000 North Central Expressway, Plano, TX 75074

(972)-292-9414

www.enzolytics.com

harry@enzolytics.com

<u>SIC Code 541711</u>

**Year End Report**
**For the Period Ending:** <u>December 31, 2019</u>
(the "Reporting Period")

As of <u>December 31, 2019,</u> the number of shares outstanding of our Common Stock was:  <u>1,066,020,359</u>

As of <u>September 30, 2019</u>, the number of shares outstanding of our Common Stock was: <u>970,033,359</u>

As of <u>December 31, 2018</u>, the number of shares outstanding of our Common Stock was: <u>817,748,470</u>

Indicate by check mark whether the company is a shell company (as defined in Rule 405 of the Securities Act of 1933 and Rule 12b-2 of the Exchange Act of 1934):

Yes: ☐          No: ☒

Indicate by check mark whether the company's shell status has changed since the previous reporting period:

Yes: ☐          No: ☒

Indicate by check mark whether a Change in Control[1] of the company has occurred over this reporting period:

Yes: ☐          No: ☒

---

[1] "Change in Control" shall mean any events resulting in:

(i) Any "person" (as such term is used in Sections 13(d) and 14(d) of the Exchange Act) becoming the "beneficial owner" (as defined in Rule 13d-3 of the Exchange Act), directly or indirectly, of securities of the Company representing fifty percent (50%) or more of the total voting power represented by the Company's then outstanding voting securities;

(ii) The consummation of the sale or disposition by the Company of all or substantially all of the Company's assets;

(iii) A change in the composition of the Board occurring within a two (2)-year period, as a result of which fewer than a majority of the directors are directors immediately prior to such change; or

(iv) The consummation of a merger or consolidation of the Company with any other corporation, other than a merger or consolidation which would result in the voting securities of the Company outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity or its parent) at least fifty percent (50%) of the total voting power represented by the voting securities of the Company or such surviving entity or its parent outstanding immediately after such merger or consolidation.

| Shares Outstanding as of Second Most Recent Fiscal Year End: | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Date 12/31/2016 | Opening Balance<br>Common: 111,639,158<br>Preferred A: 60,000,000 | | *Right-click the rows below and select "Insert" to add rows as needed. | | | | | | |
| Date of Transaction | Transaction type (e.g. new issuance, cancellation, shares returned to treasury) | Number of Shares Issued (or cancelled) | Class of Securities | Value of shares issued ($/per share) at issuance | Were the shares issued at a discount to market price at the time of issuance? (Yes/No) | Individual/ Entity Shares were issued to (entities must have individual with voting / investment control disclosed). | Reason for share issuance (e.g. for cash or debt conversion) -OR- Nature of Services Provided | Restricted or Unrestricted as of this filing. | Exemption or Registration Type. |
| June 21, 2017 | Issuance | 9,414,312 | Common | $.00053 | yes | Southridge Partners II, Steve Hicks | Debt Conversion | Unrestricted | Exemption |
| October 25, 2017 | Issuance | 500,000 | Common | .0001 | yes | Cimarron Capital LTD, Peter Aiello | Settlement | Unrestricted | Exemption |
| January 8 ,2018 | Issuance | 1,000,000 | Common | .005 | yes | A2 Carved in Stone; Kevin Pla | Cash | Restricted | Registration |
| January 27, 2018 | Issuance | 100,000 | Common | .0001 | yes | Dr. Hongxiang Hui | Advisory Board | Restricted | Registration |
| March 6, 2018 | issuance | 3,050,000 | Common | .0001 | yes | Daniel Antonov Valchanoov | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 10,000,000 | Common | .0001 | yes | Vesselka Antonov Valchanov | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 10,000,000 | Common | .0001 | yes | Vesselka Miladinova Dimitrov | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 100,000,000 | Common | .0001 | yes | Mt Rose Corporation Valentine Dimitrov | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 10,000,000 | Common | .0001 | yes | Milen Valentinov Dimitrov | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 40,000 | Common | .0001 | yes | Mariya Stoyanova Angelova | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 45,000 | Common | .0001 | yes | Milen Vasilev Trichkov | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 20,000 | Common | .0001 | yes | Yavor Ivanov Rudarski | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 200,000 | Common | .0001 | yes | Rossen Hristov Iliev | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 50,000, | Common | .0001 | yes | Konstantin Georgiev Georgiev | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 750,000 | Common | .0001 | yes | Martin Lipkov | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 40,000 | Common | .0001 | yes | Konstantin Mihaylov Belchev | Consulting Services | Restricted | Registration |
| March 6, 2018 | issuance | 2,500,000 | Common | .0001 | yes | Kamelya Georgieva Tsoklinova | Consulting Services | Restricted | Registration |

| March 6, 2018 | Issuance | 2,500,000 | Common | .0001 | yes | Lucezar Bogomilov Ivanov | Consulting Services | Restricted | Registration |
|---|---|---|---|---|---|---|---|---|---|
| March 13, 2018 | Issuance | 50,000,000 | Series A Preferred | .0001 | no | Zhabilov Trust Diana Zhabilov Trustee | Acquisition | Restricted | Registration |
| March 13, 2018 | Issuance | 6,000,000 | Series A Preferred | .0001 | no | Phil Felizine | Acquisition | Restricted | Registration |
| March 13, 2018 | Issuance | 4,000,000 | Series A Preferred | .0001 | no | Harry Zhabilov | Acquisition | Restricted | Registration |
| March 23, 2018 | Issuance | 71,900,000 | Common | .0001 | yes | Dimita Slachev Savov | Consulting Services | Restricted | Registration |
| March 23, 2018 | Issuance | 3,000,000 | Common | .0001 | yes | Volen Nikolov Siderov | Consulting Services | Restricted | Registration |
| March 23, 2018 | Issuance | 3,500,000 | Common | .0001 | yes | Denitsa S Siderova | Consulting Services | Restricted | Registration |
| March 6, 2018 | Issuance | 5,000,000 | Common | .0001 | yes | Mariya Stanislavova Radivoeva | Consulting Services | Restricted | Registration |
| March 23, 2018 | Issuance | 175,000,000 | Common | .0001 | yes | Zhabilov Trust, Diana Zhabilov Trustee | Consulting Services | Restricted | Registration |
| April 20, 2018 | Issuance | 4,000,000 | Common | .0001 | yes | A2 Carved in Stone; Kevin Pla | Cash | Restricted | Registration |
| May 25, 2018 | Issuance | 20,000,000 | Common | .0001 | yes | Luchezar Bogomilov | Consulting Services | Restricted | Registration |
| May 25, 2018 | Issuance | 20,000,000 | Series B Preferred | .001 | no | Seacor Capital Lisa Ficarra | Consulting Services | Restricted | Registration |
| July 18, 2018 | Issuance | 100,000,000 | Common | .0001 | yes | Zhabilov Trust, Diana Zhabilov Trustee | Consulting Services | Restricted | Registration |
| August 24, 2018 | Issuance | 137,000,000 | Common | .0001 | yes | Zhabilov Trust, Diana Zhabilov Trustee | Consulting Services | Restricted | Registration |
| August 28, 2018 | Issuance | 10,000,000 | Common | .0001 | yes | Francis De A S Moreno | Consulting Services | Restricted | Registration |
| August 28, 2018 | Issuance | 4,500,000 | Common | .0001 | yes | Cimarron Capital, Peter Aiello | Consulting Services | Restricted | Registration. |
| September 5, 2018 | Issuance | 10,000,000 | Common | .0001 | yes | Adranik Bagdasarian | Consulting Services | Restricted | Registration |
| September 25, 2018 | Issuance | 10,000,000 | Common | .0001 | yes | Livingston Asset Management Henry Sargent | 3(a)(10) Conversion | Restricted | Registration |
| October 11, 2018 | Issuance | 2,000,000 | Common | .0096 | No | Harutyan Eran | Consulting Services | Restricted | Registration |
| January 24, 2019 | Issuance | 66,376,000 | Common | .0001 | yes | Livingston Asset Management Henry Sargent | 3(a)(10) Conversion | Restricted | Registration |
| February 7, 2019 | Issuance | 72,660,000 | Common | .0001 | yes | Livingston Asset Management Henry Sargent | 3(a)(10) Conversion | Restricted | Registration |
| February 12, 2019 | Issuance | 13,248,889 | Common | .00038 | yes | William Tynan | Debt Conversion | Restricted | Registration |
| December 6, 2019 | Issuance | 38,762,000 | Common | .0001 | yes | Livingston Asset Management Henry Sargent | 3(a)(10) Conversion | Restricted | Registration |

**10)** **Issuer Certification**

*Principal Executive Officer:*

The issuer shall include certifications by the chief executive officer and chief financial officer of the issuer (or any other persons with different titles but having the same responsibilities).

The certifications shall follow the format below:

I, Charles Cotropia, certify that:

     1. I have reviewed this December 31, 2019 Year End Disclosure Statement of Enzolytics, Inc.;

     2. Based on my knowledge, this disclosure statement does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this disclosure statement; and

     3. Based on my knowledge, the financial statements, and other financial information included or incorporated by reference in this disclosure statement, fairly present in all material respects the financial condition, results of operations and cash flows of the issuer as of, and for, the periods presented in this disclosure statement.

January 11, 2021

/s/ Charles Cotropia, CEO

(Digital Signatures should appear as "/s/ [OFFICER NAME]")

*Principal Financial Officer:*

I, Harry Zhabilov certify that:

     1. I have reviewed this this December 31, 2019 Year End Disclosure Statement of Enzolytics, Inc.;

     2. Based on my knowledge, this disclosure statement does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this disclosure statement; and

     3. Based on my knowledge, the financial statements, and other financial information included or incorporated by reference in this disclosure statement, fairly present in all material respects the financial condition, results of operations and cash flows of the issuer as of, and for, the periods presented in this disclosure statement.

January 11, 2021

/s/ Harry Zhabilov, CFO

(Digital Signatures should appear as "/s/ [OFFICER NAME]")

.

# EXHIBIT 4

Fwd: Eco-Petroleum

From:  Harry Zhabilov (zhabilov@att.net)

To:      dimitar.savov@ymail.com

Date:   Friday, March 16, 2018, 07:06 PM GMT+2

Begin forwarded message:

**From:** "Tiffany Baxter" <tiffany@natco.com>
**Subject: Eco-Petroleum**
**Date:** March 16, 2018 at 8:20:18 AM PDT
**To:** "'Harry Zhabilov'" <zhabilov@att.net>

Hi Harry:

This email will serve as confirmation that the certificates 4127-4176 issued with Eco-Petroleum Solutions as the name of the company are valid on the books and records. The certificates do not list Immunotech Laboratories as the name of the Company as the name change is pending FINRA approval. Once the name change is approved, the certificates with Eco-Petroleum Solutions will still be valid and represent shares of Immunotech Laboratories

Best regards,
*Tiffany Baxter*
Transfer Agent Manager

Nevada Agency and Transfer Company
50 West Liberty Street, Suite 880
Reno NV 89501

Tel: 775-322-0626
Fax: 775-322-5623

PLEASE MAKE NOTE OF OUR NEW EMAIL AND WEBSITE:
Email: tiffany@natco.com
Website: www.natco.com

THIS EMAIL AND ANY FILES TRANSMITTED WITH IT ARE PRIVILEGED, CONFIDENTIAL, SUBJECT TO COPYRIGHT AND INTENDED SOLELY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM THEY ARE ADDRESSED. ANY UNAUTHORIZED USE, COPYING, REVIEW OR DISCLOSURE IS PROHIBITED. PLEASE NOTIFY THE SENDER IMMEDIATELY IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR. THANK YOU FOR YOUR ASSISTANCE AND CO-OPERATION.

Fwd: Eco-Petroleum

From:  Harry Zhabilov (zhabilov@att.net)

To:  dimitar.savov@ymail.com

Date:  Monday, March 19, 2018, 06:22 PM GMT+2

Begin forwarded message:

**From:** "Tiffany Baxter" <tiffany@natco.com>
**Subject: RE: Eco-Petroleum**
**Date:** March 19, 2018 at 9:13:01 AM PDT
**To:** "'Harry Zhabilov'" <zhabilov@att.net>
**Reply-To:** <tiffany@natco.com>

Harry:

I sincerely apologize; however, it appears we did leave a "V" out of his Slavchev. If he will return the certificates, we will correct them immediately and return.

Shares are restricted for a minimum of one year for non SEC reporting companies. Once the year has lapsed, the shares are eligible for legend removal pursuant to Rule 144 assuming the shareholder is not an affiliate of the issuer and the issuer is not a shell company.

Best regards,
Tiffany Baxter
Transfer Agent Manager

Nevada Agency and Transfer Company
50 West Liberty Street, Suite 880
Reno NV 89501

Tel: 775-322-0626
Fax: 775-322-5623

PLEASE MAKE NOTE OF OUR NEW EMAIL AND WEBSITE:
Email: tiffany@natco.com
Website: www.natco.com

THIS EMAIL AND ANY FILES TRANSMITTED WITH IT ARE PRIVILEGED, CONFIDENTIAL, SUBJECT TO COPYRIGHT AND INTENDED SOLELY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM THEY ARE ADDRESSED. ANY UNAUTHORIZED USE, COPYING, REVIEW OR DISCLOSURE IS PROHIBITED. PLEASE NOTIFY THE SENDER IMMEDIATELY IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR. THANK YOU FOR YOUR ASSISTANCE AND CO-OPERATION.

-----Original Message-----
From: Harry Zhabilov <zhabilov@att.net>
Sent: Sunday, March 18, 2018 9:43 AM
To: tiffany@natco.com
Subject:

Hi Tiffany I hope you are doing well. I have a complain from one shareholder Dimitar Slavchev Savov. I is complaining regarding misspell of his middle name. How could be fixed. The correct spelling is SLAVCHEV.Also the shareholders from Bulgaria ask why the share are restricted.
Could you please explain in details how the law works in the US for free trading shares.
Thanks Appreciate it.

**<u>EXHIBIT 3</u>**

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"



NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

**Structural Enhancement Technologies Corp.**

NUMBER
4147

SHARES
***500,000***

CUSIP NO. 278586 10 3

AUTHORIZED COMMON STOCK:
1,250,000,000 SHARES
PAR VALUE: $0.0001

This Certifies that

***DIMITAR SLACHEV SAVOV***

Is The Record Holder Of   ***FIVE HUNDRED THOUSAND***

Shares of Structural Enhancement Technologies Corp. Common Stock

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Private Agency and Transfer Company
58 West Liberty Street - Suite 880 - Reno Nevada 89501

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

Countersigned & Registered

Authorized Signature

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT, INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE.

## Structural Enhancement Technologies Corp.

****SHARES****

***200,000***

CUSIP NO. 2288SC 10 3

NUMBER

4148

AUTHORIZED COMMON STOCK:
1,200,000,000 SHARES
PAR VALUE $0.0001

This Certifies that

***DIMITAR SLACHEV SAVOV***

Is The Record Holder Of

***TWO HUNDRED THOUSAND***

Shares of *Structural Enhancement Technologies Corp. Common Stock*

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

Countersigned & Registered

Authorized Signature

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT



"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE.

**Structural Enhancement Technologies Corp.**

NUMBER
4150

ISSUED
****5,000,000****

AUTHORIZED COMMON STOCK
1,700,000,000 SHARES
PAR VALUE $0.0001

CUSIP NO. 37838C 10 3

This Certifies that

***DIMITAR SLACHEV SAVOV***

is the owner of    ***FIVE MILLION***

Shares of Structural Enhancement Technologies Corp. Common Stock

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

SEAL

Countersigned & Registered

Nevada Agency and Transfer Company
50 West Liberty Street • Suite 880 • Reno, Nevada 89501

Authorized Signature

NOT VALID UNLESS COUNTERSIGNED OR TRANSFER AGENT

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

# Structural Enhancement
## Technologies Corp.

NUMBER
4151

***2,000,000***

CUSIP NO. 23888C 10 3

AUTHORIZED COMMON STOCK:
1,000,000,000 SHARES
PAR VALUE $0.0001

This Certifies that

***DIMITAR SLACHEV SAVOY***

Is the Record Holder of          ***TWO MILLION***

Shares of *Structural Enhancement Technologies Corp.* Common Stock

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Seal

Countersigned & Registered

Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

Authorized Signature

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

*NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13*

NUMBER
4154

***50,000,000***

CUSIP NO. 25885C 10 3

# Structural Enhancement Technologies Corp.

AUTHORIZED COMMON STOCK:
1,040,000,000 SHARES
PAR VALUE: $0.0001

This Certifies that

***DIMITAR SLACHEV SAVOV***

Is The Record Holder Of

***FIFTY MILLION***

Shares of *Structural Enhancement Technologies Corp.* Common Stock

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Horizon Agency and Transfer Company
50 West Liberty Street • Suite 880 • Reno Nevada 89501
Countersigned & Registered

Authorized Signature

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

ACT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE.

**SHARES** ***200,000***

CUSIP NO. 25838C 10 3

# Structural Enhancement Technologies Corp.

NUMBER 4155

AUTHORIZED COMMON STOCK
1,000,000,000 SHARES
PAR VALUE $0.0001

This Certifies that   ***DIMITAR SLACHEV SAVOV***

Is The Record Holder Of   ***TWO HUNDRED THOUSAND***

Shares of *Structural Enhancement Technologies Corp.* Common Stock

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated March 6, 2018

SEAL

SECRETARY                    PRESIDENT

COUNTERSIGNED & REGISTERED

Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

## Structural Enhancement Technologies Corp.

NUMBER 4156

AUTHORIZED COMMON STOCK 100,000,000 SHARES PAR VALUE $0.0001

This Certifies that

***DINITAR SLACHEV SAVOV***

Is the Record Holder Of

***TWO HUNDRED THOUSAND***

***200,000***

CUSIP NO 27898C 10 1

Shares of Structural Enhancement Technologies Corp. Common Stock

Dated: March 6, 2018

SECRETARY

PRESIDENT

Seal

Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

Countersigned & Registered

ANY VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

# Structural Enhancement Technologies Corp.

NUMBER
4157

SHARES
***200,000***

CUSIP No. 27588C 10 3

AUTHORIZED COMMON STOCK
1,000,000,000 SHARES
PAR VALUE $0.0001

This Certifies that

***DIMITAR SLACHEV SAVOU***

is the Record Holder Of

***TWO HUNDRED THOUSAND***

Shares of Structural Enhancement Technologies Corp. Common Stock

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

SECRETARY

Seal

Nevada Agency and Transfer Company
50 West Liberty Street • Suite 880 • Reno Nevada 89501

Countersigned & Registered

Authorized Signature

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

NUMBER
4158

SHARES
***200,000***

CUSIP NO. 87588C 10 3

# Structural Enhancement Technologies Corp.

AUTHORIZED COMMON STOCK
100,000,000 SHARES
PAR VALUE $0.0001

***DIMITAR SLACHEV SAVOV***

This Certifies that

***TWO HUNDRED THOUSAND***

is the owner of

Shares of **Structural Enhancement Technologies Corp.** Common Stock

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Countersigned & Registered
Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

Countersigned & Registered

PRESIDENT

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT





NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

**Structural Enhancement Technologies Corp.**

RESTRICTED

***200,000***

CUSIP No. 278387 10 2

NUMBER
4160

AUTHORIZED COMMON STOCK:
1,470,000,000 SHARES
PAR VALUE $0.0001

This Certifies that

***DIMITAR SLACHEV SAVOV***

is The Record Holder Of

***TWO HUNDRED THOUSAND***

Shares of Structural Enhancement Technologies Corp. Common Stock

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Seal

Countersigned & Registered
Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

NOT VALID UNLESS COUNTERSIGNED BY COUNTERSIGN





"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT, INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE.

# Structural Enhancement Technologies Corp.

NUMBER
4162

SHARES
***200,000***

AUTHORIZED COMMON STOCK
1,000,000 SHARES
PAR VALUE $0.0001

CUSIP NO. 23888C 10 1

***DIMITAR SLACHEV SAVOV***

***TWO HUNDRED THOUSAND***

This Certifies that

is the Record Holder of

Shares of *Structural Enhancement Technologies Corp.* Common Stock

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Nevada Agency and Transfer Company
50 West Liberty Street  Suite 880 • Reno Nevada 89501

Countersigned & Registered
TRANSFER AGENT

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT



"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 3/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE.

# Structural Enhancement Technologies Corp.

NUMBER
**4163**

***SHARES***
***200,000***

CUSIP NO. 27888C 103

40 THOUSAND COMMON STOCK
100,000,000 SHARES
PAR VALUE $0.0001

**This Certifies that**

***DIMITAR SLACHEV SAVOV***

**Is The Record Holder Of**

***TWO HUNDRED THOUSAND***

*Shares of Structural Enhancement Technologies Corp. Common Stock*

*transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.*

Dated: March 6, 2018

SECRETARY

PRESIDENT

[Seal: STRUCTURAL ENHANCEMENT TECHNOLOGIES CORP. CORPORATE SEAL]

Countersigned & Registered
Nevada Agency and Transfer Company
50 West Liberty Street • Suite 880 • Reno, Nevada 89501

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY A TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE.

# Structural Enhancement Technologies Corp.

NUMBER
4164

\*\*\*200,000\*\*\*

COMP NO. 2758NC103

AUTHORIZED COMMON STOCK
A2000 ISSUING SHARES
PAR VALUE $0.00001

This Certifies That

\*\*\*DIMITAR SLACHEV SAVOV\*\*\*

Is The Record Holder Of

\*\*\*TWO HUNDRED THOUSAND\*\*\*

Shares of *Structural Enhancement Technologies Corp.* Common Stock

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

Countersigned & Registered

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

Authorized Signature

NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT, INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE.

NUMBER
4165

AUTHORIZED COMMON STOCK
1,000,000,000 SHARES
PAR VALUE: $0.0001

***200,000***

CUSIP NO. 23888C103

# Structural Enhancement Technologies Corp.

***DIMITAR SLACHEV SAVOV***

See The Reverse Side Of

***TWO HUNDRED THOUSAND***

Shares of *Structural Enhancement Technologies Corp.* Common Stock

Dated: March 6, 2018

SECRETARY

PRESIDENT

Seal

Countersigned & Registered

Nevada Agency and Transfer Company
50 West Liberty Street • Suite 880 • Reno Nevada 89501

Authorized Signature

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

# Structural Enhancement Technologies, Corp.

NUMBER 4166

SHARES ***230,000***

AUTHORIZED COMMON STOCK: ***25,000,000 SHARES
PAR VALUE $0.0001

CUSIP No. 27688C 10 3

This Certifies that

***DIMITAR SLACHEV SAVOV***

Is The Record Holder Of

***TWO HUNDRED THOUSAND***

Shares of *Structural Enhancement Technologies Corp.* Common Stock

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

Countersigned & Registered

Authorized Signature

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE.

NUMBER
4168

**Structural Enhancement
Technologies Corp.**

***200,000***

CUSIP NO. 25848C 10 3

AUTHORIZED COMMON STOCK
1,000,000,000 SHARES
PAR VALUE $0.0001

This Certifies that    ***DIMITTAR SLACHEV SAVOV***

is The Record Holder Of    ***TWO HUNDRED THOUSAND***

Shares of **Structural Enhancement Technologies Corp.** Common Stock

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

[Corporate Seal: STRUCTURAL ENHANCEMENT TECHNOLOGIES CORP. · Seal · 25 January 2008]

Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno, Nevada 89501
Countersigned & Registered

Authorized Signature

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT, INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

# Structural Enhancement Technologies Corp.

***SHARES***
\*\*\*200,000\*\*\*

CUSIP No. 27RSSC 10 3

NUMBER
4169

AUTHORIZED COMMON STOCK
5,000,000 SHARES
PAR VALUE $0.001

This Certifies That

\*\*\*DEMITAR SLACHEV SAVOV\*\*\*

Is The Record Holder Of

\*\*\*TWO HUNDRED THOUSAND\*\*\*

Shares of Structural Enhancement Technologies Corp. Common Stock

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

[SEAL]

Nevada Agency and Transfer Company
50 West Liberty Street • Suite 880 • Reno Nevada 89501

Countersigned & Registered

Authorized Signature

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT



"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT REGISTERED UNDER THE LAWS OF THE STATE OF DELAWARE

**Structural Enhancement Technologies Corp.**

NUMBER
4170

AUTHORIZED COMMON STOCK
1,250,000,000 SHARES
PAR VALUE $0.0001

ISIN/CUSIP

***200,000***

CUSIP NO. 278882 10 3

This Certifies that

***DIMITAR SLACHEV SAVOV***

Is The Record Holder Of

***TWO HUNDRED THOUSAND***

Shares of *Structural Enhancement Technologies Corp.* Common Stock

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Countersigned & Registered:

Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

Authorized Signature

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT



"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT, AND INCORPATED UNDER THE LAWS OF THE STATE OF DELAWARE.

# Structural Enhancement Technologies Corp.

NUMBER
4172

AUTHORIZED COMMON STOCK
1,000,000,000 SHARES
PAR VALUE $0.0001

***$200,000***

CUSIP NO. 278587 10 3

This Certifies that

***DIMITAR SLACHEV SAVOV***

Is The Record Holder Of

***TWO HUNDRED THOUSAND***

Shares of **Structural Enhancement Technologies Corp.** Common Stock transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated March 6, 2018

SECRETARY

PRESIDENT

[Seal]

Countersigned & Registered
Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

AUTHORIZED SIGNATURE

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

## Structural Enhancement Technologies, Corp.

NUMBER
4173

40 THOUSAND COMMON STOCK
1,000,000,000 SHARES
PAR VALUE $0.0001

This Certifies that

***DIMITAR SLACHEV SAVOY***

CUSIP NO. 17385C 10 3

***200,000***

is the Record Holder of

***TWO HUNDRED THOUSAND***

Shares of Structural Enhancement Technologies Corp. Common Stock

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Nevada Agency and Transfer Company
50 West Liberty Street  Suite 880  Reno Nevada 89501

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

Countersigned & Registered

Authorized Signature

"NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13"

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE.

# Structural Enhancement Technologies Corp.

NUMBER
4174

***200,000***

CUSIP NO. 278SSC 10 3

AUTHORIZED COMMON STOCK
500,000,000 SHARES
PAR VALUE $0.0001

This Certifies that

***DIMITAR SLACHEV SAVOV***

Is The Record Holder Of

***TWO HUNDRED THOUSAND***

Shares of Structural Enhancement Technologies Corp. Common Stock

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of the Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated: March 6, 2018

SECRETARY

PRESIDENT

Seal

Nevada Agency and Transfer Company
50 West Liberty Street · Suite 880 · Reno Nevada 89501

Countersigned & Registered

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

*NAME CHANGE TO ECO-PETROLEUM SOLUTIONS, INC. ON 2/7/13*

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT. INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE.

SHARES **200,000***

CUSIP NO 278896 10 1

# Structural Enhancement Technologies Corp.

NUMBER
4175

AUTHORIZED COMMON STOCK
1,000,000,000 SHARES
PAR VALUE $0.0001

This Certifies that

***DIMITAR SIACHEV SAVOV***

Is The Record Holder Of    ***TWO HUNDRED THOUSAND***

Shares of *Structural Enhancement Technologies Corp.* Common Stock

transferable on the books of the Corporation by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

Dated March 6, 2018

SECRETARY

PRESIDENT

SEAL

Nevada Agency and Transfer Company
50 West Liberty Street • Suite 880 • Reno Nevada 89501

Countersigned & Registered            Authorized Signature

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

# EXHIBIT 2

**SWIFT/SEPA нотификации по изходящи валутни преводи**
IBAN: 70001520786869, branch: 220, период: 11.07.2017

*При задаване на Branch code се зареждат преводи само от последния ден на избрания период.*

---

**7192100858**

|  |  |
|---|---|
| MT F | SWIFT Single Customer Credit Transfer |
| Basic Header | F  01 UNCRBGSFAXXX 0009 074420 |
| Application Header | I 103 CHASUS33XXXX N |
| User Header | Service Code    103: |
|  | Bank. Priority   113: |
|  | Msg User Ref.   108: 17711103753E0500 |
|  | Validation      119: |
| Sender's Ref. | *20  : 7192100858 |
| Bank Operation Code | *23B : CRED |
| Settlement Amount | *32A : 170711USD190000,00 |
| Instructed Amount | 33B :       USD190000,00 |
| Ordering Customer | *50  : /BG57UNCR70001520786869 |
|  | IMMUNOTECH LABORATORIES BG |
|  | SOFIYA UL. NISHAVA 61 VH. A ET. 3 A |
|  | P. 6, BULGARIA |
| Ordering Institution | 52  : |
|  | UNCRBGSFXXX |
| Account with Inst. | 57  : |
|  | BOFAUS3N |
| Beneficiary Customer | *59  : /325016667934 |
|  | IMMUNOTECH LABORATORIES INC. |
|  | 120 W.POMONA AVE MONROVIA CA 91016 |
| Remittance Info. | 70  : BUSINESS |
| Details of Charges | *71A : OUR |
| Trailer |  |
|  | MAC: |
|  | CHK: |
|  | PDE: |
|  | PDM: |
|  | DLM: |

```
7072101106

MT F                    SWIFT Single Customer Credit Transfer

Basic Header          F  01 UNCRBGSFAXXX 4765 631761
Application Header     I 103 CHASUSA3XXXX N

Use: Header            Service Code    103:
                       Bank. Priority  113:
                       Msg User Ref.   108: 17313115002E0601
                       Validation      119:
Sender's Ref.          :20  : 7072101106
Bank Operation Code    :2?B : CRED
Settlement Amount      :32A : 170313USD1500,00
Instructed Amount       33B :       USD1500,00
Ordering Customer      :50  : /BG57UNCR70001520786869
                              IMMUNOTECH LABORATORIES BG LTD
                              GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                              3 AP. 6, BULGARIA
Ordering Institution    32  :
                              UNCRBGSFXAA
Account with Inst.      5?  :
                              : DFAUS3N
Beneficiary Customer   :59  : /C99740495B
                              HARRY HARRIEV ZHADILOV
                              9192 FAIRVIEW AVE SAN GABRIEL CA 91
                              775 USA
Remittance Info.        70  . BUSINESS
Details of Charges     :71A : OUR
Trailer
                              MAC:
                              CHK: N/A
                              PDE:
                              PDM:
                              DLM:
```

```
7087100861
```

```
MT F                      SWIFT Single Customer Credit Transfer

Basic Header:             F  01 PNCBBGSFAXXX 6004 201401
Application Header        I 103 CHASUS33XXXX N

User Header               Service Code     103:
                          Bank. Priority   113:
                          Msg User Ref.    108: 17328111003E0400
                          Validation       119:
Sender's Ref.            *20   : 7087100861
Bank Operation Code      *23B  : CRED
Settlement Amount        *32A  : 171213USD1500,00
Instructed Amount        33B   :       USD1500,00
Ordering Customer        *50   : /BG57UNCR70001520786869
                                 IMMUNOTEH LABORATORIES BG OOD
                                 GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                 3 AP. 6, BULGARIA

Ordering Institution     52    :
                                 UNCRBGSFXXX
Account with Inst.       57    : //FW026009533
                                 BANK OF AMERICA BE CENTER N 0626 35
                                 50 E FOOTHILL BLVD PASADENA CA 9110
                                 7  USA
Beneficiary Customer     *59   : /0097404058
                                 HARRY HARRIEV ZHABILOV
                                 9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                 775
Remittance Info.         70    : BUSINESS
Details of Charges       *71A  : OUR
Trailer
                                 MAC :
                                 CHK :
                                 DLT :
                                 PDM :
                                 TLM :
```

7

```
7100101197
```

MT F                          SWIFT Single Customer Credit Transfer

Basic Header            F  01 UNCRBGSFAXXX 0005 010940
Application Header      I 103 CHASUS33XXXX N

User Header             Service Code    103:
                        Bank. Priorit.  113:
                        Msg User Ref.   108: .7410122007E0700
                        Validation      119:
Sender's Ref.           :20  : 7100101197
Bank Operation Code     :23B : CRED
Settlement Amount       :32A : 17:410JS01600.00
Instructed Amount       :33B :     USD16J0.00
Ordering Customer       :50  : /BG57UNCR7C901520786969
                               IMMUNOTECH LABORATORIES BG
                               SOFIYA UL. NISHAVA 61 VH. A ET. 3 A
                               P. 6. BULGARIA

Ordering Institution    52   :

                               UNCRBGSFXXX
Account with Inst.      57   :

                               BOFAUS3N
Beneficiary Customer    :59  : /0997404058
                               HARRY HARRIEV ZHABILOV
                               9122 FAIRVIEW AVE SAN GABRIEL CA 91
                               775
Remittance Info.        70   : BUSINESS
Details of Charges      :71A : OUR
Trailer
                               MAC:
                               CHK:
                               PDE:
                               PLM:
                               CLM:
```

```
7117101578

MT F                        SWIFT Single Customer Credit Transfer

Basic Header            F  01 UNCBEGSFAXXX 0007 022802
Application Header      I 103 CHAL'SFIXXXX N

User Header             Service Code    103:
                        Bank. Priority  113:
                        Msg User Ref.   108: 17427124003E0400
                        Validation      113:
Sender's Ref.           +20  : 7117101578
Bank Operation Code     +23B : CRED
Settlement Amount       +32A : 170427USD1600,00
Instructed Amount        33B :        USD1600,00
Ordering Customer       +50  : /BG57UNCB70301520786869
                               IMMUNOTECH LABORATORIES BG OOD
                               GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                               3 AP. 6, BULGARIA

Ordering Institution     52  :
                               UNCBBGSFXXX

Account with Inst.       57  :
                               ROFAUS3N
Beneficiary Customer    +59  : /0997404055
                               HARRY HARRIEV ZHABILOV
                               9192 FAMILEN AVE SAN GABRIEL CA 917
                               15
Remittance Info.         70  : BUSINESS
Details of Charges      +71A : OUR
Trailer
                               MAC:
                               CHK:
                               PDE:
                               PDM:
                               DLM:
```

```
7131100923                                                              ↳
```

| | |
|---|---|
| MT F | SWIFT Single Customer Credit Transfer |
| Basic Header | F  01 UNCRBGSFAXXX 0007 032239 |
| Application Header | I 103 CHASUS33XXXX N |
| User Header | Service Code    103: |
| | Bank. Priority  113: |
| | Msg User Ref.   108: 17511105505E0300 |
| | Validation      119: |
| Sender's Ref. | ·20  : 7131100923 |
| Bank Operation Code | ·23B : CRED |
| Settlement Amount | ·32A : 170511USD1600,00 |
| Instructed Amount | 33B      USD1600,00 |
| Ordering Customer | ·50  : /BG57UNCR70001520796869 |
| | IMMUNOTECH LABORATORIES BG |
| | GR. SOFIYA UL. NISHAVA 61 VH. A ET. |
| | 3 AP. 6, BULGARIA |
| Ordering Institution | 52  : |
| | UNCRBGSFXXX |
| Account with Inst. | 57  : |
| | BOFAUS3N |
| Beneficiary Customer | ·59  : 7097404053 |
| | HARRY HARRIEV ZHABILOV |
| | 9192 FAIRVIEW AVE SAN GABRIEL CA 91 |
| | 775 |
| Remittance Info. | 70  : BUSINESS |
| Details of Charges | ·71A : OUR |
| Trailer | |
| | MAC: |
| | CHK: |
| | PDE: |
| | PDM: |
| | DLM: |

11

```
7137100781

MT F                        SWIFT Single Customer Credit Transfer

Basic Header             F  C1 UNCRBGSFFAXXX 0007 036419
Application Header        I 10: CLATUS FXI-XX N

User Header              Service Code    103:
                         Bank. Priority   113:
                         Msg User Ref.    108: 17517112003E0101
                         Validation       119:
Sender's Ref.            *20  : 7137100781
Bank Operation Code      *23B : CRED
Settlement Amount        *32A : 170517USD1500,00
Instructed Amount         33B       USD1500,00
Ordering Customer        *50  : /BG57UNCR70001520786969
                               IMMUNOTECH LABORATORIES BG OOD
                               GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                               3 AP. 6. BULGARIA

Ordering Institution      52

                               UNCRBGSFXXX
Account with Inst.        57   :

                               BGFA-S3N
Beneficiary Customer     *59  : C007404458
                               HARAY HARRIEV ZHABILOV
                               9192 FAIRVIEW AVE SAN GABRIEL CA 91
                               775
Remittance Info.          70   . BUSINESS
Details of Charges       *71A  : OUR
Trailer

                               MAC:
                               CHK:
                               PDE:
                               PDM.
                               DLM:
```

```
7139100898                                                    1
```

| | | |
|---|---|---|
| MT F | | SWIFT Single Customer Credit Transfer |
| | | |
| Basic Header | F | 01 UNCRBGSFAXXX 0007 038487 |
| Application Header | I 103 CHASJS33XXXX N | |
| | | |
| User Header | Service Code | 103: |
| | Bank Priority | 113: |
| | Msg User Ref. | 108: 17519115504E0700 |
| | Validation | 119: |
| Sender's Ref. | *20 | : 7139100898 |
| Bank Operation Code | *23B | : CRED |
| Settlement Amount | *32A | : 170519USD10000,00 |
| Instructed Amount | 33B | :        USD10000,00 |
| Ordering Customer | *50 | : /BG57UNCR70001520786869 |
| | | IMMUNOTECH LABORATORIES BG |
| | | GR. SOFIYA UL. MISHAVA 61 VH. A ET. |
| | | A'. 6, BULGARIA |
| Ordering Institution | 52 | : |
| | | UNCRBGSFXXX |
| Account with Inst | 57 | : |
| | | BOFAUS3N |
| Beneficiary Customer | *59 | : /0997404058 |
| | | HARRY HARRIEV ZHABILOV |
| | | 9192 FAIRVIEW AVE SAN GABRIEL CA 91 |
| | | 775 |
| Remittance Info. | 70 | : BUSINESS |
| Details of Charges | *71A | : OUR |
| Trailer | | |
| | | MAC: |
| | | CHK: |
| | | PLE: |
| | | PDE: |
| | | DLM: |

```
7146100386

MT F                            SWIFT Single Customer Credit Transfer

Basic Header              F  01 UNCRBGSFAXXX 0009 042440
Application Header        I 103 CHASUS33XXXX N

User Header               Service Code    103:
                          Bank. Priority  113:
                          Msg User Ref.   108: 17526092502E0500
                          Validation      119:
Sender's Ref.      *20   : 7 46100386
Bank Operation Code *23B  : CRED
Settlement Amount  *32A  : 170526USD:0000, 00
Instructed Amount   33B        USD10000, 00
Ordering Customer  *50   : /BG57UNCR70001530786819
                          IIMUNOTECH LABORATORIES BG OOD
                          GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                          3 AP. 6, BULGARIA

Ordering Institution   52  :
                          UNCRBGSFXXX

Account with Inst.     57  :
                          BOFAUS3N
Beneficiary Customer  *59  : /0997404058
                          HARRY HARRIEV ZHABILOV
                          9192 FAIRVIEW AVE SAN GABRIEL CA 91
                          775

Remittance Info.    70  : BUSINESS
Details of Charges  *71A  : OUR
Trailer

                          MAC:
                          CHK:
                          PDE:
                          PRH:
                          DLM.
```

```
7159100920

MT F                     SWIFT Single Customer Credit Transfer

Basic Header             F  01 UNCREGSFAXXX 000B 051622
Application Header        I 103 CHASUS33XXXX N

User Header              Service Code    103:
                         Bank. Priority  113:
                         Msg User Ref.   108: 17603120001E0100
                         Validation      119:
Sender's Ref.            *20  : 7159100920
Bank Operation Code      *23B : CRED
Settlement Amount        *32A : 170508USD10000,00
Instructed Amount         33B :        USD10000,00
Ordering Customer        *50  : /BG570NCR70001520786869
                                IMMUNOTECH LABORATORIES BG
                                GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                3 AP. 6, BULGARIA

Ordering Institution.     52  :

Account with Inst.        57  :
                                RCFAUS3N
Beneficiary Customer     *59  : /097404038
                                HARRY HARRIEV ZHABILOV
                                9172 FAIRVIEW AVE SAN GABRIEL CA 91
                                775
Remittance Info.          70  : BUSINESS
Details of Charges       *71A : OUR
Trailer
                                MAC:
                                CHK:
                                PDE:
                                PDM:
                                DLM:
```

15

```
7163100410
```

```
MT F              SWIFT Single Customer Credit Transfer

Basic Header      F  01 UNCRBGFFAXYY 0028 053330
Application Header I 103 CHASUS3XXXX N

User Header       Service Code     103:
                  Bank. Priority   113:
                  Msg User Ref.    108: 17612065508E0300
                  Validation       119:
Sender's Ref.     *20  : 7163100410
Bank Operation Code *23B : CRED
Settlement Amount *32A : 170612USD1500,00
Instructed Amount 33B  :      USD1500,00
Ordering Customer *50  : BG57UNCR70001520786869
                         IMMUNOTECH LABORATORIES BG
                         GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                         3 AP. 6, BULGARIA

Ordering Institution 52 :
                         UNCRBGSFXXX

Account with Inst.  57 :
                         BOFAUS3N

Beneficiary Customer *59 : 70997404056
                         HARRY HARRIEV ZHABILOV
                         91-1 FAIRVIEW AVE SAN GABRIEL  CA
                         91775
Remittance Info.   70 : BUSSINES
Details of Charges *71A : OUR
Trailer

                         MAC:
                         CHK:
                         PDE:
                         PDM
                         DLM:
```

**7163101182**

| | |
|---|---|
| MT F | SWIFT Single Customer Credit Transfer |
| Basic Header | F  01 UNCRBGSFAXXX 0008 063704 |
| Application Header | I 103 CHASUS33XXXX N |
| User Header | Service Code     103: |
| | Bank. Priority  1.3: |
| | Msg User Ref.   108: 17512123501E0400 |
| | Validation      119: |
| Sender's Ref. | *20    7163101182 |
| Bank Operation Code | *23B  :  CRED |
| Settlement Amount | *32A  : 170612USD1500.00 |
| Instructed Amount | 33B  :      USD1500.00 |
| Ordering Customer | *50   : /BG57UNCR70001522786869 |
| | IMMUNOTECH LABORATORIES BG |
| | GR. SOFIYA UL. NISHAVA 61 VH. A ET. |
| | 3 AP. 6, BULGARIA |
| Ordering Institution | 52   : |
| | UNCRBGSFXXX |
| Account with Inst. | 57   : |
| | BOFAUS3N |
| Beneficiary Customer | *59   : /0997404058 |
| | HARRY HARRIEV ZHABILOV |
| | 9192 FAIRVIEW AVE SAN GABRIEL CA 91 |
| | 775 |
| Remittance Info. | 70   : BUSINESS |
| Details of Charges | *71A  : OUR |
| Trailer | |
| | MAC: |
| | CHK: |
| | PDE |
| | P. M |
| | DLM: |

```
7191100700

MT F                          SWIFT Single Customer Credit Transfer

Basic Header               F  01 UNCRBGLFAXXX 0009 073379
Application Header         I 103 CHASUS33XXXX N

User Header                Service Code    103:
                           Bank. Priority  113:
                           Msg User Ref.   108: 17710103502E0600
                           Validation      119:
Sender's Ref.              *20  : 7191100700
Bank Operation Code        *23B : CRED
Settlement Amount          *32A : 170710USD3100,00
Instructed Amount          33B  :       USD3100,C.
Ordering Customer          *50  : /BG57UNCR70GJ1520786869
                                  IMMUNOTECH LABORATORIES BG
                                  GR  SOFIYA UL. NISHAVA 61 VH  A ET.
                                  1 AP. 6, BULGARIA

Ordering Institution       51  :
                                  UNCRBGSFA X
Account with Inst.         57  :
                                  BOFAUS3N
Beneficiary Customer       *59  : /C397404058
                                  HARRY HARRIEV ZHABILOV
                                  9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                  775
Remittance Info.           70   BUSINESS
Details of Charges         *71A : OUR
Trailer
                                  MAC:
                                  CHK:
                                  PDE.
                                  PDM:
                                  DLM:
```

7207100697

MT F                          SWIFT Single Customer Credit Transfer

Basic Header          F   91 UYCRBGSFAXXX 0010 085324
Application Header     I 103 CHASUS33XXXX N

User Header            Service Code      103:
                       Bank. Priority    113:
                       Msg User Ref.     108: 17726110005E0101
                       Validation        119:
Sender's Ref.         *20  : 7207100697
Bank Operation Code    *23B : CRED
Settlement Amount     *32A : 17.72CU/SD1500,00
Instructed Amount      33B  :      USD1500,00
Ordering Customer      *50  : /BG57UNCR70001520786869
                             IMMUNOTECH LABORATORIES BG
                             GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                             3 AP. 6, BULGARIA

Ordering Institution   52   :
                             UNCRBGSFXXX

Account with Inst.     57   :
                             E2FAUS3N
Beneficiary Customer   *59  : 0347464058
                             HARRY HARRIEV CHABILOV
                             9192 FAIRVIEW AVE SAN GABRIEL CA 91
                             775

Remittance Info.       70   : BUSINESS
Details of Charges     *71A : OUR
Trailer
                             MAC:
                             CHK:
                             PLE:
                             PDM:
                             DLM:

20

7234100525

MT F                              SWIFT Single Customer Credit Transfer

Basic Header                      F  01 UNCRBGSFAXXX 0011 102806
Application Header                I 103 CHASUS33XXXX N

User Header                       Service Code     103:
                                  Bank. Priority   113:
                                  Msg User Ref.    108: 17822102503E0701
                                  Validation       119:
Sender's Ref.                     *20  : 7234100525
Bank Operation Code               *23B : CRED
Settlement Amount                 *32A : 173327 USD1500,00
Instructed Amount                  33B :        USD1500,00
Ordering Customer                 *50  : /BG57UNCR70001520786369
                                         IMMUNOTECH LABORATORIES BG OOD
                                         SOFIYA UL. NISHAVA 61 VH. A ET. 3 A
                                         P. 6, BULGARIA

Ordering Institution              51  :
                                         UNCRBGSFXXX

Account with Inst.                57  :
                                         B(FAUG3N
Beneficiary Customer              *59  : /2297404058
                                         HARRY HARRIEV ZHABILOV
                                         9102 FAIRVIEW AVE SAN GABRIEL CA 91
                                         773
Remittance Info.                  70  : BUSINESS
Details of Charges                *71A : OUR
Trailer
                                         MAC:
                                         CHK:
                                         PDE:
                                         PDM:
                                         DLM:

22

```
7242100859                                                              ?        ?

MT F                        SWIFT Single Customer Credit Transfer

Basic Header              F   01 UNCRBCFFAXXX 0011 068354
Application Header        I 1.3 CHASUS33YXXX N

User Header               Service Code    103:
                          Bank. Priority  113:
                          Msg User Ref.   108: 17830111002E0400
                          Validation      119:
Sender's Ref.            *20  : 7242100859
Bank Operation Code      *23B : CRED
Settlement Amount        *32A : 170830USD1500.00
Instructed Amount         33B :        USD1500.00
Ordering Customer        *50  : /BG57UNCR70091520786869
                                 IMMUNOTECH LABORATORIES BG
                                 GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                 4 AP. 6, BULGARIA

Ordering Institution      52
                                 UNCRBGSFXXX
Amount with Inst.         57  : //FW026009593
                                 BANK OF AMERICA B CENTER  0626 3555
                                 E.FOOTHILL BLVD PASADENA CA 91107

Beneficiary Customer     *59  : /09974 4658
                                 LARRY HARRIEV CHABILOV
                                 2.92 FAIRVIEW AVE SAN GABRIEL CA 91
                                 175

Remittance Info.          70  : BUSINESS
Details of Charges       *71A . OUR
Trailer
                                 MAC:
                                 CHK:
                                 PLF:
                                 FEN:
                                 DLM:
```

23

```
7250101541

MT F                            SWIFT Single Customer Credit Transfer

Basic Header                    F  01 UNCPBGSFAXXX 0011 113638
Application Header               I 103 CHASUS33XXXX N

User Header                     Service Code     103:
                                Bank. Priority   113:
                                Msg User Ref.    108: 17907122502E0400
                                Validation       119:
Sender's Ref.             :20   : 7250101541
Bank Operation Code       :23B  : CRED
Settlement Amount         :32A  17C307USD3000,00
Instructed Amount          33B  :      USD3000,00
Ordering Customer         :50   : /BG57UNCR700C1523786869
                                  IMMUNOTECH LABORATORIES BG
                                  GR  SOFIYA  JL. NISHAVA 61 VH. A ET.
                                  3 AP. 6, BULGARIA

Ordering Institution       52   :
                                  UNCPBGSFXXX
Account with Inst.         57   :
                                  BOFAUS3N
Beneficiary Customer      :59   : /7997404055
                                  HARRY HARRIEV ZHABILOV
                                  9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                  775
Remittance Info.           70   : BUSINESS
Details of Charges        :71A  : OUR
Trailer                         MAC:
                                CHK:
                                TDE:
                                PDM:
                                DLM:
```

```
7275101327

MT F                          SWIFT Single Customer Credit Transfer

Basic Header              F   01 UNCRBGSFAXXX 0013 130714
Application Header        I 103 CHASUS33XXXX N

User Header               Service Code    103:
                          Bank. Priority  113:
                          Msg User Ref.   108: 17A02122002E0100
                          Validation      119:
Sender's Ref.             :20  : 7275101327
Bank Operation Code       :23B : CRED
Settlement Amount         :32A : 171002USD3000,00
Instructed Amount          23B :      USD3000,00
Ordering Customer         :50  : /BG57UNCR70001520786869
                                  IMMUNOTECH LABORATORIES BG OOD
                                  GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                  3 AP. 6, BULGARIA

Ordering Institution       52  :
                                  UNCRBGSFXXX

Account with Inst.         57  :
                                  BOFAUS3N
Beneficiary Customer      :59  : /0297404058
                                  HARRY HARRIEV ZHABILOV
                                  9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                  75
Remittance Info.           70  : BUSINESS
Details of Charges        :71A : OUR
Trailer

                                  MAC:
                                  HK:
                                  TDE:
                                  PDM:
                                  DLM:
```

```
7292100770

MT F                        SWIFT Single Customer Credit Transfer

Basic Header              F  01 UNCRBGSFAXXX 0014 143997
Application Header        I 103 CHASUS33XXXX N

User Header               Service Code     103:
                          Bank. Priority   113:
                          Msg User Ref.    108: 17A19112002E0700
                          Validation       119:
Sender's Ref.            *20  : 7292100770
Bank Operation Code      *23B  : CRED
Settlement Amount        *32A  : 1 1019USD53000,00
Instructed Amount        33B  :      USD3000,00
Ordering Customer        *50  : /BG17UNCR70031520786869
                                 IMMUNWELL LABORATORIES BG
                                 GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                 3 AP. 6, BULGARIA

Ordering Institution     52
                                 UNCRBGSFXXX

Account with Inst.       57   :
                                 BOFAUS3N
Beneficiary Customer     *59  : /79374 4058
                                 HARRY HARRIEV ZHABILOV
                                 9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                 775
Remittance Info.         70   : BUSINESS
Details of Charges       *71A  : OUR
Trailer
                                 MAC:
                                 CHK:
                                 PDE:
                                 PDM:
                                 DLM:
```

28

```
7310100612

MT F                          SWIFT Single Customer Credit Transfer

Basic Header             F  01 UNCRBGSFAXXX 0015 155858
Application Header       I 103 CHA J'33XAXX N

User Header              Service Code    103:
                         Bank. Priority  113:
                         Msg User Ref.   108: 17B06100006E0700
                         Validation      119:
Sender's Ref.            *20  : 7310100612
Bank Operation Code      *23B : CRED
Settlement Amount        *32A : 171106USD3000,00
Instructed Amount        33B  :        USD3000,00
Ordering Customer        *50  : /BG57UNCR7C001520786869
                                IMMUNOTECH LABORATORIES BG
                                GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                3 AP. 6, BULGARIA

Ordering Institution     5_   :
                                UNCRBGSFXXX

Account with Inst.       57   :
                                FOFAUC3N
Beneficiary Customer     *59  : /79074C4058
                                BARRY BAFRIEV CHABILOV
                                4192 FAIRVIEW AVE SAN GABRIEL CA 91
                                776
Remittance Info.         70   : BUSINESS
Details of Charges       *71A : OUR
Trailer
                                MAC:
                                CHK:
                                PDE:
                                PDM:
                                DLM:
```

```
7326100716


MT F                         SWIFT Single Customer Credit Transfer

Basic Header           F  01 UNCRBGCFAXXX 0017 163206
Application Header      I 103 CHASUS33XXXX N

User Header            Service Code    103
                       Bank. Priority  113:
                       Msg User Ref.   108: 17B22110501E0500
                       Validation      119:
Sender's Ref.          *20  : 7326100716
Bank Operation Code    *23B : CRED
Settlement Amount      *32A : 171122USD3720,00
Instructed Amount       33B :            USD 3000,00
Ordering Customer      *50  : TE5570UCP70091520786869
                              IMMUNOTECH LABORATORIES BG
                              GR. SOFIA UL  NISHAVA 61 VH. A ET.
                              3 AP  6. BULGARIA

Ordering Institution    52  :
                              : RBJSFXXX

Account with Inst.      57  :
                              BOFAUS3N
Beneficiary Customer   *59  : 7049274f4058
                              HARRY HARRIEV ZHABILOV
                              9192 FAIRVIEW AVE SAN GABRIEL CA 91
                              /5
Remittance Info.        70  : BUSINESS
Details of Charges     *71A : OUR
Trailer:
                              MAC:
                              CHK:
                              PDE:
                              FDM:
                              DLM:
```

```
7339101824
```

```
MT F                      SWIFT Single Customer Credit Transfer

Basic Header              F  01 UNCPBGSFAXXX 0017 178060
Application Header        I 103 CHASUS33XXXX N

User Header               Service Code    103:
                          Bank. Priority  113:
                          Msg User Ref.   108: 19C05143504E0402
                          Validation      119:
Sender's Ref.            *20  : 7339101824
Bank Operation Code      *23B : CRED
Settlement Amount        *32A : 171205USD3000,00
Instructed Amount         33B :        USD3000,00
Ordering Customer        *50  : /DE6 UNCR70001520786369
                                IMMUNOTECH LABORATORIES BG
                                SOFIYA H. NISHAVA 61 VH. A ET. 3 A
                                P. 6, BULGARIA
Ordering Institution      52  :
                                UNCRBGSFXXX
Account with Instr.       57  :
                                BOFAUS3N
Beneficiary Customer     *59  : /0997434058
                                HARRY HARRIEV ZHABILOV
                                3132 FAIRVIEW AVE SAN GABRIEL CA 91
                                175
Remittance Info.          70  : BUSINESS
Details of Charges       *71A : OUR
Trailer
                                MAC:
                                CHK:
                                PUE:
                                TPM:
                                PDM:
```

```
7356100837
```

MT F                        SWIFT Single Customer Credit Transfer

Basic Header            F   01 UNCRBGSFAXXX 0018 192857
Application Header      I 103 CHASUS33XXXX N

User Header            Service Code    103:
                       Bank. Priority  113:
                       Msg User Ref.   108: 17C22104004E0600
                       Validation      119:
Sender's Ref.          *20  : 7356100837
Bank Operation Code    *23B : CRED
Settlement Amount      *32A : 171222 USD USD, C
Instructed Amount      33B  :        USD10 0.00
Ordering Customer      *50  :   D.571 NCR/ U01C20786869
                                IMMUNOTECH LABORATORIES BG
                                GR. SOFIYA UL. NISHAVA 61 VH, A ET.
                                3 AP. 6, BULGARIA

Ordering Institution    52  :
                                UNCRBGSFXXX
Account with Inst.      57  .
                                BCFAUS3N
Beneficiary Customer   *59  : /0097404058
                                HARRY HARRIEV ZHABILOV
                                9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                775
Remittance Info.        70  : BUSINESS
Details of Charges     *71A : OUR
Trailer
                                MAC :
                                CHK:
                                PDE:
                                PDM:
                                DLM:
```

**8010101329**

| | |
|---|---|
| MT F | SWIFT Single Customer Credit Transfer |
| Basic Header | F 01 UNCRBGSFXXXX 0018 202636 |
| Application Header | I 103 CHASUS33XXAX N |
| User Header | Service Code 103: |
| | Bank. Priority 113: |
| | Msg User Ref. 108: 1811J130001E0400 |
| | Validation 119: |
| Sender's Ref. | 20 : 8010101329 |
| Bank Operation Code | 23B : CRED |
| Settlement Amount | 32A : 180110USD1500,00 |
| Instructed Amount | 33B : USD1500,00 |
| Ordering Customer | 50 : /BG57UNCR70001520786869 |
| | IMMUNOTECH LABORATORIES BG |
| | GR. SOFIYA UL. NISHAVA 61 VH. A ET. |
| | 3 AP. 6, BULGARIA |
| Ordering Institution | 52 : |
| | UNCRBGSFXXX |
| Account with Inst. | 57 : |
| | BOFAUS3N |
| Beneficiary Customer | 59 : /0997404058 |
| | HARRY HARRIEV ZHABILOV |
| | 9152 FAIRVIEW AVE SAN GABRIEL CA 91 |
| | 775 |
| Remittance Info | 70 : BUSINESS FOR YR. 3555 E.FOOTHILL BLVD |
| PASADENA CA 91 17 | |
| Details of Charges | 16 : OUR |
| Trailer | |
| | MAC: |
| | CHK: |
| | PDE: |
| | PTM: |
| | LLM: |

```
8022100717

MT F                        SWIFT Single Customer Credit Transfer

Basic Header            F  01 UNCRBGSFAXXX 0019 210649
Application Header      I 103 CHASUS33XXXX N

User Header             Service Code      103:
                        Bank. Priority    113:
                        Msg User Ref.     108: 18122102504E0700
                        Validation        119:
Sender's Ref.           *20  : 8022100717
Bank Operation Code     *23B : CRED
Settlement Amount       *32A : 180122USD1500,00
Instructed Amount       33B  :       USD1500,00
Ordering Customer       *50  : /BG57UNCR70001520786869
                               IMMUNOTECH LABORATORIES BG
                               GR. SOFIA UL. NISHAVA 61 VH. A ET.
                               3 AP. 6, BULGARIA

Ordering Institution     52  :
                               UNCRBGSFXXX

Account with Inst.       57  :
                               BOFAUS3N

Beneficiary Customer    *59  : 0997404058
                               HARRY HARPIEV MIABILOV
                               9192 FAIRVIEW A.E SAN GABRIEL CA 91
                               5
Remittance Info          70  : BUSINESS FOR YR. 3555 E.FOOTHILL BLVD
PASADENA CA 91107
Details of Charges      *71A : OUR
Trailer
                               MAC:
                               CHF:
                               PDE:
                               PDM:
                               DLM:
```

---

**8024100677**

| | | |
|---|---|---|
| MT F | | SWIFT Single Customer Credit Transfer |
| Basic Header | | F  01 UNCRBGSFAXXX 0018 212747 |
| Application Header | | I 103 CHASUS33XXXX N |
| User Header | | Service Code    103: |
| | | Bank. Priority  113: |
| | | Msg User Ref.    108: 18124114003E0200 |
| | | Validation       .19 |
| Sender's Ref. | *20 | : 8024100677 |
| Bank Operation Code | *23B | : CRED |
| Settlement Amount | *32A | : 130124USD1500,00 |
| Instructed Amount | 33B | :         USD1500,00 |
| Ordering Customer | *50 | : /BG57UNCR70001523786869 |
| | | IMMUNOTECH LABORATORIES BG |
| | | GR. SOFIYA UL. NISHAVA 61 VH. A ET. |
| | | 3 AP. 6, BULGARIA |
| Ordering Institution | 52 | : |
| | | UNCRBGSFXXX |
| Account with Inst. | 57 | : |
| | | COFAUS3N |
| Beneficiary Customer | *59 | : /3997404055 |
| | | HARRY HARRIEV ZHABILOV |
| | | 9192 FAIRVIEW AVE SAN GABRIEL CA 91 |
| | | 775 |
| Remittance Info. | 70 | : BUSINESS |
| Details of Charges | *71A | : OUR |
| Trailer | | |
| | | MAC: |
| | | CHK: |
| | | PDE |
| | | PDM: |
| | | DLM: |

```
8051101386
```

MT F                          SWIFT Single Customer Credit Transfer

Basic Header          F  C1 UNCRBGSFAXXX 0020 232060
Application Header    I 103 CHASUS33XXXX N

User Header           Service Code    103:
                      Bank. Priority  113:
                      Msg User Ref    108: 1822013350420102
                      Validation      119:
Sender's Ref.         *20  : 8051101386
Bank Operation Code   *23B : CRED
Settlement Amount     *32A : 150220'EDJ00J,CO
Instructed Amount     33B  :   I 7D3200,00
Ordering Customer     *50  : /EGS7UKCR70001520786869
                             IMMUNOTECH LABORATORIES BG
                             CR. SOFIYA UL. NISHAVA 61 VH. A ET.
                             3 AP. 6, BULGARIA

Ordering Institution  52  :
                             UNCRBGSFXXX

Account with Inst.    57  :
                             BOFAUS3N

Beneficiary Customer  *59  : /C997404058
                             HARRY HARRIEV ZHABILOV
                             5192 FAIRVIEW AVE SAN GABRIEL CA 91
                             775
Remittance Info.      70  : BUSINESS
Details of Charges    *71A : OUR
Trailer
                             MAC:
                             CHK:
                             PJE:
                             POM
                             DLM.
```

8065101535

MT F                          SWIFT Single Customer Credit Transfer

Basic Header              F  01 UNCREGEFAXXX 0021 241627
Application Header        I 103 CHASUS33XXXX N

User Header:              Service Code    :33:
                          Bank. Priority  113:
                          Msg User Ref.   108: 18306111502E0100
                          Validation      :19:
Sender's Ref.            *20  : 8065101535
Bank Operation Code      *23B : CRED
Settlement Amount        *32A : 180336USD2000,00
Instructed Amount         33B :        USD2000,00
Ordering Customer        *50  : /BG57UNCR70001520786869
                                 INMUNOTECH LABORATORIES BG OOD
                                 GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                 3 AP. 6, BULGARIA

Ordering Institution      52  :
                                 UNCRBGGFXXX

Account with Inst.        57  :
                                 BOFAUS3N

Beneficiary Customer     *59  : /997434058
                                 FERRY HARRIEV ZHABILOV
                                 9190 FAIRVIEW AVE SAN GABRIEL CA 91
                                 775
Remittance Info.          70  : BUSINESS
Details of Charges       *71A : OUR
Trailer
                                 MAC:
                                 CHK:
                                 PLE
                                 PDE
                                 DLM:

8068101441

```
MT F                        SWIFT Single Customer Credit Transfer

Basic Header            F  01 UNCRBGSFAXXX 0021 245278
Application Header      I 103 CHASUS33XXXX N

User Header             Service Code   103:
                        Bank. Priority 113:
                        Msg User Ref.  108: 18309133503E0102
                        Validation     119:
Sender's Ref.           •20  : 8068101441
Bank Operation Code     •23B : CRED
Settlement Amount       •32A : 180309USD1500,00
Instructed Amount        33B :       USD1500,00
Ordering Customer       •50  : /BG57UNCR7000152C786869
                               IMMUNOTECH LABORATORIES BG
                               GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                               3 AP. 6, BULGARIA

Ordering Institution     52  :
                               UNCRBGSFXXX
Account with Inst.       57  :
                               EQFAUS3N
Beneficiary Customer    •59  : /C997434058
                               HARRY HARRIEV ZHABILOV
                               9190 FAIRVIEW AVE SAN GABRIEL CA 91
                               775
Remittance Info          70  : BUSINESS
Details of Charges      •71A : OUR
Trailer
                               MAC:
                               CHK:
                               PDE:
                               PDM:
                               DLM:
```

40

```
8170100756
```

| | | |
|---|---|---|
| MT F | | SWIFT Single Customer Credit Transfer |
| Basic Header | F  01 UNCRBGSFAXXX 0024 321568 |
| Application Header | I 103 CHASUS33XXXX N |
| User Header | Service Code | 103: |
| | Bank. Priority | 113: |
| | Msg User Ref. | 108: 18619111001E0100 |
| | Validation | 119: |
| Sender's Ref. | •20 | : 8170100756 |
| Bank Operation Code | •23B | : CRED |
| Settlement Amount | •32A | : 18G619U3D2200,00 |
| Instructed Amount | 33B | : USD2200,00 |
| Ordering Customer | •50 | : /BG57JKUR70001520786869 |
| | | IMMUNOTECH LABORATORIES BG |
| | | GR. SOFIYA UL. NISHAVA 61 VH. A ET. |
| | | 3 AP. 6, BULGARIA |
| Ordering Institution | 52 | : |
| | | UNCRBGSFXXX |
| Account with Inst. | 57 | : |
| | | BOFAUS3N |
| Benvficiary Customer | •59 | : /0997404058 |
| | | HARRY HARRIEV  ZHABILOV |
| | | 9192 FAIRVIEW AVE SAN GABRIEL CA 91 |
| | | 775 |
| Remittance Info. | 70 | : BUSINESS |
| Details of Charges | •71A | : OUR |
| Trailer | | |
| | | MAC. |
| | | CHK: |
| | | PDC: |
| | | PDM. |
| | | DLM: |

8193100905

MT F                          SWIFT Single Customer Credit Transfer

Basic Header             F  01 UNCRBG3FAXXX 0024 340558
Application Header        I 103 CHASUS33XXXX N

User Header              Service Code    103:
                         Bank. Priority  113:
                         Msg User Ref.   108: 18712111001E0300
                         Validation      119:
Sender's Ref.            *20  : 8193100905
Bank Operation Code      *23B : CRED
Settlement Amount        *32A : 190712USD1200.00
Instructed Amount         33B :        USD1200.00
Ordering Customer        *50  : /BG57UNCR70001520786869
                                IMMUNOTECH LABORATORIES BG
                                GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                3 AP. 6, BULGARIA

Ordering Institution      52  :
                                UNCRBGSFXXX
Account with Inst.        57  :
                                BOFAUS3N
Beneficiary Customer     *59  : /0997404058
                                HARRY HARRIEV ZHABILOV
                                9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                775
Remittance Info.          70  : BUSINESS
Details of Charges       *71A : OUR
Trailer
                                MAC:
                                CHK:
                                PDE:
                                PDM:
                                DLM:

```
8200100952

MT F                              SWIFT Single Customer Credit Transfer

Basic Header            F  01 UNCREGSFAXXX 0025 345997
Application Header      I 103 CHASJS33XXXX N

User Header             Service Code     103:
                        Bank Priority    113:
                        Msg User Ref.    108: 18719115502E0401
                        Validation       119:
Sender's Ref.           *20  : 8200100952
Bank Operation Code     *23B : CRED
Settlement Amount       *32A : 190719USD1200,00
Instructed Amount        33B :        USD1200,00
Ordering Customer       *50  : /BG57UNCR70601520786869
                               IMMUNOTECH LABORATORIES BG
                               GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                               3 AP. 6, BULGARIA

Ordering Institution     52  :
                               UNCREGSFXXX

Account with Inst.       57  :
                               BOFAUS3N
Beneficiary Customer    *59  : /0997404058
                               HARRY HARRIEV ZHABILOV
                               9192 FAIRVIEW AVE SAN GABRIEL CA 91
                               775
Remittance Info.         70  : BUSINESS
Details of Charges      *71A : OUR
Trailer
                               MAC:
                               CHK:
                               PDE:
                               PDM:
                               DLM:
```

44

```
8201100555

MT F                          SWIFT Single Customer Credit Transfer

Basic Header               F  01 UNCREGSFAXXX 0025 346907
Application Header         I 103 CHASUS33XXXX N

User Header                Service Code    103:
                           Bank. Priority  113:
                           Msg User Ref.   108: 18720100502E0101
                           Validation      119:
Sender's Ref               *70  : 82C1100555
Bank Operation Code        *23B : CRED
Settlement Amount          *32A : 180720USD1200,00
Instructed Amount          33B  :         USD1200,00
Ordering Customer          *50  : /BG57UNCR70001520786869
                                  IMMUNOTECH LABORATORIES BG
                                  GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                  3 AP. 6, BULGARIA

Ordering Institution       52   :
                                  UNCRBGSFXXX
Account with Inst.         57   :
                                  BOFAUS3N
Beneficiary Customer       *59  : /0997404058
                                  HARRY HARRIEV ZHABILOV
                                  9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                  775
Remittance Info.           70   : BUSINESS
Details of Charges         *71A : OUR
Trailer
                                  MAC:
                                  CHK:
                                  PDE:
                                  PDM:
                                  DLM:
```

45

```
B221100351
```

MT F                          SWIFT Single Customer Credit Transfer

Basic header              F  01 UNCRBGSFAXXX 0026 362J54
Application Header         I 103 CHASUS33XXXX N

User Header               Service Code    103:
                          Bank. Priority  113:
                          Msg User Ref.   108: 18809085CO1E0600
                          Validation      119:
Sender's Ref.             *20    B221100351
Bank Operation Code       *23B  : CRED
Settlement Amount         *32A  : 1B0809U3C2200,00
Instructed Amount          33B  :       USD2200,00
Ordering Customer         *50   : /BG57UNCR7C001520786869
                                  IMMUNOTEH LABORATORIES BG
                                  GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                  3 AP. 6, BULGARIA

Ordering Institution       52   :

                                  UNCRBGSFXXX
Account with Inst.         57   :

                                  BOFAUS3N
Beneficiary Customer      *59   : /C997404058
                                  HARRY HARRIEV ZHABILOV
                                  9192 FAIRVIEW AVE SAN GABNEL CA 917
                                  75
Remittance Info.           70   : BUSINESS
Details of Charges        *71A  : OUR
Trailer
                                  MAC:
                                  CHK:
                                  PDE:
                                  PDM:
                                  DLM:

                          46
```

```
8236100902
```

```
MT F                        SWIFT Single Customer Credit Transfer

Basic Header             F  01 UNCRBGSFAXXX 0027 373713
Application Header       I 103 CHASUS33XXXX N

User Header              Service Code    103:
                         Bank. Priority  113:
                         Msg User Ref.   108: 18824115501E0400
                         Validation      119:
Sender's Ref.           *20  : 8236100902
Bank Operation Code     *23B : CRED
Settlement Amount       *32A : 180824USD2200,00
Instructed Amount        33B :        USD2200,00
Ordering Customer       *50  : /BG57UNCR70001520786869
                               IMMUNOTEH LABORATORIES BG OOD
                               GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                               3 AP. 6, BULGARIA

Ordering Institution     52  :
                               UNCRBGSFXXX

Account with Inst.       57  :
                               BOFAUS3N
Beneficiary Customer    *59  : /0997404058
                               HARRY HARRIEV ZHABILOV
                               9192 FAIRVIEW AVE SAN GABRIEL CA 91
                               775
Remittance Info.         70  : BUSINESS
Details of Charges      *71A : OUR
Trailer
                               MAC:
                               CHK:
                               PDE:
                               PDM:
                               DLM:
```

47

```
8261101241

MT F                      SWIFT Single Customer Credit Transfer

Basic Header              F  01 UNCRBGSFAXXX 0028 392202
Application Header        I 103 CHASUS33XXXX N

User Header               Service Code     103:
                          Bank. Priority   113:
                          Msg User Ref.    108: 18918115500E0500
                          Validation       119:
Sender's Ref.            *20  : 8261101241
Bank Operation Code      *23B : CRED
Settlement Amount        *32A : 18C918USD1000,00
Instructed Amount         33B :        USD1000,00
Ordering Customer        *50  : /BG57UNCR70001520736869
                                 IMMUNOTECH LABORATORIES BG
                                 GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                 3 AP. 6, BULGARIA
Ordering Institution      52  :
                                 UNCRBGSFXXX
Account with Inst.        57  :
                                 BOFAUS3N
Beneficiary Customer     *59  : /0997404058
                                 HARRY HARRIEV DHABILOV
                                 9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                 775
Remittance Info.          70  : BUSINESS
Details of Charges       *71A : OUR
Trailer
                                 MAC:
                                 CHK:
                                 PDE:
                                 PDM:
                                 DLM:
```

48

```
8274100685
```

```
MT F                          SWIFT Single Customer Credit Transfer

Basic Header              F   C1 UNCRBGSFAXXX 0029 402125
Application Header        I 103 CHASUS33XXXX N

User Header               Service Code    103:
                          Bank. Priority  113:
                          Msg User Ref.   108: 18A01095001E0500
                          Validation      119:
Sender's Ref.             *20 : 8274100685
Bank Operation Code       *23B : CRED
Settlement Amount         *32A : 810010USD1200,00
Instructed Amount         33B :       USD1200,00
Ordering Customer         *50 : /BG57UNCR70001520786869
                                IMMUNOTECH LABORATORIES BG
                                GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                3 AP. 6, BULGARIA

Ordering Institution      52  :
                                UNCRBGSFXXX

Account with Inst.        57  :
                                EOFAUS3N
Beneficiary Customer      *59 : /0997404058
                                HARRY HAPRIEV ZHABILOV
                                9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                775
Remittance Info.          70  : BUSINESS
Details of Charges        *71A · OUR
Trailer
                                MAC:
                                CHK:
                                PDE:
                                PLM:
                                DLM:
```

8281100353

MT F                          SWIFT Single Customer Credit Transfer

Basic Header               F  01 UNCREGSFAXXX 0050 408001
Application Header          I 103 CHASUS33XXXX N

User Header                Service Code    103:
                           Bank. Priority  113:
                           Msg User Ref.   108: 1SA08083001E0200
                           Validation      119:
Sender's Ref.              •20  : 8281100353
Bank Operation Code        •23B : CRED
Settlement Amount          •32A : 181009USD2200,00
Instructed Amount          33B  :      USD2200,00
Ordering Customer          •50  : /BG57UNCR70001520786869
                                   IMMUNOTECH LABORATORIES BG
                                   GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                   3 AP. 6, BULGARIA

Ordering Institution       52   :
                                   UNCREGSFXXX

Account with Inst.         57   :
                                   BOFAUS3N

Beneficiary Customer       •59  : /0997404058
                                   HARRY HARRIEV ZHABILOV
                                   9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                   775
Remittance Info.           70   : BUSINESS
Details of Charges         •71A : OUR
Trailer
                                   MAC:
                                   CHK:
                                   PDE:
                                   PDM:
                                   DLM:

```
8295100372


MT F                         SWIFT Single Customer Credit Transfer

Basic Header            F   01 UNCRBGSFAXXX 0030 419337
Application Header      I 103 CHASUS33XXXX N

 User Header            Service Code     103:
                        Bank. Priority   113:
                        Msg User Ref.    108: 18A22082505E0600
                        Validation       119:
Sender's Ref.          *20  : 8295100372
Bank Operation Code    *23B : CRED
Settlement Amount      *32A : 181022USD1200,00
Instructed Amount       33B :       USD1200,00
Ordering Customer      *50  : /BG57UNCR70001520786869
                              IMMUNOTECH LABOPATORIES BG
                              GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                              3 AP. 6, BULGARIA
Ordering Institution    52  :
                              UNCRBGSFXXX
Account with Inst.      57  :
                              BOFAUS3N
Beneficiary Customer   *59  : /0997404058
                              HARRY HARRIEV ZHABILOV
                              9132 FAIRVIEW AVE SAN GABRIEL CA 91
                              775
Remittance Info         70  : BUSINESS
Details of Charges     *71A : US
Trailer

                              MAC:
                              CHK:
                              PDE:
                              PDM:
                              DLM:
```

```
8303100222

MT F                        SWIFT Single Customer Credit Transfer

Basic Header            F  01 UNCREGSFAXXX 0031 426261
Application Header      I 103 CHASUS33XXXX N

User Header             Service Code     103:
                        Bank. Priority   113:
                        Msg User Ref.    108: 18A30082006E0701
                        Validation       119:
Sender's Ref.          *20  : 8303100222
Bank Operation Code    *23B : CRED
Settlement Amount      *32A : 181030USD2200,00
Instructed Amount       33B ·        USD2200,00
Ordering Customer      *50  : /BG57UNCR70001520786869
                              KOMPNOTECH LABORATORIES BG
                              GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                              3 AP  6, BULGARIA
Ordering Institution    52  :
                              UNCREGSFXXX
Account with Inst.      57  ·
                              BOFAUS3N
Beneficiary Customer   *59  : /J997404058
                              HARRY HAFRIEV ZHABILOV
                              9192 FAIRVIEW AVE SAN GABRIEL CA 91
                              775
Remittance Info.        70  : BUSINESS
Details of Charges     *71A : OUR
Trailer
                              MAC:
                              CHK:
                              POE:
                              PCM:
                              SLM:
```

```
8313101527

MT F                              SWIFT Single Customer Credit Transfer

Basic Header                      F  01 UNCRBGSFAXXX 0031 436786
Application Header                I 103 CHASUS33XXXX N

User Header                       Service Code    103:
                                  Bank. Priority  113:
                                  Msg User Ref.   108: 18B09141007E0701
                                  Validation      119:
Sender's Ref.                     *20  : 8313101527
Bank Operation Code               *23B : CRED
Settlement Amount                 *32A : 18.1090USD2200,00
Instructed Amount                 33B  :        USD2200,00
Ordering Customer                 *50  : /E3570UNCR70001520786869
                                         IMMUNOTECH LABORATORIES BG
                                         CR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                         3 AP. 6, BULGARIA

Ordering Institution              52   :
                                         UNCRBGSFXXX

Account with Inst.                57   :
                                         BOFAUS3N
Beneficiary Customer              *59  : /0997404058
                                         HARRY HARRIEV ZHABILOV
                                         9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                         775
Remittance Info.                  70   : BUSINESS
Details of Charges                *71A : OUR
Trailer
                                         MAC:
                                         CHK:
                                         PDE:
                                         PDM:
                                         DLM:
```

```
8331101616
```

| | | |
|---|---|---|
| MT F | | SWIFT Single Customer Credit Transfer |
| Basic Header | F  01 UNCRBGSFAXXX 0033 444241 | |
| Application Header | I 103 CHASUS33XXXX N | |
| User Header | Service Code    103: | |
| | Bank. Priority  113: | |
| | Msg User Ref.   108: 18B27133003E0200 | |
| | Validation     119: | |
| Sender's Ref. | *20   : 9331101616 | |
| Bank Operation Code | *23B  : CRED | |
| Settlement Amount | *32A  : 181127USD3200,00 | |
| Instructed Amount | 33B  :        USD3200,00 | |
| Ordering Customer | *50   : /BG57UNCR70001152C786869 | |
| | | IMMUNOTECH LABORATORIES EG |
| | | Gk. SOFIYA UL. MISHAVA 61 VH. A ET. |
| | | 3 AP. 6, BULGARIA |
| Ordering Institution | 52   : | |
| | | UNCRBGSFXXX |
| Account with Inst. | 57   : | |
| | | BOFAUS3N |
| Beneficiary Customer | *59   : /0997404058 | |
| | | HARRY HARRIEV ZHABILOV |
| | | 9192 FAIRVIEW AVE SAN GABRIEL CA 91 |
| | | 775 |
| Remittance Info. | 70   : BUSINESS | |
| Details of Charges | *71A  : OUR | |
| Trailer | | |
| | | MAC: |
| | | CHK: |
| | | PDE: |
| | | PDM: |
| | | DLM: |

```
8337101431                                              .                         .

MT F                          SWIFT Single Customer Credit Transfer

Basic Header                  F  01 UNCRBGSFAXXX 0035 440934
Application Header            I 103 CHASUS33XXXX N

User Header                   Service Code    103:
                             Bank. Priority  113:
                             Msg User Ref.   108: 18C03124003E0401
                             Validation      119:
Sender's Ref.                *20  : 8337101431
Bank Operation Code          *23B : CRED
Settlement Amount            *32A : 191203USD2200,00
Instructed Amount             33B :        USD2200,00
Ordering Customer            *50  : /BG57UNCR70001520786869
                                    IMMUNOTECH LABORATORIES BG
                                    GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                    3 AP. 6, BULGARIA

Ordering Institution          52  :
                                    UNCRBGSFXXX

Account with Inst.            57  :
                                    BOFAUS3N
Beneficiary Customer         *59  : /0997404158
                                    HARRY HARRIEV ZHABILOV
                                    9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                    775
Remittance Info.              70  : BUSINESS
Details of Charges           *71A : OUR
Trailer
                                    MAC:
                                    CHK:
                                    PDE:
                                    PTM:
                                    DLM:
```

55

```
8347101165


MT F                         SWIFT Single Customer Credit Transfer

Basic Header                 F  01 UNCRBGSFAXXX 0035 459264
Application Header            I 103 CHASUS33XXXX N

User Header                  Service Code    103:
                             Bank. Priority  113:
                             Msg User Ref.   108: 18C13114006E0201
                             Validation      119:
Sender's Ref.                *20  : 8347101165
Bank Operation Code          *23B : CRED
Settlement Amount            *32A : 181213USD2200,00
Instructed Amount            33B  :        USD2200,00
Ordering Customer            *50  : /EG57UNCR70001520786869
                                    IMMUNOTEH LABORATORIES BG
                                    GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                    3 AP. 6, BULGARIA

Ordering Institution         52   :
                                    UNCRBGSFXXX

Account with Inst.           57   :
                                    BOFAUS3N
Beneficiary Customer         *59  : /0997404058
                                    HARRY HARRIEV ZHABILOV
                                    9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                    775
Remittance Info.             70   : BUSINESS
Details of Charges           *71A : OUR
Trailer

                                    MAC:
                                    CHK:
                                    PDE:
                                    PDM:
                                    DLM:
```

```
8361101405
```

```
MT F                          SWIFT Single Customer Credit Transfer

Basic Header              F  01 UNCREGSFAXXX 0035 469544
Application Header        I 103 CHASUS33XXXX N

User Header               Service Code    103:
                          Bank. Priority  113:
                          Msg User Ref.   108: 18C27110004E0100
                          Validation      119:
Sender's Ref.             *20  : 8361101405
Bank Operation Code       *23B : CRED
Settlement Amount         *32A : 181227USD3200,00
Instructed Amount         33B  :        USD3200,00
Ordering Customer         *50  : /BG57UNCR70001520786869
                                  IMMUNOTECH LABORATORIES BG
                                  GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                  3 AP. 6, BULGARIA

Ordering Institution      52   :
                                  UNCREGSFXXX

Account with Inst.        57   :
                                  BOFAUS3N
Beneficiary Customer      *59  : /0097404C58
                                  HARRY HARRIEV ZHABILOV
                                  9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                  775
Remittance Info.          70   : BUSINESS
Details of Charges        *71A : OUR
Trailer
                                  MAC:
                                  CHK:
                                  PDE:
                                  PDM:
                                  DLM:
```

57

```
9002100815

MT F                          SWIFT Single Customer Credit Transfer

Basic Header            F  01 UNCRBGSFAXXX D035 472636
Application Header      I 103 CHASUS33XXXX N

User Header             Service Code     103:
                        Bank. Priority   113:
                        Msg User Ref.    108: 19102120504E0500
                        Validation       119:
Sender's Ref.           *20  : 9002100815
Bank Operation Code     *23B : CRED
Settlement Amount       *32A : 190102USD3200,00
Instructed Amount        33B :      USD3200,00
Ordering Customer       *50  : /B:57UNCR70001520786869
                               IMMUNOTECH LABORATORIES EG
                               GR  SOFIYA UL. NISHAVA 61 VH. A ET.
                               3 AP  6, BULGARIA

Ordering Insritution     52  :
                               UNCRBGSFXXX

Account with Inst.       57  :
                               BOFAUS3N
Beneficiary Customer    *59  : /0997404C58
                               HARRY HARRIEV ZHABILOV
                               9192 FAIRVIEW AVE SAN GABRIEL CA 91
                               775
Remittance Info          70  : BUSINESS
Details of Charges      *71A : OUR
Trailer

                               MAC:
                               CHK:
                               PDE:
                               PDM:
                               DLM:
```

```
9015101471·

MT F                      SWIFT Single Customer Credit Transfer

Basic Header            F  01 UNCRBGSFAXXX 0035 492654
Application Header      I 103 CHASUS33XXXX N

User Header             Service Code    103:
                        Bank Priority   113:
                        Msg User Ref.   108: 19115133505E0100
                        Validation      119:
Sender's Ref.          ·20  : 90151014 1
Bank Operation Code    ·23B : CRED
Settlement Amount      ·32A : 190115USD3200,00
Instructed Amount       33B :        USD3200,00
Ordering Customer      ·50  : /EG57UNCR70001522786869
                                IMMUNOTECH LABORATORIES BG
                                GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                3 AP. 6, BULGARIA

Ordering Institution    52  :
                                UNCRBGSFXXX

Account with Inst.      57  :
                                BOFAUS3N
Beneficiary Customer   ·59  : /0907404058
                                HARRY HARRIEV ZHABIOV
                                9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                775
Remittance Info.        70  : BUSINESS
Details of Charges     ·71A : OUR
Trailer
                                MAC:
                                CHK:
                                FEE:
                                PDM.
                                DLM:
```

```
9023101076

MT F                        SWIFT Single Customer Credit Transfer

Basic Header                F  01 UNCRBGSFAXXX 0035 469099
Application Header           1 103 CHASUS33XXXX N

User Header                 Service Code    103:
                            Bank. Priority  113:
                            Msg User Ref.   108: 19123124004E0700
                            Validation      119:
Sender's Ref.               ·20  : 9023101076
Bank Operation Code         ·23B : CRED
Settlement Amount           ·32A : 190123USD2700,00
Instructed Amount            33B :       USD2700,00
Ordering Customer           ·50  : /BG57UNCR70001520786869
                                   IMMUNOTECH LABORATORIES BG OOD
                                   GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                   3 AP. 6, BULGARIA

Ordering Institution         52  :
                                   UNCRBGSFXXX
Account with Inst.           57  :
                                   EOFAU33N
Beneficiary Customer        ·59  : /099740405B
                                   HARRY HARIEV ZHABILOV
                                   9192 FAIRWIEV AVE SAN GABRIEL CA 91
                                   775
Remittance Info.             70  : BUSINES
Details of Charges          ·71A : OUR
Trailer
                                   MAC:
                                   CHK:
                                   PDE:
                                   PDM:
                                   DLM:
```

60

```
9030100974

MT F                        SWIFT Single Customer Credit Transfer

Basic Header               F  01 UNCRBGSFAXXX C035 494670
Application Header         I 103 CHASL333XXXX N

User Header                Service Code    103:
                           Bank. Priority  113:
                           Msg User Ref.   108: 19130113003E0101
                           Validation      119:
Sender's Ref.              *20  : 9030100974
Bank Operation Code        *23B : CRED
Settlement Amount          *32A : 190130USD3200,00
Instructed Amount           33B :          USD3200,00
Ordering Customer          *50  : /C357UNCR70001520786869
                                   IMMUNOTECH LABORATORIES LTD.
                                   GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                   3 AP. 6, BULGARIA

Ordering Institution        51  :
                                   UNCRBGSFXXX
Account with Inst.          57  :
                                   BOFAUS3N
Beneficiary Customer       *59  : /0997404058
                                   HARRY HARIEV ZHABILOV
                                   9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                   775
Remittance Info.            70  : BUSINESS
Details of Charges         *71A : OUR
Trailer
                                   MAC:
                                   CHK:
                                   PDE:
                                   PRM:
                                   DLM:
```

```
9039101531

MT 5                        SWIFT Single Customer Credit Transfer

Basic Header             F  01 UNCRBGSFAXXX 0037 503028
Application Header       I 103 CHASUS33XXXX N

User Header              Service Code    103:
                         Bank. Priority  113:
                         Msg User Ref.   108: 1920814350120200
                         Validation      119:
Sender's Ref.           *20  : 9039101531
Bank Operation Code     *23B : CRED
Settlement Amount       *32A : 190208USD4200,00
Instructed Amount        33B :        USD4200,00
Ordering Customer       *50  : /BG57UNCR70001520786269
                               IMMUNOTECH LABORATORIES BG LTDOOD
                               GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                               3 AP. 6, BULGARIA

Ordering Institution     52  :
                               UNCRBGSFXXX

Account with Inst.       57  :
                               EOFAUS3N
Beneficiary Customer    *59  : /0997404058
                               HARRY HARIEV ZHABILOV
                               91.2 FAIRVIEW AVE SAN GABRIEL CA 91
                               775
Remittance Info.         70  : BUSINESS
Details of Charges      *71A : OUR
Trailer
                               MAC:
                               CHK:
                               PDE:
                               PDM:
                               DLM:
```

```
9056101351
```

MT F
Basic Header
Application Header              SWIFT Single Customer Credit Transfer

User Header

                               Service Type          103:
                               Bank Priority         113:
                               Msg User Ref.         108:  :9225123505E0201

Sender's Ref
Bank Operation Code
Settlement Amount                              :A  :n 2250.082.0, 00
Instructed Amount               33B            :       0802200, 00
Ordering Customer               :50  :  :8G57UNCR20001520786969
                                        IMMUNOTECH LABORATORIES BG LTD
                                        GR. SOFIYA BL. NT-HAVE 61 VH. A 27
                                                       BULGARIA

                                        3E
                                        XAVIER TERTILE
                                        XVIER AVE SAN CASSIE  CA

Der Tenor
Date 1s of Charges
Dialog

```
9039101531


MT F                        SWIFT Single Customer Credit Transfer

Basic Header            F  01 UNCRBGSFAXXX 0037 503028
Application Header      I 103 CHASUS33XXXX N

User Header             Service Code   103:
                        Bank. Priority 113:
                        Msg User Ref.  108: 1920814350180200
                        Validation     119:
Sender's Ref.           *20  : 9039101531
Bank Operation Code     *23B : CRED
Settlement Amount       *32A : 190208USD4200,00
Instructed Amount        33B :      USD4200,00
Ordering Customer       *50  : /BG57UNCR700C1520786369
                               IMMUNOTECH LABORATORIES BG LTDOOD
                               GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                               3 AP. 6, BULGARIA
Ordering Institution     52  :
                               UNCRBGSFXXX
Account with Inst.       57  :
                               BOFAUS3N
Beneficiary Customer    *59  : /0997404058
                               HARRY HARTEV ZHABILOV
                               9192 FAIRVIEW AVE SAN GABRIEL CA 91
                               775
Remittance Info.         70  : BUSINESS
Details of Charges      *71A : OUR
Trailer
                               MAC:
                               CHK:
                               PDE:
                               PDM:
                               DLM:
```

```
9056101351                                      .

XT F                          SWIFT Single Customer Credit Transfer

Basic Header              F  01 UNCRBGSFAXXX 0038 514844
Application Header        I 103 CHASUS33XXXX N

User Header               Service Code    103:
                          Bank. Priority  113:
                          Msg User Ref.   108: 19205123505E0701
                          Validation      115:
Sender's Ref.            *20  : 9056101351
Bank Operation Code      *23B : CRED
Settlement Amount        *32A : 190225USD2200,00
Instructed Amount         33B :       USD2200,00
Ordering Customer        *50  : /BG57UNCR70001520786669
                                IMMUNOTECH LABORATORIES BG LTD
                                GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                3 AP. 6, BULGARIA
Ordering Institution      52  :
                                UNCRBGSFXXX
Account with Inst.        57  :
                                BOFAUS3N
Beneficiary Customer     *59  : /0997404058
                                HARRY HARIEV ZHABILOV
                                9192 FAIRVIEW AVE SAN GABRIEL  CA 9
                                1775
Remittance Info           70  : BUSINESS
Details of Charges       *71A : OUR
Trailer
                                MAC:
                                CHK:
                                PDE:
                                PDM:
                                DLM:
```

```
9059101938
```

MT F                         SWIFT Single Customer Credit Transfer

Basic Header            F  01 UNCRBGSFAXXX 0039 518530
Application Header      I 103 CHACJS33XXXX N

User Header             Service Code     103:
                        Bank. Priority   113:
                        Msg User Ref.    108: 19228142001E0700
                        Validation       119:
Sender's Ref.           *20  : 9059101938
Bank Operation Code     *23B : CRED
Settlement Amount       *32A : 190228USD3200,00
Instructed Amount       33B  :      USD3200,00
Ordering Customer       *50  : /BG57UNCR70001520786869
                               IMMUNOTECH LABORATORIES BG
                               GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                               3 AP. 6, BULGARIA

Ordering Institution     52  :

                               UNCRBGSFXXX

Account with Inst.       57  :

                               BOFAUS3N
Beneficiary Customer    *59  : /0997404058
                               HARRY HARRIEV ZHABILOV
                               9192 FAIRVIEW AVE SAN GABRIEL CA 91
                               775
Remittance Info.         70  : BUSINESS
Details of Charges      *71A : OUR
Trailer
                               MAC:
                               CHK:
                               PDE:
                               PDM:
                               DLM:
```

```
9087100757

MT F                          SWIFT Single Customer Credit Transfer

Basic Header            F   01 UNCPBGSFAXXX 0039 540577
Application Header      I  103 CHASUS33XXXX N

User Header             Service Code     103:
                        Bank. Priority   113:
                        Msg User Ref.    108: 19328103503E0302
                        Validation       119:
Sender's Ref.           *20  : 9087100757
Bank Operation Code     *23B : CRED
Settlement Amount       *32A : 190328USD5200,00
Instructed Amount        33B :        USD5200,00
Ordering Customer       *50  : /BG57UNCR70001520786869
                               IMMUNOTECH LABORATORIES BG LTD
                               GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                               3 AP. 6, BULGARIA
Ordering Institution     52  :
                               UNCRBGSFXXX
Account with Inst.       57  :
                               BOFAUS3N
Beneficiary Customer    *59  : /0997404058
                               HARRY HARIEV ZHABILOV
                               9192 FAIRVIEW AVE SAN GABRIEL CA 91
                               775
Remittance Info.         70  : BUSINESS
Details of Charges      *71A : OUR
Trailer
                               MAC:
                               CHK:
                               PDE:
                               PDM:
                               DLM:
```

9098101248

MT F                          SWIFT Single Customer Credit Transfer

Basic Header              F  01 UNCRBGSFAXXX 0042 548931
Application Header        I 103 CHASUS33XXXX N

User Header               Service Code    103:
                          Bank. Priority  113:
                          Msg User Ref.   108: 19408115506F0700
                          Validation      119:
Sender's Ref.             *20 : 9098101248
Bank Operation Code       *23B : CRED
Settlement Amount         *32A : 190408USD4200,00
Instructed Amount          33B :       USD4200,00
Ordering Customer         *50 : /BG57UNCR7000152078686 9
                                IMMUNOTECH LABORATORIES BG LTD.
                                SOFIA UL. NISHAVA 61 VH. A ET. 3 AP
                                . 6, BULGARIA

Ordering Institution       52 :
                                UNCRBGSFXXX

Account with Inst.         57 :
                                BOFAUS3N

Beneficiary Customer      *59 : /0997404058
                                HARRY HARIEV ZHABILOV
                                9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                775
Remittance Info.           70 : BUSINESS
Details of Charges        *71A : CUR
Trailer
                                MAC:
                                CHK:
                                PDE:
                                PDM:
                                DLM:

9098101682

MT F                              SWIFT Single Customer Credit Transfer

Basic Header               F  01 UNCPBGSFAXXX 0042 549175
Application Header         1 103 CHASUS33XXXX N

User Header                Service Code    103:
                           Bank. Priority  113:
                           Msg User Ref.   108: 19409133001E0400
                           Validation      119:
Sender's Ref.              *20   : 9098101682
Bank Operation Code        *23B  : CRED
Settlement Amount          *32A  . 190409USD1000,00
Instructed Amount          33B   :      USD1000,00
Ordering Customer          *50   : /BG57UNCR70001520786369
                                     IMMUNOTECH LABORATORIES BG LTD
                                     GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                     3 AP. 6, BULGARIA
Ordering Institution        52   :
                                     UNCRBGSFXXX
Account with Inst.          57   :
                                     BOFAUS3N
Beneficiary Customer       *59   : /0997404058
                                     HARRY HARIEV ZHABILOV
                                     9192 FAIRVIEW AVE. SAN GABRIEL CA 9
                                     1775
Remittance Info.           70    : BUSINESS
Details of Charges         *71A  : OUR
Trailer

                                     XAC:
                                     CHK:
                                     PDE:
                                     PDM:
                                     DLM:

68

```
9151100374

MT F                        SWIFT Single Customer Credit Transfer

Basic Header          F  01 UNCRBGSFAXXX 0045 589110
Application Header     I 103 CHASUS33XXXX N

User Header            Service Code    103:
                       Bank. Priority  113:
                       Msg User Ref.   108: 19531092502E0101
                       Validation      119:
Sender's Ref.         *20  : 9151100374
Bank Operation Code   *23B : CRED
Settlement Amount     *32A : 190531USD3200,00
Instructed Amount      33B :       USD3200,C0
Ordering Customer     *50  : /BG57UNCR7C001520786869
                              IMMUNOTEH LABORATORIES BG
                              GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                              3 AP. 6, BULGARIA

Ordering Institution   52  :
                              UNCRBGSFXXX

Account with Inst.     57  :
                              BOFAUS3N
Beneficiary Customer  *59  : /0997404058
                              HARRY HARIEV ZHABILOV
                              9192 FAIVIEW ARE SAN GABRIEL C A 91
                              775
Remittance Info.       70  : BUSINESS
Details of Charges    *71A : OUR
Trailer
                              MAC:
                              CHK:
                              PDE:
                              PDM:
                              DLM:
```

69

```
9157100382


MT F                          SWIFT Single Customer Credit Transfer

Basic Header              F  01 UNCRBG.FAAXX 0045 193445
Application Header        I 103 CnAs.533XXXX N

User Header               Service Code    103:
                          Bank. Priority  113:
                          Msg User Ref.   108: 19606090003E0200
                          Validation      119:
Sender's Ref.             *20  : 9157100382
Bank Operation Code       *23B : CRED
Settlement Amount         *32A : 190606USD5200,00
Instructed Amount         33B  :      USD5200,00
Ordering Customer         *50  : /BG57UNCR7C001520786869
                                 IMMUNOTECH LABORATORIES BG LTD
                                 GR. SOFIYA UL. NISHAVA 61 VH. A ET.
                                 3 AP. 6, BULGARIA

Ordering Institution      52   :
                                 UNCRBGSFXXX

Account with Inst.        57   :
                                 BOFAUS3N
Beneficiary Customer      *59  : /0997404058
                                 HARRY HARIEV ZHABILOV
                                 9192 FAIRVIEW AVE SAN GABRIEL CA 91
                                 775
Remittance Info.          70   : BUSINESS
Details of Charges        *71A : OUR
Trailer
                                 MAC:
                                 CHK:
                                 PDE:
                                 PDM:
                                 DLM:
```

70

# EXHIBIT 1

21.06.2017 г.                                                    Print

__Subject:__  Re:

From:    Harry Zhabilov (zhabilov@att.net)

To:      vital_fe@yahoo.com;

Date:    Tuesday, June 20, 2017 6:35 PM


Zdravei Mitko prashtam ti moil komentar na angliiski za po goliama dostovernost Otivam do pyramid da dovoria s Medhad. Ne se pritesniavai sherovete se zapazvat 1:1 clads A te sa osnovnite


In terms of the merger which are committed with Petroleum, Eco Solutions Inc, it may be considered for:

1. replace ordinary share 1 : 1 share for 1 share of the new company.

*The Series A shares are ........*

*ECPO will issue the Bulgarian contract any additional shares Of ECPO in the amount to make the exchange equal 1 : for its Series b and common shares as payments for the payment for the production of 9,000 vials. We are doing this so that shareholders, not associated with the permit and initial order will not expect the same treatment*

2. the preferential shares assets to be added ... as you suggest with the ordinary And class a to be replaced with a class in the same manner

*The Series A are exchanged 1 : 1 and are not convertible into ECPO shares as they were never alive ... IMMB Common but were only issued for voting purposes. The Series B once you receive them do not have to be converted into ECPO Common Shares and can be held by you as long as you desire*

*We will need a letter from ... the have ... to ... Bulgaria to make sure the ... Resolution attached and pass on ... Transfer Agent*

Funding for the loan ... provided and can immediately start to continue in this direction because I think any pres ... the shares will noticeably significantly ... without doing real factory production ... with ... actual profit and good Each ... to Board ... for the registration of the Bulgarian ... good preparedness and contribution attending the process with less ...

*.We appreciate all the efforts you have made in getting the permit issued in the EU and understand the impact on IMM and now ECPO. Our combined efforts will advance the two entities forward and unlock the shareholder value that has laid dormant for years*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

## CONSENT FOR ELECTRONIC SERVICE OF DOCUMENTS

I, _DIMITAR SLAVCHEV SAVOV_ am representing myself and

    (Print Full Name)

consent to receive electronic notices of filings and/or delivery of documents by email.

I am providing my email address for the purpose of sending me electronic notice of any Order or other filing in my case with a link to the filed document. I understand that hard (paper) copies of orders will no longer be sent to me by the Court.

I understand that if my email or mailing address changes, it is my responsibility to notify the Court in writing of my new email or mailing address.

I understand that email filters (SPAM filters) may interfere with my receipt of email notifications and I will ensure that my email will not filter out messages from **cmecf@nvd.uscourts.gov**.

I have already registered *or* will immediately register for a PACER account (Public Access to Court Electronic Records).

I understand that consenting to service by email does not authorize me to file my documents electronically. I may request the court's authorization to register as an electronic filer by filing a separate written motion request (LR IC 2-1(b)).

Date: _MAY 31, 2022_      _____

                                       Signature

Email Address (Please print legibly):

_dimitar.savov@ymail.com_

Confirm Email Address:

_dimitar.savov@ymail.com_

Mailing Address:

_61 Nishava str. ent. A fl. 3 ap 6, Sofia 1680, Bulgaria_

Telephone Number:

_+359 889 988 313_

Case Number(s):

_____